## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ILLINOIS EASTERN DIVISION

| | |
|---|---|
| BIG LEAGUE CHEW PROPERTIES, LLC, and THE ROB NELSON COMPANY, INC., | **Case No.:** |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMAND** |
| FORD GUM & MACHINE COMPANY, INC., | |
| Defendant. | |

## COMPLAINT

Plaintiffs Big League Chew Properties, LLC ("BIG LEAGUE CHEW") and The Rob Nelson Company, Inc. ("TRNC"), by and through their undersigned attorneys, as and for their Complaint against Defendant Ford Gum & Machine Company, Inc. ("Ford Gum"), allege as follows:

## PRELIMINARY STATEMENT

1.      BIG LEAGUE CHEW, owner of the iconic **Big League Chew®** brand of shredded bubble gum, has filed this lawsuit against Ford Gum, a licensee of the **Big League Chew®** brand for over 14 years, to defend and preserve the very existence of its unique and beloved product.

2.      BIG LEAGUE CHEW unfortunately has no choice; Ford Gum betrayed BIG LEAGUE CHEW and its millions of fans by unfairly and willfully trading on the reputation and success of BIG LEAGUE CHEW's distinctive, world-famous brand of shredded bubble gum.

3.      First, Ford Gum blatantly breached its agreements with BIG LEAGUE CHEW.

4.      Second, Ford Gum intentionally infringed BIG LEAGUE CHEW's famous shredded bubble gum trade dress by, among other things, filing a trademark application with the U.S. Patent and Trademark Office and asserting ownership of, and attempting to register *in its own name*, BIG LEAGUE CHEW's famous shredded bubble gum configuration and distinctive product configuration (the "Shredded Bubble Gum Trade Dress").

5.      In its application to the Trademark Office, Ford Gum falsely claims (under penalty of perjury) that it was the very "first company to offer and sell" shredded bubble gum. Ford Gum's statement ignores many facts, including: BIG LEAGUE CHEW has been selling shredded bubble gum for nearly 45 years; BIG LEAGUE CHEW did not even authorize Ford Gum to make shredded bubble gum until 2010; and BIG LEAGUE CHEW literally provided Ford Gum with the equipment necessary to make shredded bubble gum in 2010.

6.      Ford Gum's betrayal of BIG LEAGUE CHEW directly conflicts with and jeopardizes BIG LEAGUE CHEW's intellectual property rights, and breaches the very license agreement with BIG LEAGUE CHEW that authorized Ford Gum to manufacture shredded bubble gum.

7.      Ford Gum's wrongful acts are intentional, egregious, and unfortunately threaten the very existence of BIG LEAGUE CHEW and its immensely popular shredded bubble gum product that has become an enduring part of sports and American culture.

## PARTIES

8.      BIG LEAGUE CHEW is a limited liability company formed pursuant to the laws of the State of Oregon with its principal place of business in Vancouver, Washington.

9.      TRNC is a corporation formed pursuant to the laws of the State of Washington with its principal place of business in Vancouver, Washington.

10.     Ford Gum is a corporation formed pursuant to the laws of the State of Illinois with its principal place of business in Akron, New York.

## RELATED PLAYERS

11.     Chaver Capital Partners is a private equity investment firm located in San Francisco, California that purchased Ford Gum in May 2022.

12.     Upon information and belief, Grey Rock Capital Group, which has offices in Chicago, Connecticut, and California, is an investor which, directly or indirectly, provided financial support for Chaver Capital's acquisition of Ford Gum in May 2022.

13.     Scott Lerner is an individual who became the Chief Executive Officer of Ford Gum in October 2022.

14.     Associated International Marketing, Inc. ("AIM") is a corporation formed pursuant to the State of Illinois with its principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over federal claims under 15 U.S.C. § 1121, 15 U.S.C. § 1125(a) and (c), 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

16.     This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

17.     This Court also has jurisdiction over all claims based on diversity of citizenship among the Plaintiffs and Defendant pursuant to 28 U.S.C. § 1332.

18.     This Court has personal jurisdiction over Defendant because it is incorporated in the State of Illinois and has offices in Illinois.

19.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this

District.  Moreover, the forum selection clause contained in the License Agreement between Plaintiffs and Ford Gum (the "Ford Gum License Agreement") designates the federal courts of Illinois as the exclusive "jurisdiction and venue" of this action.  A copy of the Ford Gum License Agreement is attached as **Exhibit A**.

### BIG LEAGUE CHEW HAS BEEN A HOUSEHOLD NAME FOR DECADES

20.     Rob Nelson is the founder, president and owner of Big League Chew Properties, LLC ("BIG LEAGUE CHEW") and The Rob Nelson Company, Inc. ("TRNC").

21.     Rob Nelson is the creator of **Big League Chew®** shredded bubble gum.

22.     BIG LEAGUE CHEW owns the iconic **Big League Chew®** brand of shredded bubble gum.

23.     BIG LEAGUE CHEW owns the intellectual property used in connection with **Big League Chew®** shredded bubble gum, including the configuration of the gum itself.

24.     BIG LEAGUE CHEW's primary asset is its intellectual property portfolio.

25.     There is no other shredded bubble gum product with this distinctive product configuration.

26.     **Big League Chew®** shredded bubble gum has been one of the most well-known specialty gums in the United States for decades, especially among baseball enthusiasts, baseball players, little league families and bubble gum lovers.

27.     **Big League Chew®** shredded bubble gum is in the Baseball Hall of Fame and is known as the HALL OF FAME BUBBLE GUM™.

28.     BIG LEAGUE CHEW's story is well known, and versions are printed on its packaging, including the "Outta Here Original" package, which states:

*"Sitting in a bullpen in the summer of 1977, Portland Maverick lefthander Rob Nelson came up with an idea that has had a lasting impact on the game of baseball: shredded bubble gum in a stay fresh pouch. He named it Big League Chew®. Rob took a swing at his first homemade batch of Big League Chew on February 6, 1979 (Babe Ruth's birthday!) and with the help of his teammate Jim Bouton, Rob's gum officially hit the retail shelves in 1980."*

29.    A photocopy of the packaging of **Big League Chew**®'s "Outta Here Original" (both front and back sides) is attached as **Exhibit B**.

30.    **Big League Chew**® shredded bubble gum has been sold for nearly 45 years.

31.    During those decades, ***over one billion pouches*** of **Big League Chew**® shredded bubble gum have been sold.  The following photo of Rob Nelson on the MLB Network's "*MLB Central Show*" celebrates and promotes the day on which the one billionth pouch of **Big League Chew**® shredded bubble gum was sold:



**Big League Chew® Celebrates Billionth Pouch Produced**
**May 3, 2023**

32.     **Big League Chew**® shredded bubble gum is listed among *The 21 Best Gum Brands in the United States* according to an article form *Candy Retailer* dated August 24, 2023.

33.     BIG LEAGUE CHEW is the current owner of a portfolio of trademarks, consisting of both common law and registered marks.

34.     BIG LEAGUE CHEW or its predecessor-in-interest has owned the unique and inherently distinctive shredded bubble gum product configuration (the "Shredded Bubble Gum Trade Dress") since Rob Nelson created it on February 6, 1979.

35.     Photos of BIG LEAGUE CHEW's shredded bubble gum product configuration are prominently displayed and advertised on www.BigLeagueChew.com, the website owned by BIG LEAGUE CHEW, as well as numerous other websites from which consumers can purchase **Big League Chew®** shredded bubble gum.  The following two examples of BIG LEAGUE CHEW's shredded bubble gum product are displayed, advertised, and available for purchase on BIG LEAGUE CHEW's Website and Amazon.com:





36.     Rob Nelson created the **Big League Chew**® product as a healthy alternative to chewing tobacco.  In the article titled *Big League Chew – Retrospective of an American Original*, dated February 6, 2012, the following portion of Big League Chew's story is included:

> *"Uniforms were bad in the 1970s, you had those bright white shoes, and guys*
> *who chewed tobacco took delight in soiling teammates' shoes. Jim Bouton had*
> *asked me if I ever chewed, and he couldn't understand why guys did it. Half*

*an inning went by and I brought up my idea for shredding gum, an idea I had*

*since I was a kid."*

37.     Once Rob Nelson conceived the concept of shredded bubble gum and the name Big League Chew, he made the first batch of the product in the kitchen of then Portland Mavericks' bat boy Todd Field in February 1979.

38.     Rob Nelson partnered with New York Yankees legend Jim Bouton, his friend and teammate from the Portland Mavericks, to sell the idea. They pitched the idea to a few companies and finally joined forces with Amurol Confections Company, a subsidiary of the Wrigley Company.

39.     Nelson created and has continuously owned all rights in the **Big League Chew®** Trademarks and Trade Dress, either individually, jointly with Jim Bouton, or through authorized companies from February 6, 1979 until present.

## HISTORY OF BIG LEAGUE CHEW'S TRADEMARKS AND TRADE DRESS

40.     Nelson and Bouton were 50/50 business partners in the early days of the business.

41.     In light of Bouton's connections and business knowledge, Nelson authorized him, through his company, The Jim Bouton Corporation, to apply to register certain trademarks and copyrights in connection with the **Big League Chew®** shredded bubble gum product.

42.     Though Bouton was listed as the registrant of the trademarks at that time, he and Nelson jointly owned the intellectual property, including: (a) the registered trademarks; (b) the registered and common law copyrights; and (c) the common law trademarks and trade dress, including the shredded gum product configuration and the stay fresh pouch, the characters, slogans and other aspects of the **Big League Chew®** theme.

43. The shredded gum product configuration has always been the core of the **Big League Chew®** brand.

44. As the business evolved, Nelson and Bouton transferred ownership of the IP rights between and among companies they created, owned and controlled.

45. The Jim Bouton Corporation owned the trademarks and then sold the "Big League" trademarks and related intellectual property rights to the Big League Company on or about November 15, 1999.

46. Nelson and Bouton jointly owned and controlled the Big League Company which was a sister company to The Rob Nelson Company.

47. Pursuant to a Restated Purchase and Sale Agreement, the "Big League" trademarks and related intellectual property rights were transferred to The Rob Nelson Company ("TRNC") on or about November 14, 2003.

48. TRNC transferred the **Big League Chew®** trademarks and related intellectual property rights to BIG LEAGUE CHEW on or about September 3, 2014, which now owns all of the **Big League Chew®** intellectual property.

## TRADEMARK, TRADE DRESS AND THEME LICENSING

49. On July 6, 1981, The Jim Bouton Company, predecessor-in-interest to BIG LEAGUE CHEW, entered into a trademark license agreement with Amurol Confections Company, a subsidiary of the Wrigley Company ("Amurol"), to license the then-existing **Big League Chew®** trademarks, trade dress and themes, including the Shredded Bubble Gum Trade Dress ("1981 Original License Agreement"). A copy of the 1981 Original License Agreement is attached as **Exhibit C**.

50. The Original License Agreement was superseded by a license agreement between the parties dated January 1, 1992 ("Second License Agreement").

51. The Second License Agreement was superseded by a license agreement between Amurol Confections Company and the Big League Company dated January 1, 2002 ("Third License Agreement"). A copy of the Third License Agreement is attached as **Exhibit D**.

52. TRADEMARK is defined in the Third License Agreement as:

> *"WHEREAS TBLC has developed a theme for a shredded gum in a pouch called BIG LEAGUE CHEW and has created and continues to create themes, images, concepts, packaging designs, characters, advertising themes and materials, promotional concepts, merchandising arrangements and the like in connection with shredded gum in a pouch and other goods and services to be marketed under the trademark BIG LEAGUE CHEW (hereinafter the 'TRADEMARK')."*

See Ex. D.

53. The license agreements with Amurol memorialized and confirmed BIG LEAGUE CHEW's (or a predecessor's) exclusive ownership of the trademarks, trade dress and the goodwill associated with such marks inuring to the Licensor's benefit.

54. BIG LEAGUE CHEW, or its predecessor-in-interest, maintained an excellent working relationship with Amurol over the years, including during the termination of the license agreement and the transition of its license agreement with Ford Gum.

55. BIG LEAGUE CHEW, or its predecessor-in-interest, entered into a License Agreement with Ford Gum on July 16, 2010. Thereafter, the License Agreement was amended pursuant to a First Amendment to License Agreement, dated March 30, 2012, a Second Amendment to License Agreement, dated November 21, 2014, and a Third Amendment to

License Agreement, dated October 28, 2019 (collectively, the "Ford Gum License Agreement"). See Ex. A.

56.     The Ford Gum License Agreement also memorialized and confirmed BIG LEAGUE CHEW's, or its predecessor-in-interest's, exclusive ownership of the trademarks, trade dress and the goodwill associated with such marks inuring to the Licensor's benefit.

57.     BIG LEAGUE CHEW or its predecessor-in-interest has been an active Licensor fully engaged in the business throughout the existence of the **Big League Chew®** products and the business.

58.     BIG LEAGUE CHEW, or its predecessor-in-interest, has exercised significant and meaningful quality control over the **Big League Chew®** products via its license agreements and through its business activities and dealings with its licensees.

59.     BIG LEAGUE CHEW, or its predecessor-in-interest, has actively engaged in quality monitoring in connection with its licensed business directly and through its business partners over the years.

60.     BIG LEAGUE CHEW, or its predecessor-in-interest, maintained ownership and control over the use of the Trademarks and Trade Dress pursuant to such license agreements.

## DISTINCTIVENESS OF BIG LEAGUE CHEW'S TRADEMARK AND TRADE DRESS

61.     For nearly 45 years, Rob Nelson, individually, through his companies and authorized licensees, have engaged in extensive efforts, and invested millions of dollars, to advertise, market, promote and sell **Big League Chew®** shredded gum products, and the associated Shredded Bubble Gum Trade Dress and the **Big League Chew®** trademarks, in the United States and certain countries abroad, which has created substantial and valuable goodwill

in the products and the **Big League Chew®** trademarks and trade dress belonging exclusively to BIG LEAGUE CHEW.

62.     The widespread and substantial advertising, marketing and sales activities have occurred through multiple forms of media, including television shows, commercials, print publications, via the BIG LEAGUE CHEW website (BigLeagueChew.com) and numerous other websites, popular social media sites, and through sponsorships and relationships with companies and organizations (*e.g.*, the Baseball Hall of Fame).

63.     BIG LEAGUE CHEW, or a predecessor-in-interest, engaged Associated International Marketing, Inc. to assist with the marketing, promotion, advertising and sales of its products in conjunction with its **Big League Chew®** trademarks and Shredded Bubble Gum Trade Dress.  The relationship with AIM has continued to the present, and BIG LEAGUE CHEW has paid AIM for its work on behalf of BIG LEAGUE CHEW for decades.

64.     AIM also has assisted BIG LEAGUE CHEW, or a predecessor-in-interest, with certain aspects of administering the license agreements.

65.     **Big League Chew®** shredded bubble gum products have been sold in the U.S on a nationwide basis since at least July 6, 1981, pursuant to license agreements with Amurol and Ford Gum.

66.     Over **$18 million** worth of the **Big League Chew®** distinctive shredded gum product was sold in the U.S. in the first year of business.

67.     The **Big League Chew®** product and concept, especially the Shredded Bubble Gum Trade Dress, was an instant hit with customers.

68.     **Big League Chew®** products also have been sold in the following countries: Canada, Australia and Japan.

69.     BIG LEAGUE CHEW has consistently maintained annual sales in the tens of millions of dollars over the years.

70.     As a result of BIG LEAGUE CHEW's, or its predecessors', substantial investment over time and its advertising, marketing, promotional and sales activities, the Shredded Bubble Gum Trade Dress along with the other **Big League Chew**® trademarks have become widely known and famous throughout the United States and many countries in the world as identifying BIG LEAGUE CHEW as the sole source of the distinctive shredded bubble gum product its offers and sells.

71.     BIG LEAGUE CHEW's licensing and promotional activities have consistently focused the attention of consumers on the distinctive appearance and configuration of the Shredded Bubble Gum Trade Dress, the Packaging and the **Big League Chew**® trademarks associated with its products.

72.     While BIG LEAGUE CHEW, or its predecessor-in-interest, registered numerous trademarks, it continues to maintain ownership rights in its trade dress and certain marketing themes, including the Shredded Bubble Gum Trade Dress, under the common law of the United States.  This decision was made pursuant to legal and business guidance provided in the early years of the business.

73.     All of the trademarks and trade dress, including the Shredded Bubble Gum Trade Dress, have been exclusively owned, maintained and controlled by BIG LEAGUE CHEW or a predecessor-in-interest and have been used exclusively by or on behalf of BIG LEAGUE CHEW or a predecessor-in-interest.

74.     No licensee of BIG LEAGUE CHEW or any of its predecessors-in-interest has been given any ownership rights in any of BIG LEAGUE CHEW's intellectual property.

75.     BIG LEAGUE CHEW owned and maintained rights in its trademarks, trade dress and copyrights long before Ford Gum entered into the Ford Gum License Agreement with BIG LEAGUE CHEW.

**FORD GUM IS PURCHASED BY PRIVATE EQUITY AND PROBLEMS BEGIN**

76.     Ford Gum and BIG LEAGUE CHEW maintained an excellent working relationship under the Ford Gum License Agreement until 2022 when Ford Gum was purchased by Chaver Capital Partners and Greyrock Capital Group ("Private Equity") in May 2022.

77.     After Ford Gum was purchased by Private Equity disputes began to arise and Ford Gum began to badger Rob Nelson to sell BIG LEAGUE CHEW and all its intellectual property.

78.     One of Ford Gum's first actions under its new ownership was to force BIG LEAGUE CHEW to pay back an alleged overage of royalty payments (approximately $180,000), which it paid.

79.     Shortly after Private Equity's purchase, Ford Gum began extending purchase offers to obtain ownership of BIG LEAGUE CHEW and its intellectual property, including its Trademarks and Trade Dress. Attached as **Exhibit E** are three purchase offers extended to Rob Nelson by Ford Gum.

80.     Ford Gum extended these written offers, and repeatedly made oral overtures, to purchase BIG LEAGUE CHEW and all its intellectual property, often with very short closing periods.

81.     Each of the written offers acknowledges BIG LEAGUE CHEW and Rob Nelson are the owner and creator of the shredded gum product (*e.g.*, two offers presented in March 2024

state that Rob Nelson would "continue in [his] role as the card carrying founder of Big League Chew.")  See Ex. E.

82.     The offer dated October 19, 2024, offers Rob Nelson the title of "Founder and Brand Ambassador" among other things.  See Ex. E.

83.     Ford Gum's efforts to acquire BIG LEAGUE CHEW and all its intellectual property have continued and have increased in intensity in recent months despite Rob Nelson's refusals to sell BIG LEAGUE CHEW and its intellectual property.

84.     Ford Gum, including Scott Lerner, its CEO, has become quite aggressive in its attempts to acquire BIG LEAGUE CHEW and all its intellectual property.

## FORD GUM TRIES TO TAKE BIG LEAGUE CHEW'S SHREDDED BUBBLE GUM TRADE DRESS

85.     Despite BIG LEAGUE CHEW's exclusive ownership and continuous use of the Shredded Bubble Gum Trade Dress and the **Big League Chew**® trademarks since 1979, Ford Gum has unlawfully asserted ownership of the Shredded Bubble Gum Trade Dress, including by filing a fraudulent, use-based federal trademark application to register the Shredded Bubble Gum mark pursuant to U.S. Federal Trademark Application, Serial No. 98/478,576 (the "Trademark Application").  A copy of the Trademark Application and the U.S. Patent and Trademark Office record is attached as **Exhibit F**.

86.     The Shredded Bubble Gum Trade Dress has been exclusively owned by BIG LEAGUE CHEW, or its predecessor-in-interest, since 1979, long before Ford Gum was a licensee, and long before Ford Gum filed its fraudulent Trademark Application.

87.     Ford Gum is not related to and is not a predecessor-in-interest to BIG LEAGUE CHEW, or any of its predecessors.

88. The Trademark Application has recently been approved for publication based on the fraudulent and misleading statements in the Trademark Application and the supporting declaration by CEO Scott Lerner.

89. Ford Gum, as a licensee of the **Big League Chew**® trademarks and Shredded Bubble Gum Trade Dress for fourteen (14) years, was well aware of BIG LEAGUE CHEW's longstanding ownership rights in the **Big League Chew**® intellectual property at the time it filed the Trademark Application.

90. Rob Nelson repeatedly told Robbie Spigner and Scott Lerner that BIG LEAGUE CHEW owns all of the **Big League Chew**® intellectual property, including the Shredded Bubble Gum Trade Dress.

91. Ford Gum knew or should have known that neither BIG LEAGUE CHEW nor Rob Nelson authorized Ford Gum to file the Trademark Application in the name of Ford Gum or assert ownership rights in the shredded gum product.

92. Ford Gum's CEO, Scott Lerner, signed the declaration in support of the Trademark Application based on use in commerce under 15 U.S.C. §1051(a) ("Trademark Application Declaration") stating:

   a. The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered.

   b. The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application.

c. The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date.

d. To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

e. To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

f. To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

g. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

See Ex. F.

93. Scott Lerner also attached a fraudulent declaration regarding acquired distinctiveness in support of the shredded gum product configuration (the "Section 2F Declaration"). See Ex. F.

94.     Mr. Lerner signed both declarations under penalty of perjury.

95.     Mr. Lerner's Section 2F Declaration states that "Ford Gum makes and sells the shredded bubble gum product" under the **Big League Chew®** brand (the "Product").  See Ex. F.

96.     Mr. Lerner's Section 2F Declaration also shows multiple images of the Shredded Bubble Gum Trade Dress and identifies various flavors of the **Big League Chew®** shredded gum products holding itself out as the owner of the products and the trade dress and the owner and manufacturer of the shredded bubble gum product.  See Ex. F.

97.     In the Trademark Application Declaration, Mr. Lerner fails to identify Ford Gum as a Licensee of BIG LEAGUE CHEW's trademarks, trade dress and the Licensed Product itself pursuant to the Ford Gum License Agreement.

98.     In the Trademark Application Declaration Mr. Lerner also entirely fails to identify the Ford Gum License Agreement pursuant to which Ford Gum is authorized to use the **Big League Chew®** intellectual property.

99.      Mr. Lerner entirely fails to identify the Ford Gum License Agreement pursuant to which the Licensed Product, the shredded bubble gum, is sold.

100.     There also are many material omissions of fact and false statements in the Section 2F Declaration, including:

      a.  Ford Gum owns the shredded bubble gum product.

      b.  The shredded bubble gum product is Ford Gum's "Product" and is offered in other flavors (Ford Gum then identifies six (6) flavors of the shredded bubble gum product that are trademarked and owned by BIG LEAGUE CHEW.  The Section 2F Declaration shows an image of the same.)

18

c.  Ford Gum has exclusively used the shredded bubble gum trade dress itself or through a predecessor in interest.

d.  Ford Gum began selling the shredded bubble gum product in 1979.

e.  Ford Gum is the only company to offer and sell gum in a shredded shape.

f.  The shredded gum configuration has acquired distinctiveness by virtue of Ford Gum's exclusive use and promotion.

101.  Ford Gum owns and operates a website under the domain name www.fordgum.com in which it holds itself out as BIG LEAGUE CHEW (the "Ford Gum Website").

102.  The Ford Gum Website uses **Big League Chew®** intellectual property, including the Licensed Product, to promote BIG LEAGUE CHEW products as those of Ford Gum as shown in the screenshots of the website thereof attached as **Exhibit G**.

103.  The Ford Gum Website also holds out the **Big League Chew®** registered trademarks as those of Ford Gum. See Ex. G.

## THE FORD GUM LICENSE AGREEMENT

104.  The Ford Gum License Agreement creates obligations of Licensee (*i.e.*, Ford Gum) to protect the **Big League Chew®** intellectual property and Licensed Products, which obligations Ford Gum is currently violating and has repeatedly failed to meet.

105.  The Ford Gum License Agreement includes provisions that prohibit Ford Gum from certain uses of, and actions related to, the **Big League Chew®** intellectual property, including the trademarks, trade dress and Licensed Products.  Ford Gum has violated these provisions.

106.    These prohibitions have been in place for the entirety of BIG LEAGUE CHEW's relationship with Ford Gum.

107.    Nearly identical prohibitions also were in place for the entirety of BIG LEAGUE CHEW's relationship with Amurol.

108.    The Ford Gum License Agreement contains, among others, the following provisions:

    a.    "BIG LEAGUE CHEW and TRNC, through its predecessors-in-interest, has developed a theme for a *shredded bubble gum* in a pouch called **Big League Chew** and has created and continues to create themes, images, concepts, packaging designs, characters, advertising themes and materials, promotional concepts, merchandising arrangements and the like in connection with shredded bubble gum … to be marketed under the trademark **Big League Chew**."  See Ex. A (p. 1).

    b.    "BIG LEAGUE CHEW and TRNC owns substantial goodwill and is the current exclusive owner of all right, title and interest in and to several trademarks which are comprised of the term 'BIG LEAGUE,' including without limitation **Big League Chew** …."  See Ex. A (p. 1).

    c.    "Licensee recognizes the substantial goodwill TRNC has acquired in the Trademarks and the originality of the Trademark, Trade Dress and the Copyrights."  Ex. A (p. 2).

    d.    "Licensee desires to obtain a license to use the Trademarks, the Trade Dress and the Copyrights in connection with manufacturing, marketing and selling *shredded bubble gum* in a pouch …."  Ex. A (p. 2).

e. "TRNC and Licensee will enter into an Equipment Lease Agreement of even date herewith ('Lease') under which Licensee will lease the equipment from TRNC to manufacture the Licensed Products." The Equipment Lease Agreement is attached as **Exhibit H**.

f. The Equipment Lease Agreement was superseded by the Equipment Purchase Agreement on March 30, 2012. A copy of the Equipment Purchase Agreement is attached as **Exhibit I**.

g. The Ford Gum License Agreement expressly defines "Licensed Products" to include:

   i. *"shredded bubble gum in a pouch which is developed, manufactured and sold in association with the Trademark (e.g. BIG LEAGUE CHEW shredded bubble gum)"; and*

   ii. *"all non-BIG LEAGUE brand items utilizing shredded bubble gum."* See Ex. A.

h. "BIG LEAGUE CHEW and TRNC hereby grants to Licensee … a non-assignable exclusive right and license to manufacture, market and sell Licensed Products …." See Ex. A.

i. "Licensee acknowledges that TRNC owns all right, title, and interest in and to the Trademarks and the goodwill symbolized by the Trademarks. All use of the Trademarks by Licensee shall inure to the benefit of and be on behalf of TRNC. Nothing in this License Agreement shall be deemed to constitute or result in an assignment of the Trademarks to Licensee or to give Licensee any

right, title, or interest in or to the Trademarks other than the right to use the Trademarks in accordance with its License Agreement."  See Ex. A (§ 9(a)).

j.  "BIG LEAGUE CHEW and TRNC shall be the sole and exclusive owner of all trademarks, copyrights, trade dress, artwork, packaging design, logos, copy, literary text and advertising material of any sort which in any way utilizes, incorporates or is associated with the Trademarks including all such materials developed by or for Licensee."  See Ex. A (§ 9(a)).

k.  "*Licensee shall not register or apply to register the Trademarks, or any confusingly similar trademarks in its own name*, in any country for any purpose, *or represent that it owns the Trademarks*." See Ex. A (§ 9(b)) (emphasis added).

l.  "Licensee will not attack, or challenge in any court of law or other tribunal anywhere in the world or challenge in any other manner, TRNC's right and title to the Trademarks or TRNC's ownership of any Copyrights in or distinctive features of the Trademarks, or the validity or enforceability of the Trademarks, Copyrights or Trade Dress."  Exhibit A (§ 9(b)).

m.  "Licensee shall not, at any time, acquire or claim any right, title or interest of any nature whatsoever in any such copyright or trademark and agrees to assign to TRNC any and all such rights as may vest or reside in Licensee." See Ex. A (§ 9(c)).

n.  "The Trademarks shall be used in such a manner as to avoid confusion among or deception to the public with regard to the original of the Licensed products."  See Ex. A (§ 12(b)).

o. Pursuant to Section 22, entitled "Non-Compete," during the term of the Ford Gum License Agreement, Ford Gum will not "engage in the manufacture, sale or distribution of any shredded bubble gum …." See Ex. A (§ 22(a)).

   i. "Any violation of this covenant will result in irreparable injury to BIG LEAGUE CHEW and TRNC, and the remedy at law for any breach of the foregoing will be inadequate, and in the event of any such breach, BIG LEAGUE CHEW and TRNC, in addition to any other relief available to it (including the option to terminate this License Agreement), shall be entitled to temporary injunctive relief before trial from any court of competent jurisdiction as a matter of course." See Ex. A (§ 22(b))

   ii. Licensee further agrees "to pay the reasonable legal fees and expenses incurred by TRNC or any successor or assign thereof in enforcing the restrictions contained in this Article." See Ex. A (§ 22(b)).

109. Pursuant to the Ford Gum License Agreement, Ford Gum is required to pay BIG LEAGUE CHEW as royalties a specific percentage "of all Licensee's Net Sales of the Licensed Products …." See Ex. A.

110. Ford Gum agreed to these provisions when it executed the Ford Gum License Agreement and reconfirmed its agreement to these provisions when it executed each of the three amendments to the Ford Gum License Agreement.

111. Ford Gum violated the terms of the Ford Gum License Agreement when it filed the Trademark Application and passed-off BIG LEAGUE CHEW'S famous Shredded Bubble Gum Trade Dress as its own mark.

112.    Neither BIG LEAGUE CHEW nor Rob Nelson gave Ford Gum permission to file the Trademark Application for the shredded gum configuration in Ford Gum's name.

113.    Ford Gum did not send the application to BIG LEAGUE CHEW for review prior to filing it.

114.    Ford Gum did not tell BIG LEAGUE CHEW or Rob Nelson it had been filed.

115.    Ford Gum has falsely argued that BIG LEAGUE CHEW authorized it to file the Trademark Application in its name.  This is patently false; BIG LEAGUE CHEW did not authorize Ford Gum to file the Trademark Application to register anything in its name.

116.    The Ford Gum License Agreement that has been in place for nearly 15 years expressly prohibits Ford Gum from filing the Trademark Application.

117.    Ford Gum's argument that it was authorized is based entirely on its intentional misreading of a March 24, 2024, email exchange between Rob Nelson and Scott Lerner.

118.    On March 26, 2024, Rob Nelson received and email from Scott Lerner, CEO of Ford Gum.  A copy of the email is attached as **Exhibit J**.

119.    Mr. Lerner's email stated:

"Considering the recent discovery of a potential competitive product to Big League Chew, Ford Gum would like to file for a trade dress on the product form of 'shredded bubble gum'.  Once we due [sic] this we would like to send a cease-and-desist letter to Hilco.  I am seeking your approval for us to take this action on behalf of Ford Gum.  If you want to discuss this live, I might suggest we set up a call for next week. Thanks."

120.    Later that same day Rob Nelson sent an email in response which stated, simply, "Scott – excellent idea, I approve."  See Ex. J.

121.    However, Rob Nelson did not approve the filing of an application to register BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress *in Ford Gum's name*. BIG LEAGUE CHEW already owned the Shredded Bubble Gum Trade Dress for decades; it simply hadn't registered it.

122.    Rob Nelson trusted Ford Gum to operate pursuant to the terms of the Ford Gum License Agreement.

123.    The Ford Gum License Agreement expressly prohibits Ford Gum from registering or applying "to register the Trademarks, or any confusingly similar trademarks in its own name … or represent that it owns the Trademarks." See Ex. A (§9(b)).

124.    Additionally, the Ford Gum License Agreement expressly states that Ford Gum "shall not, at any time, acquire or claim any right, title or interest of any nature whatsoever in any such copyright or trademark and agrees to assign to TRNC any and all such rights as may vest or reside in Licensee." See Ex. A (§ (c)).

125.    In other words, with these long-standing provisions in mind, Rob Nelson simply agreed to allow Ford Gum to file an application in BIG LEAGUE CHEW's name and send a cease-and-desist letter, if necessary. Afterall, BIG LEAGUE CHEW already owned, and had owned, the Shredded Bubble Gum Trade Dress for over 40 years.

126.    After the March 26 email exchange, Rob Nelson never heard from Ford Gum about any effort it undertook to prepare or file an application or send a cease-and-desist letter.

127.    Rob Nelson never was asked to review an application, declaration or anything at all.

128.    Rob Nelson would have prevented Ford Gum from filing the Trademark Application had he known about or been afforded an opportunity to review it.

129.    Rob Nelson also would have taken issue with the lies and false statements Mr. Lerner included in both of his supporting declarations.

130.    Ford Gum knew the Shredded Bubble Gum Trade Dress belonged to BIG LEAGUE CHEW; that's why Mr. Lerner asked BIG LEAGUE CHEW for permission to take action.

131.    After the email exchange, in or around September 2024, Rob Nelson learned that Ford Gum had filed the Trademark Application in its name.

132.    Upon learning of this, Rob Nelson was upset and immediately called Scott Lerner.

133.    Rob Nelson told Mr. Lerner he was not made aware that the Trademark Application had been filed and had no idea Ford Gum had taken this action.

134.    Rob Nelson asked Mr. Lerner why the Trademark Application was filed in Ford Gum's name given that BIG LEAGUE CHEW owned the shredded bubble gum configuration and product, and Rob Nelson informed him that he never authorized Ford Gum to file the Trademark Application.

135.    Mr. Lerner did not disagree with any of Rob Nelson's statements or even defend his actions.

136.    Rather, Mr. Lerner immediately suggested to Rob Nelson that they discuss a "buy-out" of BIG LEAGUE CHEW by Ford Gum.

137.    Rob Nelson told him he was not interested in such a discussion, and would not engage in a "buy out" discussion unless his concerns about the unauthorized Trademark Application were resolved.

138.    A few days later Mr. Lerner informed Rob Nelson he was flying to Portland, Oregon to meet with Rob.  Mr. Nelson did not know the purpose of the trip and meeting, and Mr. Lerner did not share a reason with him.

139.    When Mr. Lerner arrived in Oregon, he immediately began asking Mr. Nelson about a "buy-out" by Ford Gum.  Mr. Lerner said it would be in Mr. Nelson's best interests.

140.    Mr. Nelson told Mr. Lerner that he would not discuss anything unless and until his concerns over the unauthorized Trademark Application were resolved.

141.    Mr. Lerner would not engage in such a discussion and told Mr. Nelson he didn't know much about the Trademark Application.

142.    Ford Gum's Trademark Application violated the terms of the Ford Gum License Agreement, so Mr. Nelson had BIG LEAGUE CHEW's attorneys send a letter to Ford Gum to inform it that the Trademark Application was improper, unauthorized, and in violation of the Ford Gum License Agreement.  A copy of the letter from BIG LEAGUE CHEW's counsel to Ford Gum's counsel, dated October 8, 2024, is attached as **Exhibit K**.

143.    Importantly, BIG LEAGUE CHEW's attorneys also informed Ford Gum that Mr. Lerner's declarations were rife with false statements.

144.    In response, rather than simply withdraw the Trademark Application, Ford Gum boldly claimed that it owned BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress.  A copy of the letter Ford Gum's attorneys sent, dated October 16, 2024, is attached as **Exhibit L**.

145.    More specifically, and shockingly, Ford Gum claimed "Ford Gum is the only party that uses the trade dress identified in the Application."  See Ex. L.

146.     Ford Gum further claimed it "is the owner of the only equipment in the United States that manufactures the product in the form of the trade dress [*i.e.*, shredded bubble gum]." See Ex. L.

147.     In response to the assertion that its Trademark Application was rife with false statements, Ford Gum's attorney simply said "We disagree," without even an attempt to address its blatant lies.  See Ex. L.

148.     In making this assertion, Ford Gum ignored BIG LEAGUE CHEW's 44-year history of selling shredded bubble gum and the fact that Ford Gum only owned the equipment it uses to make shredded bubble gum because BIG LEAGUE CHEW leased it to them and then sold it to them.

## THE FORD GUM EQUIPMENT PURCHASE AGREEMENT

149.     In parallel with the Ford Gum License Agreement, TRNC and Ford Gum entered into an Equipment Lease Agreement pursuant to which Ford Gum leased from TRNC the specialized equipment used to make shredded bubble gum. The Equipment Lease Agreement was in effect from 2010 to 2012.  See Ex. H.

150.     TRNC and Ford Gum subsequently entered into an Equipment Purchase Agreement, dated March 30, 2012.  See Ex. I.

151.     The equipment TRNC sold to Ford Gum was specifically configured to exclusively make shredded bubble gum.  Ford Gum did not have any such equipment or capability to make shredded bubble gum until it entered into the Ford Gum License Agreement and Equipment Lease Agreement in 2010.

152.     The Ford Gum License Agreement, Equipment Lease Agreement, and Equipment Purchase Agreement confirm BIG LEAGUE CHEW's exclusive ownership of rights in the

Trademarks, Trade Dress and the Licensed Products. The Shredded Bubble Gum Trade Dress and product is within the definition of Trade Dress and is the Licensed Product under the Ford Gum License Agreement.

153. The Equipment Purchase Agreement prohibits Ford Gum from making shredded bubble gum for anyone other than BIG LEAGUE CHEW. See Ex. I (§ 9(c)).

154. The Equipment Purchase Agreement prohibits Ford Gum from selling, or even attempting to sell, the equipment to anyone without the permission of BIG LEAGUE CHEW. See Ex. I (§ 9(b)).

155. In the event Ford Gum defaults under the Equipment Purchase Agreement, BIG LEAGUE CHEW has the right to reacquire the equipment at no cost. Ex. I (§ 8(b)(i)).

156. Based upon Ford Gum's numerous breaches of the Ford Gum License Agreement and Equipment Purchase Agreement, BIG LEAGUE CHEW has the right to terminate both agreements and reacquire, at no cost, the equipment it sold to Ford Gum.

157. Ford Gum's knowing and intentional acts are causing and will continue to cause damage and irreparable harm to BIG LEAGUE CHEW and its valuable reputation and goodwill with the consuming public for which BIG LEAGUE CHEW has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
### (Trade Dress Infringement Under 15 U.S.C. § 1125(a))

158. BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

159. BIG LEAGUE CHEW has used the distinctive Shredded Bubble Gum Trade Dress for its shredded bubble gum product in interstate commerce continuously since 1979.

160.     BIG LEAGUE CHEW has invested substantial time, effort and financial resources promoting its Shredded Bubble Gum Trade Dress in connection with the marketing and sale of its shredded bubble gum product in interstate commerce.

161.     BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress is nonfunctional and distinctive.

162.     BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress has secondary meaning in the marketplace in that consumers associate that trade dress with a single source of origin.  Consumers are likely to make that same association when the trade dress is used in connection with another manufacturer's product.

163.     Ford Gum manufactures, distributes, advertises, offers for sale, or sells shredded bubble gum in interstate commerce, including shredded bubble gum, using a trade dress that is identical or substantially similar to BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress. BIG LEAGUE CHEW did not authorize or license the use of its distinctive Shredded Bubble Gum Trade Dress on or in connection with the infringing goods.  Ford Gum has manufactured, distributed, advertised, sold, and offered the infringing goods for sale using BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress with the intention of misleading, deceiving, or confusing consumers as to the origin of its goods and of trading on BIG LEAGUE CHEW's reputation and goodwill.

164.     Ford Gum's manufacture, advertising, distribution, selling, and offering to sell infringing products that have a shredded bubble gum trade dress copied from and confusingly similar to BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress are likely to cause confusion on the part of purchasers and potential purchasers in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

165.    As a direct and proximate result of Ford Gum's trade dress infringement, BIG
LEAGUE CHEW has suffered and will continue to suffer irreparable loss of income, profits, and
goodwill and Ford Gum has unfairly acquired and will continue to unfairly acquire income,
profits, and goodwill.

166.    Ford Gum's acts of trade dress infringement will cause further irreparable injury
to BIG LEAGUE CHEW if Ford Gum is not restrained by this Court from further violation of
BIG LEAGUE CHEW's rights.

167.    Due to Ford Gum's violations of the Lanham Act, BIG LEAGUE CHEW is
entitled to injunctive relief, actual and compensatory damages in an amount to be determined at
trial, disgorgement of profits, attorney's fees, costs, and pre-judgment and post-judgment
interest.

168.    Ford Gum's infringement of BIG LEAGUE CHEW's Shredded Bubble Gum
Trade Dress is willful, deliberate, and in bad faith.

169.    BIG LEAGUE CHEW has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**(Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a))**

170.    BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set
forth herein.

171.    By misappropriating and using BIG LEAGUE CHEW's distinctive Shredded
Bubble Gum Trade Dress in commerce, Ford Gum misrepresents and falsely describes to the
general public the origin and source of the infringing goods and creates a likelihood of confusion
by purchasers as to the source of the merchandise.

172.    Ford Gum's unauthorized and unlicensed manufacturing, advertising, distributing,
offering for sale, and sale of the infringing goods in interstate commerce creates express and

implied misrepresentations that those goods were created, authorized, or approved by BIG LEAGUE CHEW, which will damage both BIG LEAGUE CHEW and the public and which will profit Ford Gum.

173. Upon information and belief, Ford Gum has manufactured, distributed, advertised, sold, and offered its infringing goods for sale in interstate commerce using BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress with the intention of misleading, deceiving, or confusing consumers as to the origin of its goods and of trading on BIG LEAGUE CHEW's reputation and goodwill.

174. Ford Gum's unauthorized marketing and sale of the infringing goods in interstate commerce using BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress constitutes a use of a false designation of origin or false representation that wrongfully and falsely designates Ford Gum's products as originating from or connected with BIG LEAGUE CHEW, in violation of 15 U.S.C. § 1125(a).

175. As a direct and proximate result of Ford Gum's acts of unfair competition, BIG LEAGUE CHEW has suffered and will continue to suffer irreparable loss of income, profits and goodwill and Ford Gum has unfairly acquired and will continue to unfairly acquire income, profits and goodwill.

176. Ford Gum's acts of unfair competition will cause further irreparable injury to BIG LEAGUE CHEW if Ford Gum is not restrained by this Court from further violation of BIG LEAGUE CHEW's rights.

177. BIG LEAGUE CHEW has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### (Dilution Under 15 U.S.C. § 1125(c))

178.    BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

179.    BIG LEAGUE CHEW'S distinctive Shredded Bubble Gum Trade Dress has become famous as a result of many years of nationwide use and promotion of the mark by BIG LEAGUE CHEW.

180.    Ford Gum's first use of its trade dress in interstate commerce occurred decades after BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress had become famous.

181.    Ford Gum's trade dress is identical to BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress.

182.    Ford Gum's unauthorized use of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress in interstate commerce in the sale, advertising and promotion of its goods causes dilution by blurring the distinctiveness, strength and value of BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress.

183.    Ford Gum's unauthorized use of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress, as alleged herein, with knowledge of BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress, constitutes a willful intent to trade on the recognition of the famous Shredded Bubble Gum Trade Dress in violation of Section 43(c)(5) of the Lanham Act, 15 U.S.C. § 1125(c)(5).  As required for relief under Section 43(c)(5), Ford Gum made its unauthorized use of its trade dress after October 6, 2006, the date of enactment of the Trademark Dilution Revision Act of 2006.

184.    Due to Ford Gum's violations of the Lanham Act, BIG LEAGUE CHEW is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at

trial, disgorgement of profits, attorney's fees, costs, and pre-judgment and post-judgment interest.

185. Ford Gum's acts of dilution of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress are willful, deliberate, and in bad faith.

186. Without injunctive relief, BIG LEAGUE CHEW has no means by which to stop the continuing dilution by blurring of its famous and distinctive Shredded Bubble Gum Trade Dress.

## FOURTH CLAIM FOR RELIEF
### (State Common Law Trademark and Trade Dress Infringement)

187. BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

188. BIG LEAGUE CHEW has used the distinctive Shredded Bubble Gum Trade Dress for its shredded bubble gum product in interstate commerce continuously since 1979.

189. BIG LEAGUE CHEW has invested substantial time, effort and financial resources promoting its Shredded Bubble Gum Trade Dress in connection with the marketing and sale of its shredded bubble gum product in interstate commerce.

190. BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress is nonfunctional and distinctive.

191. BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress has secondary meaning in the marketplace in that consumers associate that trade dress with a single source of origin. Consumers are likely to make that same association when the trade dress is used in connection with another manufacturer's product.

192. Ford Gum manufactures, distributes, advertises, offers for sale, or sells shredded bubble gum in interstate commerce, including shredded bubble gum, using a trade dress that is

identical or substantially similar to BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress. BIG LEAGUE CHEW did not authorize or license the use of its distinctive Shredded Bubble Gum Trade Dress on or in connection with the infringing goods. Ford Gum has manufactured, distributed, advertised, sold, and offered the infringing goods for sale using BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress with the intention of misleading, deceiving, or confusing consumers as to the origin of its goods and of trading on BIG LEAGUE CHEW's reputation and goodwill.

193.    Ford Gum's manufacture, advertising, distribution, selling, and offering to sell infringing products that have a shredded bubble gum trade dress copied from and confusingly similar to BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress are likely to cause confusion on the part of purchasers and potential purchasers in violation of Illinois law and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

194.    As a direct and proximate result of Ford Gum's trade dress infringement, BIG LEAGUE CHEW has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Ford Gum has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

195.    Ford Gum's acts of trade dress infringement will cause further irreparable injury to BIG LEAGUE CHEW if Ford Gum is not restrained by this Court from further violation of BIG LEAGUE CHEW's rights.

196.    BIG LEAGUE CHEW has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### (State Common Law Trademark Dilution)

197.    BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

198.     BIG LEAGUE CHEW'S distinctive Shredded Bubble Gum Trade Dress has become famous as a result of many years of nationwide use and promotion of the mark by BIG LEAGUE CHEW.

199.     Ford Gum's first use of its trade dress in interstate commerce occurred decades after BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress had become famous.

200.     Ford Gum's trade dress is identical to BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress.

201.     Ford Gum's unauthorized use of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress in interstate commerce in the sale, advertising and promotion of its goods causes dilution by blurring the distinctiveness, strength and value of BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress.

202.     Ford Gum's unauthorized use of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress, as alleged herein, with knowledge of BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress, constitutes a willful intent to trade on the recognition of the famous Shredded Bubble Gum Trade Dress in violation of Illinois law and Section 43(c)(5) of the Lanham Act, 15 U.S.C. § 1125(c)(5).

203.     Without injunctive relief, BIG LEAGUE CHEW has no means by which to stop the continuing dilution by blurring of its famous and distinctive Shredded Bubble Gum Trade Dress.

## SIXTH CLAIM FOR RELIEF
### (Deceptive Trade Practices Under 815 I.L.C.S. § 510)

204.     BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

205.    Ford Gum has and is engaged in deceptive trade practices and caused damage to BIG LEAGUE CHEW.

206.    Ford Gum has and is passing off BIG LEAGUE CHEW's product, namely shredded bubble gum, as its own.

207.    Ford Gum's actions have caused and will cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of the shredded bubble gum product.

208.    Ford Gum's actions have caused and will cause a likelihood of confusion or misunderstanding as to the affiliation, connection or association with, or certification by, BIG LEAGUE CHEW.

209.    Ford Gum has used and is using deceptive representations or designations of the origin with the shredded bubble gum product.

210.    Ford Gum represents that the shredded bubble gum product is of a particular style when, in fact, the distinctive product was created, and the rights are owned, by BIG LEAGUE CHEW.

211.    Ford Gum falsely claimed and continues to claim that it created and owns the right to the shredded bubble gum product and, in so doing, disparages BIG LEAGUE CHEW.

**SEVENTH CLAIM FOR RELIEF**
**(Breach of the Licensing Agreement)**

212.    BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

213.    TRNC, BIG LEAGUE CHEW and Ford Gum entered into the License Agreement.

214.    Ford Gum breached the License Agreement by, among other things:

a. failing to pay royalties as required by the terms of the License Agreement;

b. failing to use its best efforts to affect the sale of the Licensed Products in the Territory;

c. using BIG LEAGUE CHEW's Trademarks and Trade Dress in a manner that violates the terms of the License Agreement;

d. infringing on BIG LEAGUE CHEW's Trademarks and Shredded Bubble Gum Trade Dress;

e. failing to provide reports as required by the License Agreement;

f. failing to acknowledge that BIG LEAGUE CHEW owns all right, title, and interest in and to the Trademarks and Trade Dress and the goodwill symbolized by the Trademarks and Trade Dress;

g. failing to ensure that all use of the Trademarks and Trade Dress and the goodwill symbolized by the Trademarks and Trade Dress inure to the benefit of BIG LEAGUE CHEW;

h. representing that BIG LEAGUE CHEW is <u>not</u> the sole and exclusive owner of all trademarks, copyrights, trade dress, and all materials of any sort which in any way utilizes, incorporates or is associated with the Trademarks including all such materials developed by Ford Gum;

i. claiming a right, title and interest in BIG LEAGUE CHEW's Trademarks and Trade Dress;

j. attempting to acquire a right, title and interest to BIG LEAGUE CHEW's Trademarks and Trade Dress;

k.  applying to register in its own name BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress;

l.  failing to cooperate with BIG LEAGUE CHEW in facilitating BIG LEAGUE CHEW's control of the nature and quality of the Licensed Products;

m.  using BIG LEAGUE CHEW's Trademarks and Trade Dress in advertising beyond the reproduction and promotion of the Licensed Products;

n.  utilizing the equipment purchased from TRNC for products other than the Licensed Products; and

o.  competing with BIG LEAGUE CHEW.

215.  TRNC are BIG LEAGUE CHEW are in compliance with the License Agreement.

216.  TRNC and BIG LEAGUE CHEW have suffered damages by Ford Gum's breaches of the License Agreement.

**EIGHTH CLAIM FOR RELIEF**
**(Breach of the Equipment Purchase Agreement)**

217.  BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

218.  TRNC, BIG LEAGUE CHEW and Ford Gum entered into the Equipment Purchase Agreement.

219.  Ford Gum breached the Equipment Purchase Agreement by, among other things:

a.  failing to pay royalties as required by the terms of the License Agreement;

b.  failing to use its best efforts to affect the sale of the Licensed Products in the Territory;

c.  using BIG LEAGUE CHEW's Trademarks and Trade Dress in a manner that violates the terms of the License Agreement;

39

d.   infringing on BIG LEAGUE CHEW's Trademarks and Shredded Bubble Gum Trade Dress;

e.   failing to provide reports as required by the License Agreement;

f.   failing to acknowledge that BIG LEAGUE CHEW owns all right, title, and interest in and to the Trademarks and Trade Dress and the goodwill symbolized by the Trademarks and Trade Dress;

g.   failing to ensure that all use of the Trademarks and Trade Dress and the goodwill symbolized by the Trademarks and Trade Dress inure to the benefit of BIG LEAGUE CHEW;

h.   representing that BIG LEAGUE CHEW is <u>not</u> the sole and exclusive owner of all trademarks, copyrights, trade dress, and all materials of any sort which in any way utilizes, incorporates or is associated with the Trademarks and Trade Dress including all such materials developed by Ford Gum;

i.   claiming a right, title and interest in BIG LEAGUE CHEW's Trademarks and Trade Dress;

j.   attempting to acquire a right, title and interest to BIG LEAGUE CHEW's Trademarks and Trade Dress;

k.   applying to register in its own name BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress;

l.   failing to cooperate with BIG LEAGUE CHEW in facilitating BIG LEAGUE CHEW's control of the nature and quality of the Licensed Products;

m.   using BIG LEAGUE CHEW's Trademarks and Trade Dress in advertising beyond the reproduction and promotion of the Licensed Products;

      n.   utilizing the equipment purchased from TRNC for products other than the

            Licensed Products; and

      o.   competing with BIG LEAGUE CHEW by, among other things, offering for

            sale and selling shredded bubble gum.

220.    TRNC are BIG LEAGUE CHEW are in compliance with the Equipment Purchase Agreement.

221.    TRNC and BIG LEAGUE CHEW have suffered damages by Ford Gum's breaches of the Equipment Purchase Agreement.

**NINTH CLAIM FOR RELIEF**
**(Accounting)**

222.    BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

223.    BIG LEAGUE CHEW is entitled to an accounting because BIG LEAGUE CHEW and Ford Gum are parties to the License Agreement which Ford Gum has breached as described herein-above.

224.    The License Agreement requires Ford Gum to preserve all books and records and make them available to BIG LEAGUE CHEW for inspection and audit.

225.    BIG LEAGUE CHEW has suffered damages as a result of Ford Gum's breach of the License Agreement.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment as follows:

1.    That Ford Gum, and its respective officers, agents, servants, employees, directors, shareholders, and attorneys, and all persons in active concert or participation with it, or any of them, who receive actual notice of the injunctions prayed for herein by personal service or

otherwise, be preliminary and then permanently restrained and enjoined, pursuant to 15 U.S.C. §§ 1116, 1125(c), and Illinois law, from:

    a.  Directly or indirectly infringing BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress or using any mark or trade dress that is confusingly similar thereto in any manner, including but not limited to manufacturing, distributing, advertising, selling, or offering for sale any products that infringe or bear such trademarks or trade dress;

    b.  Manufacturing, producing, advertising, promoting, displaying, shipping, offering for sale, selling, or distributing any products that copy, reproduce, or bear any colorable imitations of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress, or any mark or trade dress that is confusingly similar thereto;

    c.  Using Ford Gum's business, or in connection with the marketing, distribution, offering for sale, or sale of any products, any copy, reproduction, or colorable imitation of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress that causes or is likely to cause dilution of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress; and

    d.  Doing any other act or thing that is likely to cause persons to believe that Ford Gum's goods or commercial activities originate with, or are licensed, sponsored, or authorized by Plaintiffs.

    2.    That Ford Gum be ordered to provide an accounting within 14 days of entry of judgment herein;

3.     That Ford Gum be ordered, pursuant to 15 U.S.C. § 1116, to file with this Court and to serve on counsel for Plaintiffs, within 30 days after entry of judgment herein, a written report under oath setting forth in detail the manner in which Ford Gum has complied with the injunction ordered by the Court;

4.     That Ford Gum be ordered, pursuant to 15 U.S.C. § 1118, to deliver up to the Court for destruction or other disposition, all labels, signs, prints, packages, wrappers, receptacles, advertisements, and promotional materials depicting or marketing the shredded bubble gum mark it claims, and all materials and means of making the same;

5.     That Ford Gum be ordered, pursuant to 15 U.S.C. § 1117(a) and Illinois law, to pay Plaintiffs all of their profits from the sale of products utilizing the shredded bubble gum mark it claims, and that such profits be enhanced on the basis of Ford Gum's willful infringement and dilution of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress;

6.     That Ford Gum be ordered, pursuant to 15 U.S.C. § 1117(a) and Illinois law, to pay to Plaintiffs all damages sustained by Plaintiffs as a result of Ford Gum's infringement and dilution of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress and its deceptive acts, and that such award be trebled on the basis of Ford Gum's willful infringement, dilution, and deceptive acts;

7.     That Ford Gum be ordered to pay Plaintiffs compensatory and consequential damages in an amount to be determined at trial;

8.     That Ford Gum be ordered, based upon its willful, malicious, and egregious actions, to pay Plaintiffs punitive damages in an amount to be determined at trial;

9. That Ford Gum be ordered, pursuant to 15 U.S.C. § 1117(a), Illinois statutory and common law, and the License Agreement, to pay Plaintiffs their attorney's fees and the costs and expenses of this action; and

10. Granting Plaintiffs such other and proper relief against Ford Gum as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury on all issues so triable.


Dated: November 18, 2024                          s/ Mike R. Turner

**NEAL GERBER EISENBERG LLP**
Mike R. Turner (ISBN 6297803)
Andrew Fraker (ISBN 6312833)
2 North LaSalle Street, Suite 1700
Chicago, IL 60602
Tel: (312) 269-8000
mturner@nge.com
afraker@nge.com

**BOND SCHOENECK & KING, PLLC**
Jeffrey F. Allen, Esq. (*Petition for Admission Pending*)
Edward P. Hourihan, Jr., Esq. (*Petition for Admission Pending*)
350 Linden Oaks, Third Floor
Rochester, NY 14625
Telephone: 585-362-4700
Email: JeffreyAllen@bsk.com
Email: ehourihan@bsk.com

*Attorneys for Plaintiffs*
*Big League Chew Properties, LLC*
*The Rob Nelson Company, Inc.*