**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BIG LEAGUE CHEW PROPERTIES, LLC, and THE ROB NELSON COMPANY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FORD GUM & MACHINE COMPANY, INC., <br><br> Defendant. | **Case No. 1:24-cv-11837** <br><br> **Honorable Franklin U. Valderrama** |
| FORD GUM & MACHINE COMPANY, INC., <br><br> Counter-Plaintiff, <br><br> v. <br><br> BIG LEAGUE CHEW PROPERTIES, LLC, THE ROB NELSON COMPANY, INC., and DOES 1 - 10, <br><br> Counter-Defendants. | |

**DEFENDANT FORD GUM & MACHINE COMPANY, INC.'S**
**ANSWER TO COMPLAINT AND COUNTERCLAIMS**
**DEMAND FOR JURY TRIAL**

Defendant Ford Gum & Machine Company, Inc. ("Defendant" or "Ford Gum"), through

the undersigned counsel, responds to Plaintiffs Big League Chew Properties, LLC and The Rob

Nelson Company, Inc. ("Plaintiffs")'s Complaint (ECF 1) and asserts its Counterclaims as

follows:

# I.
## ANSWER

### PRELIMINARY STATEMENT

1.      BIG LEAGUE CHEW, owner of the iconic **Big League Chew®** brand of shredded bubble gum, has filed this lawsuit against Ford Gum, a licensee of the **Big League Chew®** brand for over 14 years, to defend and preserve the very existence of its unique and beloved product.

**ANSWER:** Ford Gum admits that the records at the United States Patent and Trademark Office reflect that Plaintiff Big League Chew Properties, LLC ("BLCP") is the owner of U.S. Registration No. 1254665 for the BIG LEAGUE CHEW word mark. Ford Gum is informed and believes, and based thereon alleges, that Plaintiff, The Rob Nelson Company, Inc., was at one time the owner of the BIG LEAGUE CHEW word mark. Ford Gum admits to entering into a written License Agreement dated July 16, 2010 to license BIG LEAGUE CHEW and other trademarks and copyrights, and further admits that the License Agreement, with amendments, has been in force and effect since July 16, 2010. Ford Gum denies that the License Agreement dated July 16, 2010, and the amendments thereto, include any trade dress in the shape of the product (the "Shredded Gum Trade Dress"). In fact, neither the definition for "Trademark" nor "Trade Dress" in the License Agreement includes the Shredded Gum Trade Dress or any trade dress in the shape of any product. Ford Gum denies the additional remaining factual allegations in Paragraph 1 of the Complaint, and denies that Plaintiffs' Complaint is necessary or has any legal merit. Ford Gum denies that the existence of the product is in jeopardy based on any action or inaction of Ford Gum. Ford Gum denies that this lawsuit is necessary; rather, Ford Gum asserts that Plaintiffs have brought this action in bad faith, in concealment of material facts, and that the facts do not support any of the legal claims asserted, and that attorneys' fees should be awarded to Ford Gum against Plaintiffs.

2.     BIG LEAGUE CHEW unfortunately has no choice; Ford Gum betrayed BIG LEAGUE CHEW and its millions of fans by unfairly and willfully trading on the reputation and success of BIG LEAGUE CHEW's distinctive, world-famous brand of shredded bubble gum.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 2 of the Complaint.

3.     First, Ford Gum blatantly breached its agreements with BIG LEAGUE CHEW.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 3 of the Complaint.

4.     Second, Ford Gum intentionally infringed BIG LEAGUE CHEW's famous shredded bubble gum trade dress by, among other things, filing a trademark application with the U.S. Patent and Trademark Office and asserting ownership of, and attempting to register *in its own name*, BIG LEAGUE CHEW's famous shredded bubble gum configuration and distinctive product configuration (the "Shredded Bubble Gum Trade Dress").

**ANSWER:**  Ford Gum admits that the Shredded Gum Trade Dress is famous.  Ford Gum admits that Ford Gum owns the Shredded Gum Trade Dress.  Ford Gum admits that it filed a trademark application in its own name to register the Shredded Gum Trade Dress, which is the mark consisting of "a three-dimensional configuration of the goods comprised of shreds or strings" (the "Shredded Gum Trade Dress Application"), which has been assigned US Application Serial No. 98478576.  Ford Gum denies the remaining allegations in Paragraph 4 of the Complaint.

5.     In its application to the Trademark Office, Ford Gum falsely claims (under penalty of perjury) that it was the very "first company to offer and sell" shredded bubble gum. Ford Gum's statement ignores many facts, including: BIG LEAGUE CHEW has been selling shredded bubble gum for nearly 45 years; BIG LEAGUE CHEW did not even authorize Ford Gum to make shredded bubble gum until 2010; and BIG LEAGUE CHEW literally provided Ford Gum with the equipment necessary to make shredded bubble gum in 2010.

**ANSWER:** Ford Gum denies making any false statement in the Declaration submitted in support of the Shredded Gum Trade Dress Application. Ford Gum denies omitting any necessary facts in the Declaration in support of the Shredded Gum Trade Dress Application. Ford Gum denies any remaining allegations of Paragraph 5 of the Complaint.

6.     Ford Gum's betrayal of BIG LEAGUE CHEW directly conflicts with and jeopardizes BIG LEAGUE CHEW's intellectual property rights, and breaches the very license agreement with BIG LEAGUE CHEW that authorized Ford Gum to manufacture shredded bubble gum.

**ANSWER:** Ford Gum denies the allegations in Paragraph 6 of the Complaint.

7.     Ford Gum's wrongful acts are intentional, egregious, and unfortunately threaten the very existence of BIG LEAGUE CHEW and its immensely popular shredded bubble gum product that has become an enduring part of sports and American culture.

**ANSWER:** Ford Gum admits that BIG LEAGUE CHEW is a popular brand, and denies the remaining allegations in Paragraph 7 of the Complaint.

## THE PARTIES

8.     BIG LEAGUE CHEW is a limited liability company formed pursuant to the laws of the State of Oregon with its principal place of business in Vancouver, Washington.

**ANSWER:** Ford Gum lacks knowledge regarding the facts alleged in Paragraph 8 of the Complaint and on that basis denies them.

9.     TRNC is a corporation formed pursuant to the laws of the State of Washington with its principal place of business in Vancouver, Washington.

**ANSWER:** Ford Gum lacks knowledge regarding the facts alleged in Paragraph 9 of the Complaint and on that basis denies them.

SMRH:4911-9569-7922.2

10.     Ford Gum is a corporation formed pursuant to the laws of the State of Illinois with its principal place of business in Akron, New York.

**ANSWER:**  Ford Gum admits the allegations in Paragraph 10 of the Complaint.

## **RELATED PLAYERS**

11.     Chaver Capital Partners is a private equity investment firm located in San Francisco, California that purchased Ford Gum in May 2022.

**ANSWER:**  Ford Gum admits that Chaver Capital Partners is located in Dallas, Texas and that an affiliate of the principals of Chaver Capital Partners purchased Ford Gum on May 27, 2022.

12.     Upon information and belief, Grey Rock Capital Group, which has offices in Chicago, Connecticut, and California, is an investor which, directly or indirectly, provided financial support for Chaver Capital's acquisition of Ford Gum in May 2022.

**ANSWER:**  Ford Gum admits that Greyrock Capital Group, LLC organizes and manages privately placed funds that make debt and equity investments.  One of those funds, GCG Investors V, LP, made an equity investment in and lent funds to entities that acquired the stock of Ford Gum.

13.     Scott Lerner is an individual who became the Chief Executive Officer of Ford Gum in October 2022.

**ANSWER:**  Ford Gum admits the allegations in Paragraph 13 of the Complaint

14.     Associated International Marketing, Inc. ("AIM") is a corporation formed pursuant to the State of Illinois with its principal place of business in Chicago, Illinois.

**ANSWER:**  Ford Gum lacks knowledge regarding the facts alleged in Paragraph 14 of the Complaint and on that basis denies them.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over federal claims under 15 U.S.C.

§ 1121, 15 U.S.C. § 1125(a) and (c), 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

**ANSWER:** Ford Gum admits that the Court has subject matter jurisdiction over federal

claims brought under the Lanham Act.

16. This Court has supplemental jurisdiction over the related state law claims

pursuant to 28 U.S.C. § 1367(a).

**ANSWER:** Ford Gum denies the allegations in Paragraph 16 of the Complaint.

17. This Court also has jurisdiction over all claims based on diversity of citizenship

among the Plaintiffs and Defendant pursuant to 28 U.S.C. § 1332.

**ANSWER:** Ford Gum denies the allegations in Paragraph 17 of the Complaint.

18. This Court has personal jurisdiction over Defendant because it is incorporated in

the State of Illinois and has offices in Illinois.

**ANSWER:** Ford Gum admits that the Court has personal jurisdiction over Ford Gum

because it is incorporated in Illinois. Ford Gum denies the remaining allegations in Paragraph 18

of the Complaint.

19. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this

District. Moreover, the forum selection clause contained in the License Agreement between

Plaintiffs and Ford Gum (the "Ford Gum License Agreement") designates the federal courts of

Illinois as the exclusive "jurisdiction and venue" of this action. A copy of the Ford Gum License

Agreement is attached as **Exhibit A**.

**ANSWER:** Ford Gum admits that venue is proper in the United States District Court for

the District of Illinois pursuant to that certain License Agreement dated July 16, 2010. Ford

Gum admits that a copy of the Ford Gum License Agreement is attached to the Complaint as Exhibit A. Ford Gum denies the remaining allegations in Paragraph 19 of the Complaint.

### BIG LEAGUE CHEW HAS BEEN A HOUSEHOLD NAME FOR DECADES

20.     Rob Nelson is the founder, president and owner of Big League Chew Properties, LLC ("BIG LEAGUE CHEW") and The Rob Nelson Company, Inc. ("TRNC").

**ANSWER:** Ford Gum lacks knowledge regarding the facts alleged in Paragraph 20 of the Complaint and on that basis denies them.

21.     Rob Nelson is the creator of Big League Chew® shredded bubble gum.

**ANSWER:** Ford Gum admits that Rob Nelson was involved in the creation of BIG LEAGUE CHEW shredded bubble gum.

22.     BIG LEAGUE CHEW owns the iconic Big League Chew® brand of shredded bubble gum.

**ANSWER:** Ford Gum admits that the records at the United States Patent and Trademark Office reflect that BLCP is the owner of U.S. Registration No. 1254665 for the BIG LEAGUE CHEW word mark. Ford Gum denies any remaining allegations of Paragraph 22 of the Complaint.

23.     BIG LEAGUE CHEW owns the intellectual property used in connection with Big League Chew® shredded bubble gum, including the configuration of the gum itself.

**ANSWER:** Ford Gum admits that the records at the United States Patent and Trademark Office reflect that BLCP is the owner of U.S. Registration No. 1254665 for the BIG LEAGUE CHEW word mark. Ford Gum denies that Plaintiffs own the Shredded Gum Trade Dress. Ford Gum denies any remaining allegations of Paragraph 23 of the Complaint.

24.     BIG LEAGUE CHEW's primary asset is its intellectual property portfolio.

**ANSWER:** Ford Gum lacks knowledge of the facts alleged in Paragraph 24 of the Complaint and on that basis denies them.

25. There is no other shredded bubble gum product with this distinctive product configuration.

**ANSWER:** Ford Gum admits that it is the only manufacturer of shredded gum and the only manufacturer of gum with the Shredded Gum Trade Dress, and further admits that it manufactures BIG LEAGUE CHEW shredded gum and CAROUSEL Easter Grass bubble gum.

26. Big League Chew® shredded bubble gum has been one of the most well-known specialty gums in the United States for decades, especially among baseball enthusiasts, baseball players, little league families and bubble gum lovers.

**ANSWER:** Ford Gum admits the allegations in Paragraph 26 of the Complaint.

27. Big League Chew® shredded bubble gum is in the Baseball Hall of Fame and is known as the HALL OF FAME BUBBLE GUM™.

**ANSWER:** Ford Gum admits that BIG LEAGUE CHEW shredded bubble gum is in the Baseball Hall of Fame and is referred to as the HALL OF FAME BUBBLE GUM. Ford Gum lacks knowledge regarding the remaining allegations in Paragraph 27 of the Complaint and therefore denies them.

28. BIG LEAGUE CHEW's story is well known, and versions are printed on its packaging, including the "Outta Here Original" package, which states:

*"Sitting in a bullpen in the summer of 1977, Portland Maverick lefthander Rob*

*Nelson came up with an idea that has had a lasting impact on the game of*

*baseball: shredded bubble gum in a stay fresh pouch. He named it Big League*

*Chew®. Rob took a swing at his first homemade batch of Big League Chew on*

*February 6, 1979 (Babe Ruth's birthday!) and with the help of his teammate Jim*

*Bouton, Rob's gum officially hit the retail shelves in 1980."*

**ANSWER:** Ford Gum admits that the reverse side of the packaging includes the information stated in Paragraph 28 of the Complaint, which was provided by Plaintiffs. Ford Gum is without information and belief as to the remaining allegations in Paragraph 28 of the Complaint and therefore denies them.

29.     A photocopy of the packaging of Big League Chew®'s "Outta Here Original" (both front and back sides) is attached as Exhibit B.

**ANSWER:** Ford Gum admits the allegations in Paragraph 29 of the Complaint.

30.     Big League Chew® shredded bubble gum has been sold for nearly 45 years.

**ANSWER:** Ford Gum admits the allegations in Paragraph 30 of the Complaint.

31.     During those decades, over one billion pouches of Big League Chew® shredded bubble gum have been sold. The following photo of Rob Nelson on the MLB Network's "MLB Central Show" celebrates and promotes the day on which the one billionth pouch of Big League Chew® shredded bubble gum was sold:



**Big League Chew® Celebrates Billionth Pouch Produced**
**May 3, 2023**

**ANSWER:** Ford Gum admits the allegations in Paragraph 31 of the Complaint.

32. Big League Chew® shredded bubble gum is listed among The 21 Best Gum Brands in the United States according to an article form Candy Retailer dated August 24, 2023.

**ANSWER:** Ford Gum admits the allegations in Paragraph 32 of the Complaint.

33. BIG LEAGUE CHEW is the current owner of a portfolio of trademarks, consisting of both common law and registered marks.

**ANSWER:** Ford Gum admits that the records at the United States Patent and Trademark Office reflect that BLCP is the owner of U.S. Registration No. 1254665 for the BIG LEAGUE CHEW word mark. Ford Gum denies that Plaintiffs own any registered or common law rights in the Shredded Gum Trade Dress or in any shape of any gum product. Ford Gum lacks knowledge regarding any remaining allegations of Paragraph 33 of the Complaint and on that basis denies them.

34. BIG LEAGUE CHEW or its predecessor-in-interest has owned the unique and inherently distinctive shredded bubble gum product configuration (the "Shredded Bubble Gum Trade Dress") since Rob Nelson created it on February 6, 1979.

**ANSWER:** Ford Gum admits that one or more Plaintiffs and/or their predecessors-in-interest owned the "Shredded Bubble Gum Trade Dress" from 1979 until July 16, 2010, even though Plaintiffs have denied the existence of any such product configuration trade dress rights during that period, and after. Ford Gum denies that Plaintiffs own the Shredded Gum Trade Dress. Ford Gum owns the Shredded Gum Trade Dress. Ford Gum admits that the Shredded Gum Trade Dress is unique and that it is inherently distinctive and has also acquired distinctiveness over time. Ford Gum admits that Ron Nelson was involved in the creation of the shredded gum product in 1979.

35.     Photos of BIG LEAGUE CHEW's shredded bubble gum product configuration are prominently displayed and advertised on www.BigLeagueChew.com, the website owned by BIG LEAGUE CHEW, as well as numerous other websites from which consumers can purchase Big League Chew® shredded bubble gum. The following two examples of BIG LEAGUE CHEW's shredded bubble gum product are displayed, advertised, and available for purchase on BIG LEAGUE CHEW's Website and Amazon.com:





**ANSWER:** Ford Gum denies that the domain name, www.BigLeagueChew.com, is owned by either of the Plaintiffs. Ford Gum admits that the photograph depicting fingers holding shreds of gum are on the BigLeagueChew.com website. Ford Gum admits that photos of the product showing the Shredded Gum Trade Dress are displayed and advertised on websites

from which consumers can purchase the product.  Ford Gum denies that Plaintiffs own the

Shredded Gum Trade Dress.  Ford Gum denies any remaining allegations of Paragraph 35 of the

Complaint.

36.     Rob Nelson created the Big League Chew® product as a healthy alternative to

chewing tobacco. In the article titled Big League Chew – Retrospective of an American Original,

dated February 6, 2012, the following portion of Big League Chew's story is included:

> *"Uniforms were bad in the 1970s, you had those bright white shoes, and guys*
>
> *who chewed tobacco took delight in soiling teammates' shoes. Jim Bouton had*
>
> *asked me if I ever chewed, and he couldn't understand why guys did it. Half an*
>
> *inning went by and I brought up my idea for shredding gum, an idea I had since I*
>
> *was a kid."*

**ANSWER:**  Ford Gum admits that Mr. Nelson was involved in the creation of the

product.  Ford Gum lacks knowledge regarding Mr. Nelson's subjective intention and admits that

the language quoted is in the source identified.  Ford Gum denies any remaining allegations of

Paragraph 36 of the Complaint.

37.     Once Rob Nelson conceived the concept of shredded bubble gum and the name

Big League Chew, he made the first batch of the product in the kitchen of then Portland

Mavericks' bat boy Todd Field in February 1979.

**ANSWER:**  Ford Gum admits that Rob Nelson was involved in the creation of the

product in 1979.  Ford Gum lacks knowledge regarding the remaining allegations in Paragraph

37 of the Complaint and therefore denies them.

38.     Rob Nelson partnered with New York Yankees legend Jim Bouton, his friend and

teammate from the Portland Mavericks, to sell the idea. They pitched the idea to a few

companies and finally joined forces with Amurol Confections Company, a subsidiary of the Wrigley Company.

**ANSWER:** Ford Gum admits that Amurol Confections Company manufactured the product before Ford Gum made it. Ford Gum lacks knowledge regarding the remaining allegations in Paragraph 38 of the Complaint and therefore denies them.

39. Nelson created and has continuously owned all rights in the Big League Chew® Trademarks and Trade Dress, either individually, jointly with Jim Bouton, or through authorized companies from February 6, 1979 until present.

**ANSWER:** Ford Gum admits that Mr. Nelson was involved in the creation of the product. Ford Gum further admits that one or more Plaintiffs, and/or their predecessors-in-interest continuously used and owned the "Shredded Bubble Gum Trade Dress" from 1979 until July 16, 2010, even though Plaintiffs have denied the existence of any such product configuration trade dress rights during that period, and beyond. Ford Gum denies that Plaintiffs own the Shredded Gum Trade Dress. Ford Gum owns the Shredded Gum Trade Dress. Ford Gum lacks knowledge regarding the remaining allegations in Paragraph 39 of the Complaint and therefore denies them.

## HISTORY OF BIG LEAGUE CHEW'S TRADEMARKS AND TRADE DRESS

40. Nelson and Bouton were 50/50 business partners in the early days of the business.

**ANSWER:** Ford Gum lacks knowledge regarding the allegations in Paragraph 40 of the Complaint and therefore denies them.

41. In light of Bouton's connections and business knowledge, Nelson authorized him, through his company, The Jim Bouton Corporation, to apply to register certain trademarks and copyrights in connection with the Big League Chew® shredded bubble gum product.

**ANSWER:** Ford Gum lacks knowledge regarding the allegations in Paragraph 41 of the Complaint and therefore denies them.

42.     Though Bouton was listed as the registrant of the trademarks at that time, he and Nelson jointly owned the intellectual property, including: (a) the registered trademarks; (b) the registered and common law copyrights; and (c) the common law trademarks and trade dress, including the shredded gum product configuration and the stay fresh pouch, the characters, slogans and other aspects of the Big League Chew® theme.

**ANSWER:** Ford Gum lacks knowledge of the allegations in Paragraph 42 of the Complaint and therefore denies them.

43.     The shredded gum product configuration has always been the core of the Big League Chew® brand.

**ANSWER:** The allegations in Paragraph 43 are vague and ambiguous and Ford Gum denies them on that basis.

44.     As the business evolved, Nelson and Bouton transferred ownership of the IP rights between and among companies they created, owned and controlled.

**ANSWER:** Ford Gum lacks knowledge regarding the allegations in Paragraph 44 of the Complaint and therefore denies them.

45.     The Jim Bouton Corporation owned the trademarks and then sold the "Big League" trademarks and related intellectual property rights to the Big League Company on or about November 15, 1999.

**ANSWER:** Ford Gum lacks knowledge regarding the allegations in Paragraph 45 of the Complaint and therefore denies them.

46.     Nelson and Bouton jointly owned and controlled the Big League Company which was a sister company to The Rob Nelson Company.

**ANSWER:** Ford Gum lacks knowledge regarding the allegations in Paragraph 46 of the Complaint and therefore denies them.

47.     Pursuant to a Restated Purchase and Sale Agreement, the "Big League" trademarks and related intellectual property rights were transferred to The Rob Nelson Company ("TRNC") on or about November 14, 2003.

**ANSWER:** Ford Gum lacks knowledge regarding the allegations in Paragraph 47 of the Complaint and therefore denies them.

48.     TRNC transferred the Big League Chew® trademarks and related intellectual property rights to BIG LEAGUE CHEW on or about September 3, 2014, which now owns all of the Big League Chew® intellectual property.

**ANSWER:** Ford Gum denies that Plaintiff BLCP owns the Shredded Gum Trade Dress. Ford Gum owns the Shredded Gum Trade Dress.  Ford Gum lacks knowledge regarding the remaining allegations in Paragraph 48 of the Complaint and therefore denies them.

## TRADEMARK, TRADE DRESS AND THEME LICENSING

49.     On July 6, 1981, The Jim Bouton Company, predecessor-in-interest to BIG LEAGUE CHEW, entered into a trademark license agreement with Amurol Confections Company, a subsidiary of the Wrigley Company ("Amurol"), to license the then-existing Big League Chew® trademarks, trade dress and themes, including the Shredded Bubble Gum Trade Dress ("1981 Original License Agreement"). A copy of the 1981 Original License Agreement is attached as Exhibit C.

**ANSWER:** Ford Gum denies that Shredded Gum Trade Dress was included in Exhibit C to the Complaint.  Ford Gum lacks knowledge regarding the remaining allegations in Paragraph 49 of the Complaint and therefore denies them.

50. The Original License Agreement was superseded by a license agreement between the parties dated January 1, 1992 ("Second License Agreement").

**ANSWER:** Ford Gum lacks knowledge regarding the allegations in Paragraph 50 of the Complaint and therefore denies them.

51. The Second License Agreement was superseded by a license agreement between Amurol Confections Company and the Big League Company dated January 1, 2002 ("Third License Agreement"). A copy of the Third License Agreement is attached as Exhibit D.

**ANSWER:** Ford Gum lacks knowledge regarding the allegations in Paragraph 51 of the Complaint and therefore denies them.

52. TRADEMARK is defined in the Third License Agreement as: "WHEREAS TBLC has developed a theme for a shredded gum in a pouch called BIG LEAGUE CHEW and has created and continues to create themes, images, concepts, packaging designs, characters, advertising themes and materials, promotional concepts, merchandising arrangements and the like in connection with shredded gum in a pouch and other goods and services to be marketed under the trademark BIG LEAGUE CHEW (hereinafter the 'TRADEMARK')." See Ex. D.

**ANSWER:** Ford Gum lacks knowledge regarding the allegations in Paragraph 52 of the Complaint and therefore denies them.

53. The license agreements with Amurol memorialized and confirmed BIG LEAGUE CHEW's (or a predecessor's) exclusive ownership of the trademarks, trade dress and the goodwill associated with such marks inuring to the Licensor's benefit.

**ANSWER:** Ford Gum lacks knowledge regarding the allegations in Paragraph 53 of the Complaint and therefore denies them.

54.     BIG LEAGUE CHEW, or its predecessor-in-interest, maintained an excellent working relationship with Amurol over the years, including during the termination of the license agreement and the transition of its license agreement with Ford Gum.

**ANSWER:**  Ford Gum lacks knowledge regarding the allegations in Paragraph 54 of the Complaint and therefore denies them.

55.     BIG LEAGUE CHEW, or its predecessor-in-interest, entered into a License Agreement with Ford Gum on July 16, 2010. Thereafter, the License Agreement was amended pursuant to a First Amendment to License Agreement, dated March 30, 2012, a Second Amendment to License Agreement, dated November 21, 2014, and a Third Amendment to License Agreement, dated October 28, 2019 (collectively, the "Ford Gum License Agreement"). See Ex. A.

**ANSWER:**  Ford Gum admits that Plaintiff The Rob Nelson Company entered into that certain License Agreement with Ford Gum on July 16, 2010, which was amended pursuant to a First Amendment to License Agreement, dated March 30, 2012, a Second Amendment to License Agreement, dated November 21, 2014, and a Third Amendment to License Agreement, dated October 28, 2019.  There are also other agreements between the parties.

56.     The Ford Gum License Agreement also memorialized and confirmed BIG LEAGUE CHEW's, or its predecessor-in-interest's, exclusive ownership of the trademarks, trade dress and the goodwill associated with such marks inuring to the Licensor's benefit.

**ANSWER:**  Ford Gum denies that the License Agreement between The Rob Nelson Company and Ford Gum dated July 16, 2010 and/or any of the amendments thereto includes the Shredded Gum Trade Dress.  Ford Gum denies any remaining allegations of Paragraph 56 of the Complaint.

57.     BIG LEAGUE CHEW or its predecessor-in-interest has been an active Licensor fully engaged in the business throughout the existence of the Big League Chew® products and the business.

**ANSWER:**  The allegations in Paragraph 57 of the Complaint are vague and ambiguous, and Ford Gum denies them on that basis.

58.     BIG LEAGUE CHEW, or its predecessor-in-interest, has exercised significant and meaningful quality control over the Big League Chew® products via its license agreements and through its business activities and dealings with its licensees.

**ANSWER:**  The allegations in Paragraph 58 of the Complaint are vague and ambiguous, and Ford Gum denies them on that basis.

59.     BIG LEAGUE CHEW, or its predecessor-in-interest, has actively engaged in quality monitoring in connection with its licensed business directly and through its business partners over the years.

**ANSWER:**  The allegations in Paragraph 59 of the Complaint are vague and ambiguous, and Ford Gum denies them on that basis.

60.     BIG LEAGUE CHEW, or its predecessor-in-interest, maintained ownership and control over the use of the Trademarks and Trade Dress pursuant to such license agreements.

**ANSWER:**  Ford Gum denies that Plaintiffs maintained ownership and control over the Shredded Gum Trade Dress.  Ford Gum lacks knowledge regarding the remaining allegations of Paragraph 60 of the Complaint and on that basis denies them.

## DISTINCTIVENESS OF BIG LEAGUE CHEW'S TRADEMARK AND TRADE DRESS

61.     For nearly 45 years, Rob Nelson, individually, through his companies and authorized licensees, have engaged in extensive efforts, and invested millions of dollars, to advertise, market, promote and sell Big League Chew® shredded gum products, and the

associated Shredded Bubble Gum Trade Dress and the Big League Chew® trademarks, in the United States and certain countries abroad, which has created substantial and valuable goodwill in the products and the Big League Chew® trademarks and trade dress belonging exclusively to BIG LEAGUE CHEW.

**ANSWER:** Ford Gum denies that Plaintiffs own the Shredded Gum Trade Dress. Ford Gum is without knowledge regarding the remaining allegations in Paragraph 61 of the Complaint and on that basis denies them.

62.     The widespread and substantial advertising, marketing and sales activities have occurred through multiple forms of media, including television shows, commercials, print publications, via the BIG LEAGUE CHEW website (BigLeagueChew.com) and numerous other websites, popular social media sites, and through sponsorships and relationships with companies and organizations (e.g., the Baseball Hall of Fame).

**ANSWER:** Ford Gum is without knowledge regarding the allegations in Paragraph 62 of the Complaint and on that basis denies them.

63.     BIG LEAGUE CHEW, or a predecessor-in-interest, engaged Associated International Marketing, Inc. to assist with the marketing, promotion, advertising and sales of its products in conjunction with its Big League Chew® trademarks and Shredded Bubble Gum Trade Dress. The relationship with AIM has continued to the present, and BIG LEAGUE CHEW has paid AIM for its work on behalf of BIG LEAGUE CHEW for decades.

**ANSWER:** Ford Gum denies that Plaintiffs own the Shredded Gum Trade Dress. Ford Gum is without knowledge regarding the remaining allegations in Paragraph 63 of the Complaint and on that basis denies them.

64.     AIM also has assisted BIG LEAGUE CHEW, or a predecessor-in-interest, with certain aspects of administering the license agreements.

**ANSWER:** Ford Gum is without knowledge regarding the allegations in Paragraph 64 of the Complaint and on that basis denies them.

65. Big League Chew® shredded bubble gum products have been sold in the U.S on a nationwide basis since at least July 6, 1981, pursuant to license agreements with Amurol and Ford Gum.

**ANSWER:** Ford Gum admits that the products have been sold in the U.S. on a nationwide basis since at least July 6, 1981 and admits the existence of the License Agreement between Plaintiffs and Ford Gum. Ford Gum is without knowledge regarding the remaining allegations in Paragraph 65 of the Complaint and on that basis denies them.

66. Over $18 million worth of the Big League Chew® distinctive shredded gum product was sold in the U.S. in the first year of business.

**ANSWER:** Ford Gum is without knowledge regarding the allegations in Paragraph 66 of the Complaint and on that basis denies them.

67. The Big League Chew® product and concept, especially the Shredded Bubble Gum Trade Dress, was an instant hit with customers.

**ANSWER:** Ford Gum is without knowledge regarding the allegations in Paragraph 67 of the Complaint and on that basis denies them.

68. Big League Chew® products also have been sold in the following countries: Canada, Australia and Japan.

**ANSWER:** Ford Gum admits the allegations in Paragraph 68 of the Complaint.

69. BIG LEAGUE CHEW has consistently maintained annual sales in the tens of millions of dollars over the years.

**ANSWER:** Ford Gum denies the allegations in Paragraph 69 of the Complaint. Plaintiffs are licensors who do not maintain sales.

70.     As a result of BIG LEAGUE CHEW's, or its predecessors', substantial investment over time and its advertising, marketing, promotional and sales activities, the Shredded Bubble Gum Trade Dress along with the other Big League Chew® trademarks have become widely known and famous throughout the United States and many countries in the world as identifying BIG LEAGUE CHEW as the sole source of the distinctive shredded bubble gum product its offers and sells.

**ANSWER:**  Ford Gum admits that the Shredded Gum Trade Dress is famous.  Ford Gum denies that Plaintiffs own the Shredded Gum Trade Dress.  Ford Gum denies any remaining allegations of Paragraph 70 of the Complaint.

71.     BIG LEAGUE CHEW's licensing and promotional activities have consistently focused the attention of consumers on the distinctive appearance and configuration of the Shredded Bubble Gum Trade Dress, the Packaging and the Big League Chew® trademarks associated with its products.

**ANSWER:**  Ford Gum admits that Ford Gum has engaged in "look for" advertising with regard to the Shredded Gum Trade Dress.  Ford Gum is without knowledge regarding the remaining allegations in Paragraph 71 of the Complaint and on that basis denies them.

72.     While BIG LEAGUE CHEW, or its predecessor-in-interest, registered numerous trademarks, it continues to maintain ownership rights in its trade dress and certain marketing themes, including the Shredded Bubble Gum Trade Dress, under the common law of the United States. This decision was made pursuant to legal and business guidance provided in the early years of the business.

**ANSWER:**  Ford Gum admits Plaintiffs have registered with the United States Patent and Trademark Office certain word and design marks that do not include the Shredded Gum Trade Dress, and admits that Plaintiffs made a deliberate decision not to claim rights in the

Shredded Gum Trade Dress, and that Plaintiffs agreed with Ford Gum on March 26, 2024 that Ford Gum would own, apply for, enforce, and pay for the Shredded Gum Trade Dress (the "March 2024 Agreement"), that Ford Gum and Plaintiffs have performed the March 2024 Agreement, and that Plaintiffs confirmed the March 2024 Agreement via text message sent by Rob Nelson to Scott Lerner on September 13, 2024. Ford Gum denies that Plaintiffs own the Shredded Gum Trade Dress. Plaintiffs have no trade dress rights in any so-called "marketing themes," whatever those are. The remaining allegations in Paragraph 72 of the Complaint are vague and ambiguous, and Ford Gum denies them on that basis.

73.      All of the trademarks and trade dress, including the Shredded Bubble Gum Trade Dress, have been exclusively owned, maintained and controlled by BIG LEAGUE CHEW or a predecessor-in-interest and have been used exclusively by or on behalf of BIG LEAGUE CHEW or a predecessor-in-interest.

**ANSWER:** Ford Gum denies that Plaintiffs have any current ownership of the Shredded Gum Trade Dress. Ford Gum lacks knowledge regarding the remaining allegations in Paragraph 73 of the Complaint and on that basis denies them.

74.      No licensee of BIG LEAGUE CHEW or any of its predecessors-in-interest has been given any ownership rights in any of BIG LEAGUE CHEW's intellectual property.

**ANSWER:** Ford Gum denies the allegations in Paragraph 74 of the Complaint.

75.      BIG LEAGUE CHEW owned and maintained rights in its trademarks, trade dress and copyrights long before Ford Gum entered into the Ford Gum License Agreement with BIG LEAGUE CHEW.

**ANSWER:** Ford Gum is without knowledge regarding the allegations in Paragraph 75 of the Complaint and on that basis denies them.

## FORD GUM IS PURCHASED BY PRIVATE EQUITY AND PROBLEMS BEGIN

76.     Ford Gum and BIG LEAGUE CHEW maintained an excellent working relationship under the Ford Gum License Agreement until 2022 when Ford Gum was purchased by Chaver Capital Partners and Greyrock Capital Group ("Private Equity") in May 2022.

**ANSWER:** Ford Gum denies that the "excellent working relationship" changed after May 2022.  Ford Gum denies any remaining allegations of Paragraph 76 of the Complaint.

77.     After Ford Gum was purchased by Private Equity disputes began to arise and Ford Gum began to badger Rob Nelson to sell BIG LEAGUE CHEW and all its intellectual property.

**ANSWER:** Ford Gum denies the allegations in Paragraph 77 of the Complaint.  Ford Gum made purchase offers, to which Rob Nelson reacted favorably on behalf of Plaintiffs.  Mr. Nelson actively solicited an offer from Ford Gum to purchase the brand in a text message he sent to Mr. Lerner on September 13, 2024.

78.     One of Ford Gum's first actions under its new ownership was to force BIG LEAGUE CHEW to pay back an alleged overage of royalty payments (approximately $180,000), which it paid.

**ANSWER:** Ford Gum admits that one or more Plaintiffs received excess royalty payments which Plaintiffs agreed to repay, having asked Ford Gum to accept repayment over a period of three years, which has not expired.  Ford Gum denies that Plaintiffs have repaid the amount due in full.  Ford Gum denies any remaining allegations of Paragraph 78 of the Complaint.

79.     Shortly after Private Equity's purchase, Ford Gum began extending purchase offers to obtain ownership of BIG LEAGUE CHEW and its intellectual property, including its

Trademarks and Trade Dress. Attached as Exhibit E are three purchase offers extended to Rob Nelson by Ford Gum.

**ANSWER:** Ford Gum admits that it extended offers dated October 19. 2022, March 25, 2024, and March 26, 2024 to acquire Plaintiffs or assets of Plaintiffs. Ford Gum denies that Plaintiffs own the Shredded Gum Trade Dress. Ford Gum denies any remaining allegations of Paragraph 79 of the Complaint.

80. Ford Gum extended these written offers, and repeatedly made oral overtures, to purchase BIG LEAGUE CHEW and all its intellectual property, often with very short closing periods.

**ANSWER:** Ford Gum admits that it has offered to purchase Plaintiff Big League Chew Properties, LLC and its assets, and that Ford Gum offered to close the transaction within thirty days. Ford Gum denies any remaining allegations of Paragraph 80 of the Complaint.

81. Each of the written offers acknowledges BIG LEAGUE CHEW and Rob Nelson are the owner and creator of the shredded gum product (e.g., two offers presented in March 2024 state that Rob Nelson would "continue in [his] role as the card carrying founder of Big League Chew.") See Ex. E.

**ANSWER:** Ford Gum denies that the written offers acknowledge that BIG LEAGUE CHEW and Rob Nelson are the owner of the Shredded Gum Trade Dress. Ford Gum denies that Plaintiffs own the product that Ford Gum manufactures, owns, sells, and receives payment for. Ford Gum admits that the offers dated March 25, 2024 and March 26, 2024 state that Rob Nelson would "continue in [his] role as the card carrying founder of Big League Chew." Ford Gum denies that this means that Plaintiffs own the Shredded Gum Trade Dress. Ford Gum denies that Plaintiffs own the Shredded Gum Trade Dress. Ford Gum denies any remaining allegations of Paragraph 81 of the Complaint.

82. The offer dated October 19, 2024, offers Rob Nelson the title of "Founder and Brand Ambassador" among other things. *See* Ex. E.

**ANSWER:** Ford Gum denies making any offer dated October 19, 2024. Ford Gum admits that its offer dated October 19, 2022 states "Rob Nelson will join Ford Gum as an employee with the title 'Founder and Brand Ambassador.'" Ford Gum denies that this means that Plaintiffs own the Shredded Gum Trade Dress. Ford Gum denies that Plaintiffs own the Shredded Gum Trade Dress. Ford Gum denies any remaining allegations of Paragraph 82 of the Complaint.

83. Ford Gum's efforts to acquire BIG LEAGUE CHEW and all its intellectual property have continued and have increased in intensity in recent months despite Rob Nelson's refusals to sell BIG LEAGUE CHEW and its intellectual property.

**ANSWER:** Ford Gum admits offering to acquire Plaintiffs and denies any implication that these offers were unwelcome. Plaintiffs have responded favorably to Ford Gum's offers. Mr. Nelson actively solicited an offer from Ford Gum to purchase the brand in a text message he sent to Scott Lerner on September 13, 2024. Ford Gum denies any remaining allegations of Paragraph 83 of the Complaint.

84. Ford Gum, including Scott Lerner, its CEO, has become quite aggressive in its attempts to acquire BIG LEAGUE CHEW and all its intellectual property.

**ANSWER:** Ford Gum admits offering to acquire Plaintiffs and denies the implication that these offers were unwelcome. Plaintiffs have responded favorably to those offers. Mr. Nelson actively solicited an offer from Ford Gum to purchase the brand in a text message he sent to Scott Lerner, Ford Gum's Chief Executive Officer and President, on September 13, 2024. Ford Gum denies any remaining allegations of Paragraph 84 of the Complaint.

## FORD GUM TRIES TO TAKE BIG LEAGUE CHEW'S SHREDDED BUBBLE GUM TRADE DRESS

85.     Despite BIG LEAGUE CHEW's exclusive ownership and continuous use of the Shredded Bubble Gum Trade Dress and the Big League Chew® trademarks since 1979, Ford Gum has unlawfully asserted ownership of the Shredded Bubble Gum Trade Dress, including by filing a fraudulent, use-based federal trademark application to register the Shredded Bubble Gum mark pursuant to U.S. Federal Trademark Application, Serial No. 98/478,576 (the "Trademark Application"). A copy of the Trademark Application and the U.S. Patent and Trademark Office record is attached as Exhibit F.

**ANSWER:**  Ford Gum admits that one or more Plaintiffs and/or their predecessor(s)-in-interest used the **"Shredded Bubble Gum Trade Dress"** from 1979 until July 16, 2010.  Ford Gum denies that Plaintiffs own the Shredded Bubble Gum Trade Dress.  Ford Gum denies any wrongdoing.  Ford Gum denies that the Shredded Gum Trademark Application is fraudulent. Ford Gum denies any remaining allegations of Paragraph 85 of the Complaint.

86.     The Shredded Bubble Gum Trade Dress has been exclusively owned by BIG LEAGUE CHEW, or its predecessor-in-interest, since 1979, long before Ford Gum was a licensee, and long before Ford Gum filed its fraudulent Trademark Application.

**ANSWER:**  Ford Gum admits that one or more Plaintiffs and/or their predecessor(s)-in-interest owned the **"Shredded Bubble Gum Trade Dress"** from 1979 until July 16, 2010.  Ford Gum denies the remaining allegations in Paragraph 86 of the Complaint.

87.     Ford Gum is not related to and is not a predecessor-in-interest to BIG LEAGUE CHEW, or any of its predecessors.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 87 of the Complaint.

88. The Trademark Application has recently been approved for publication based on the fraudulent and misleading statements in the Trademark Application and the supporting declaration by CEO Scott Lerner.

**ANSWER:** Ford Gum admits that the United States Patent and Trademark Office issued a notice on December 3, 2024 that the Shredded Gum Trade Dress Application had published for opposition. That notice does not state what the publication is based on. Ford Gum denies that there is any fraudulent or misleading statement in the Shredded Gum Trade Dress Application. Ford Gum denies any remaining allegations of Paragraph 88 of the Complaint.

89. Ford Gum, as a licensee of the Big League Chew® trademarks and Shredded Bubble Gum Trade Dress for fourteen (14) years, was well aware of BIG LEAGUE CHEW's longstanding ownership rights in the Big League Chew® intellectual property at the time it filed the Trademark Application.

**ANSWER:** Ford Gum denies that Plaintiffs owned the Shredded Gum Trade Dress at the time Ford Gum filed the Shredded Gum Trade Dress Application with the United States Patent and Trademark Office on April 1, 2024. The remaining allegations in Paragraph 89 are vague and ambiguous and Ford Gum denies them on that basis.

90. Rob Nelson repeatedly told Robbie Spigner and Scott Lerner that BIG LEAGUE CHEW owns all of the Big League Chew® intellectual property, including the Shredded Bubble Gum Trade Dress.

**ANSWER:** Ford Gum denies the allegations in Paragraph 90 of the Complaint.

91. Ford Gum knew or should have known that neither BIG LEAGUE CHEW nor Rob Nelson authorized Ford Gum to file the Trademark Application in the name of Ford Gum or assert ownership rights in the shredded gum product.

**ANSWER:** Ford Gum denies the allegations in Paragraph 91 of the Complaint. Plaintiffs knew at the time they filed the Complaint that the parties had entered into the March 2024 Agreement for Ford Gum to own, apply for, enforce, and pay for the Shredded Gum Trade Dress; that Ford Gum and Plaintiffs have performed the March 2024 Agreement, and that Plaintiffs confirmed the March 2024 Agreement via text message sent by Rob Nelson to Scott Lerner on September 13, 2024. Plaintiffs knew at the time they filed the complaint that they had expressly authorized Ford Gum to file the Shredded Gum Trade Dress Application.

92. Ford Gum's CEO, Scott Lerner, signed the declaration in support of the Trademark Application based on use in commerce under 15 U.S.C. §1051(a) ("Trademark Application Declaration") stating:

    a.      The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered.

    b.      The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application.

    c.      The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date.

    d.      To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

    e.      To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to

be likely, when used on or in connection with the goods/services of such

other persons, to cause confusion or mistake, or to deceive.

f.     To the best of the signatory's knowledge, information, and belief, formed

after an inquiry reasonable under the circumstances, the allegations and

other factual contentions made above have evidentiary support.

g.     The signatory being warned that willful false statements and the like are

punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and

that such willful false statements and the like may jeopardize the validity

of the application or submission or any registration resulting therefrom,

declares that all statements made of his/her own knowledge are true and

all statements made on information and belief are believed to be true. See

Ex. F.

**ANSWER:** Ford Gum admits the allegations in Paragraph 92 of the Complaint.

93.     Scott Lerner also attached a fraudulent declaration regarding acquired

distinctiveness in support of the shredded gum product configuration (the "Section 2F

Declaration"). See Ex. F.

**ANSWER:** Ford Gum admits that Ford Gum attached a declaration regarding acquired

distinctiveness to the Trademark Application.  Ford Gum denies that it was fraudulent.  Ford

Gum denies any remaining allegations of Paragraph 93 of the Complaint.

94.     Mr. Lerner signed both declarations under penalty of perjury.

**ANSWER:** Ford Gum admits Mr. Lerner signed a declaration under penalty of perjury

and denies the remaining allegations in Paragraph 94 of the Complaint.

95.     Mr. Lerner's Section 2F Declaration states that "Ford Gum makes and sells the

shredded bubble gum product" under the Big League Chew® brand (the "Product"). See Ex. F.

**ANSWER:** Ford Gum admits the allegations in Paragraph 95 of the Complaint.

96. Mr. Lerner's Section 2F Declaration also shows multiple images of the Shredded Bubble Gum Trade Dress and identifies various flavors of the Big League Chew® shredded gum products holding itself out as the owner of the products and the trade dress and the owner and manufacturer of the shredded bubble gum product. See Ex. F.

**ANSWER:** Ford Gum admits the allegations in Paragraph 96 of the Complaint.

97. In the Trademark Application Declaration, Mr. Lerner fails to identify Ford Gum as a Licensee of BIG LEAGUE CHEW's trademarks, trade dress and the Licensed Product itself pursuant to the Ford Gum License Agreement.

**ANSWER:** Ford Gum admits the allegations in Paragraph 97 of the Complaint. Ford Gum denies that the License Agreement between the parties includes the Shredded Gum Trade Dress. Ford Gum denies that any such identification was necessary. Ford Gum denies any remaining allegations of Paragraph 97 of the Complaint.

98. In the Trademark Application Declaration Mr. Lerner also entirely fails to identify the Ford Gum License Agreement pursuant to which Ford Gum is authorized to use the Big League Chew® intellectual property.

**ANSWER:** Ford Gum admits the allegations in Paragraph 98 of the Complaint and denies that any such identification was necessary.

99. Mr. Lerner entirely fails to identify the Ford Gum License Agreement pursuant to which the Licensed Product, the shredded bubble gum, is sold.

**ANSWER:** Ford Gum admits the allegations in Paragraph 99 of the Complaint. Ford Gum denies that the License Agreement includes the Shredded Gum Trade Dress. Ford Gum denies that any identification of the License Agreement was necessary and denies any remining allegations of Paragraph 99 of the Complaint.

100.    There also are many material omissions of fact and false statements in the Section 2F Declaration, including:

    a.    Ford Gum owns the shredded bubble gum product.

    b.    The shredded bubble gum product is Ford Gum's "Product" and is offered in other flavors (Ford Gum then identifies six (6) flavors of the shredded bubble gum product that are trademarked and owned by BIG LEAGUE CHEW. The Section 2F Declaration shows an image of the same.) c. Ford Gum has exclusively used the shredded bubble gum trade dress itself or through a predecessor in interest.

    c.    Ford Gum began selling the shredded bubble gum product in 1979.

    d.    Ford Gum is the only company to offer and sell gum in a shredded shape.

    e.    The shredded gum configuration has acquired distinctiveness by virtue of Ford Gum's exclusive use and promotion.

**ANSWER:** Ford Gum denies the existence of "many material omissions of fact and false statements in the Section 2F Declaration" as alleged in Paragraph 100 of the Complaint. Ford Gum denies any remaining allegations of Paragraph 100 of the Complaint.

101.    Ford Gum owns and operates a website under the domain name www.fordgum.com in which it holds itself out as BIG LEAGUE CHEW (the "Ford Gum Website").

**ANSWER:** Ford Gum admits owning the website and denies the remaining allegations in Paragraph 101 of the Complaint.

102.    The Ford Gum Website uses Big League Chew® intellectual property, including the Licensed Product, to promote BIG LEAGUE CHEW products as those of Ford Gum as shown in the screenshots of the website thereof attached as Exhibit G.

**ANSWER:** Ford Gum admits that its website at www.fordgum.com promotes the BIG LEAGUE CHEW brand of shredded gum that Ford Gum makes, offers for sale, sells, and receives revenue for. Ford Gum's actions at all time have been undertaken with Plaintiffs' consent. Ford Gum denies the remaining allegations in Paragraph 102 of the Complaint.

103.    The Ford Gum Website also holds out the Big League Chew® registered trademarks as those of Ford Gum. See Ex. G.

**ANSWER:** Ford Gum admits that its website at www.fordgum.com promotes the BIG LEAGUE CHEW brand of shredded gum that Ford Gum sells. Ford Gum denies the remaining allegations in Paragraph 103 of the Complaint.

## THE FORD GUM LICENSE AGREEMENT

104.    The Ford Gum License Agreement creates obligations of Licensee (i.e., Ford Gum) to protect the Big League Chew® intellectual property and Licensed Products, which obligations Ford Gum is currently violating and has repeatedly failed to meet.

**ANSWER:** Ford Gum denies violating, or failing to meet, any provision of the License Agreement.

105.    The Ford Gum License Agreement includes provisions that prohibit Ford Gum from certain uses of, and actions related to, the Big League Chew® intellectual property, including the trademarks, trade dress and Licensed Products. Ford Gum has violated these provisions.

**ANSWER:** Ford Gum denies violating, or failing to meet, any provision of the License Agreement. Ford Gum denies any remaining allegations of Paragraph 105 of the Complaint.

106.    These prohibitions have been in place for the entirety of BIG LEAGUE CHEW's relationship with Ford Gum.

**ANSWER:** Ford Gum denies violating, or failing to meet, any provision of the License Agreement. Ford Gum denies any remaining allegations of Paragraph 106 of the Complaint.

107. Nearly identical prohibitions also were in place for the entirety of BIG LEAGUE CHEW's relationship with Amurol.

**ANSWER:** Ford Gum is without information regarding the allegations in Paragraph 107 of the Complaint and on that basis denies them.

108. The Ford Gum License Agreement contains, among others, the following provisions:

a. "BIG LEAGUE CHEW and TRNC, through its predecessors-in-interest, has developed a theme for a shredded bubble gum in a pouch called Big League Chew and has created and continues to create themes, images, concepts, packaging designs, characters, advertising themes and materials, promotional concepts, merchandising arrangements and the like in connection with shredded bubble gum … to be marketed under the trademark Big League Chew." See Ex. A (p. 1).

b. "BIG LEAGUE CHEW and TRNC owns substantial goodwill and is the current exclusive owner of all right, title and interest in and to several trademarks which are comprised of the term 'BIG LEAGUE,' including without limitation Big League Chew …." See Ex. A (p. 1).

c. "Licensee recognizes the substantial goodwill TRNC has acquired in the Trademarks and the originality of the Trademark, Trade Dress and the Copyrights." Ex. A (p. 2).

d.     "Licensee desires to obtain a license to use the Trademarks, the Trade Dress and the Copyrights in connection with manufacturing, marketing and selling shredded bubble gum in a pouch …." Ex. A (p. 2).

e.     "TRNC and Licensee will enter into an Equipment Lease Agreement of even date herewith ('Lease') under which Licensee will lease the equipment from TRNC to manufacture the Licensed Products." The Equipment Lease Agreement is attached as Exhibit H.

f.     The Equipment Lease Agreement was superseded by the Equipment Purchase Agreement on March 30, 2012. A copy of the Equipment Purchase Agreement is attached as Exhibit I.

g.     The Ford Gum License Agreement expressly defines "Licensed Products" to include:

     i.     "shredded bubble gum in a pouch which is developed, manufactured and sold in association with the Trademark (e.g. BIG LEAGUE CHEW shredded bubble gum)"; and

     ii.     "all non-BIG LEAGUE brand items utilizing shredded bubble gum." See Ex. A.

h.     "BIG LEAGUE CHEW and TRNC hereby grants to Licensee … a nonassignable exclusive right and license to manufacture, market and sell Licensed Products …." See Ex. A.

i.     "Licensee acknowledges that TRNC owns all right, title, and interest in and to the Trademarks and the goodwill symbolized by the Trademarks. All use of the Trademarks by Licensee shall inure to the benefit of and be on behalf of TRNC. Nothing in this License Agreement shall be deemed

to constitute or result in an assignment of the Trademarks to Licensee or to give Licensee any right, title, or interest in or to the Trademarks other than the right to use the Trademarks in accordance with its License Agreement." See Ex. A (§ 9(a)).

j.   "BIG LEAGUE CHEW and TRNC shall be the sole and exclusive owner of all trademarks, copyrights, trade dress, artwork, packaging design, logos, copy, literary text and advertising material of any sort which in any way utilizes, incorporates or is associated with the Trademarks including all such materials developed by or for Licensee." See Ex. A (§ 9(a)).

k.   "Licensee shall not register or apply to register the Trademarks, or any confusingly similar trademarks in its own name, in any country for any purpose, or represent that it owns the Trademarks." See Ex. A (§ 9(b)) (emphasis added).

l.   "Licensee will not attack, or challenge in any court of law or other tribunal anywhere in the world or challenge in any other manner, TRNC's right and title to the Trademarks or TRNC's ownership of any Copyrights in or distinctive features of the Trademarks, or the validity or enforceability of the Trademarks, Copyrights or Trade Dress." Exhibit A (§ 9(b)).

m.   "Licensee shall not, at any time, acquire or claim any right, title or interest of any nature whatsoever in any such copyright or trademark and agrees to assign to TRNC any and all such rights as may vest or reside in Licensee." See Ex. A (§ 9(c)).

n.    "The Trademarks shall be used in such a manner as to avoid confusion among or deception to the public with regard to the original of the Licensed products." See Ex. A (§ 12(b)).

o.    Pursuant to Section 22, entitled "Non-Compete," during the term of the Ford Gum License Agreement, Ford Gum will not "engage in the manufacture, sale or distribution of any shredded bubble gum ...." See Ex. A (§ 22(a)).

    i.    "Any violation of this covenant will result in irreparable injury to BIG LEAGUE CHEW and TRNC, and the remedy at law for any breach of the foregoing will be inadequate, and in the event of any such breach, BIG LEAGUE CHEW and TRNC, in addition to any other relief available to it (including the option to terminate this License Agreement), shall be entitled to temporary injunctive relief before trial from any court of competent jurisdiction as a matter of course." See Ex. A (§ 22(b))

    ii.    Licensee further agrees "to pay the reasonable legal fees and expenses incurred by TRNC or any successor or assign thereof in enforcing the restrictions contained in this Article." See Ex. A (§ 22(b)).

**ANSWER:** Ford Gum admits to entering into the License Agreement and its amendments, and denies any allegations of wrongdoing in Paragraph 108 of the Complaint.

109.    Pursuant to the Ford Gum License Agreement, Ford Gum is required to pay BIG LEAGUE CHEW as royalties a specific percentage "of all Licensee's Net Sales of the Licensed Products ...." See Ex. A.

**ANSWER:** Ford Gum admits to entering into the License Agreement and its amendments, and denies any allegations of wrongdoing in Paragraph 109 of the Complaint.

110. Ford Gum agreed to these provisions when it executed the Ford Gum License Agreement and reconfirmed its agreement to these provisions when it executed each of the three amendments to the Ford Gum License Agreement.

**ANSWER:** Ford Gum admits to entering into the License Agreement and its amendments, and denies any allegations of wrongdoing in Paragraph 110 of the Complaint.

111. Ford Gum violated the terms of the Ford Gum License Agreement when it filed the Trademark Application and passed-off BIG LEAGUE CHEW'S famous Shredded Bubble Gum Trade Dress as its own mark.

**ANSWER:** Ford Gum denies the allegations in Paragraph 111 of the Complaint.

112. Neither BIG LEAGUE CHEW nor Rob Nelson gave Ford Gum permission to file the Trademark Application for the shredded gum configuration in Ford Gum's name.

**ANSWER:** Ford Gum denies the allegations in Paragraph 112 of the Complaint.

113. Ford Gum did not send the application to BIG LEAGUE CHEW for review prior to filing it.

**ANSWER:** Ford Gum admits the allegations in Paragraph 113 of the Complaint and denies that Plaintiffs requested review of the application before it was filed.

114. Ford Gum did not tell BIG LEAGUE CHEW or Rob Nelson it had been filed.

**ANSWER:** Ford Gum denies the allegations in Paragraph 114 of the Complaint and further denies that Ford Gum ever asked about it until September 13, 2024, almost six months after reaching the March 2024 Agreement that Ford Gum could file it on Ford Gum's behalf.

115.    Ford Gum has falsely argued that BIG LEAGUE CHEW authorized it to file the Trademark Application in its name. This is patently false; BIG LEAGUE CHEW did not authorize Ford Gum to file the Trademark Application to register anything in its name.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 115 of the Complaint.

116.    The Ford Gum License Agreement that has been in place for nearly 15 years expressly prohibits Ford Gum from filing the Trademark Application.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 116 of the Complaint.

117.    Ford Gum's argument that it was authorized is based entirely on its intentional misreading of a March 24, 2024, email exchange between Rob Nelson and Scott Lerner.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 117 of the Complaint.

118.    On March 26, 2024, Rob Nelson received and email from Scott Lerner, CEO of Ford Gum. A copy of the email is attached as Exhibit J.

**ANSWER:**  Ford Gum admits that it sent the email dated March 26, 2024 to Mr. Nelson.

119.    Mr. Lerner's email stated:

"Considering the recent discovery of a potential competitive product to Big League Chew, Ford Gum would like to file for a trade dress on the product form of 'shredded bubble gum'. Once we due [sic] this we would like to send a cease-and-desist letter to Hilco. I am seeking your approval for us to take this action on behalf of Ford Gum. If you want to discuss this live, I might suggest we set up a call for next week. Thanks."

**ANSWER:**  Ford Gum admits the allegations in Paragraph 119 of the Complaint.

120.    Later that same day Rob Nelson sent an email in response which stated, simply, "Scott – excellent idea, I approve." See Ex. J.

**ANSWER:**  Ford Gum admits the allegations in Paragraph 120 of the Complaint.

121.     However, Rob Nelson did not approve the filing of an application to register BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress in Ford Gum's name. BIG LEAGUE CHEW already owned the Shredded Bubble Gum Trade Dress for decades; it simply hadn't registered it.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 121 of the Complaint and denies that Mr. Nelson "did not approve the filing" of the Shredded Gum Trade Dress Application.  Mr. Nelson approved it in the March 2024 Agreement, and confirmed the March 2024 Agreement in text messages sent to Mr. Lerner on September 13, 2024.

122.     Rob Nelson trusted Ford Gum to operate pursuant to the terms of the Ford Gum License Agreement.

**ANSWER:**  Ford Gum admits that it has operated pursuant to the terms of the License Agreement.

123.     The Ford Gum License Agreement expressly prohibits Ford Gum from registering or applying "to register the Trademarks, or any confusingly similar trademarks in its own name … or represent that it owns the Trademarks." See Ex. A (§9(b)).

**ANSWER:**  Ford Gum denies that the License Agreement prohibits Ford Gum from filing the Shredded Gum Trade Dress Application.

124.     Additionally, the Ford Gum License Agreement expressly states that Ford Gum "shall not, at any time, acquire or claim any right, title or interest of any nature whatsoever in any such copyright or trademark and agrees to assign to TRNC any and all such rights as may vest or reside in Licensee." See Ex. A (§ (c)).

**ANSWER:**  Ford Gum denies that the License Agreement includes the Shredded Gum Trade Dress rights.  "Trademarks," "Trade Dress," and "Copyrights" are defined terms in the

License Agreement and none of the definitions for those terms include the Shredded Gum Trade Dress.

125.    In other words, with these long-standing provisions in mind, Rob Nelson simply agreed to allow Ford Gum to file an application in BIG LEAGUE CHEW's name and send a cease-and-desist letter, if necessary. Afterall, BIG LEAGUE CHEW already owned, and had owned, the Shredded Bubble Gum Trade Dress for over 40 years.

**ANSWER:** Ford Gum denies the allegations in Paragraph 125 of the Complaint.  The March 26, 2024 email exchange constituted the March 2024 Agreement for Ford Gum to own, apply for, enforce, and pay for the Shredded Gum Trade Dress.

126.    After the March 26 email exchange, Rob Nelson never heard from Ford Gum about any effort it undertook to prepare or file an application or send a cease-and-desist letter.

**ANSWER:** Ford Gum denies the allegations in Paragraph 126 of the Complaint.

127.    Rob Nelson never was asked to review an application, declaration or anything at all.

**ANSWER:** Ford Gum admits that Ford Gum did not ask Rob Nelson to review the application or supporting declaration that Ford Gum submitted with the USPTO to register the trade dress for the product configuration.  Ford Gum denies this was requested by Plaintiffs or required by the March 2024 Agreement.

128.    Rob Nelson would have prevented Ford Gum from filing the Trademark Application had he known about or been afforded an opportunity to review it.

**ANSWER:** Ford Gum denies the allegations in Paragraph 128 of the Complaint.

129.    Rob Nelson also would have taken issue with the lies and false statements Mr. Lerner included in both of his supporting declarations.

**ANSWER:** Ford Gum denies the allegations in Paragraph 129 of the Complaint.

130.     Ford Gum knew the Shredded Bubble Gum Trade Dress belonged to BIG LEAGUE CHEW; that's why Mr. Lerner asked BIG LEAGUE CHEW for permission to take action.

**ANSWER:** Ford Gum denies the allegations in Paragraph 130 of the Complaint.

131.     After the email exchange, in or around September 2024, Rob Nelson learned that Ford Gum had filed the Trademark Application in its name.

**ANSWER:** Ford Gum does not know when Rob Nelson learned that the Shredded Gum Trade Dress Application had been filed, and denies the allegations in Paragraph 131 on that basis.

132.     Upon learning of this, Rob Nelson was upset and immediately called Scott Lerner.

**ANSWER:** Ford Gum admits that Mr. Nelson called Scott Lerner on or about September 11, 2024 but does not know when Rob Nelson learned that the Shredded Gum Trade Dress Application had been filed, and denies that Mr. Nelson seemed to be "upset."  Ford Gum denies any remaining allegations in Paragraph 132.

133.     Rob Nelson told Mr. Lerner he was not made aware that the Trademark Application had been filed and had no idea Ford Gum had taken this action.

**ANSWER:** Ford Gum admits that Mr. Nelson vented to Mr. Lerner about the Shredded Gum Trade Dress Application during a phone call that Mr. Nelson initiated on or about September 11, 2024.  Ford Gum denies that Mr. Nelson was not made aware before then that the Shredded Gum Trademark Application would be filed.  It is not possible that Mr. Nelson "had no idea" Ford Gum had filed it.  Mr. Nelson was the person who, on behalf of Plaintiffs, entered into the March 2024 Agreement for Ford Gum to own, apply for, enforce, and pay for the Shredded Gum Trade Dress.  Mr. Nelson did not ask Ford Gum to confirm the filing of the Shredded Gum Trade Dress Application.  During the phone conversation on or about September

11, 2024, it was clear that Mr. Nelson had forgotten about the facts leading to and following the March 2024 Agreement for Ford Gum to own, apply for, enforce, and pay for the Shredded Gum Trade Dress. Ford Gum denies any remaining allegations in Paragraph 133.

134. Rob Nelson asked Mr. Lerner why the Trademark Application was filed in Ford Gum's name given that BIG LEAGUE CHEW owned the shredded bubble gum configuration and product, and Rob Nelson informed him that he never authorized Ford Gum to file the Trademark Application.

**ANSWER:** Ford Gum denies the allegations in Paragraph 134 of the Complaint. Mr. Nelson had authorized the filing of the Shredded Gum Trademark Application pursuant to the March 2024 Agreement after Mr. Nelson refused to take enforcement action against an infringement that Robert Spigner, Ford Gum's Director, had made Mr. Nelson aware of on February 21, 2024. Ford Gum admits that Mr. Nelson failed to mention these facts during the call on or about September 11, 2024.

135. Mr. Lerner did not disagree with any of Rob Nelson's statements or even defend his actions.

**ANSWER:** Ford Gum admits that during the phone call on or about September 11, 2024, Mr. Lerner listened while Mr. Nelson vented. Ford Gum denies that there was any need for Mr. Lerner to defend Ford Gum's actions, which were at all times proper and within the scope of the March 2024 Agreement for Ford Gum to own, apply for, enforce, and pay for the Shredded Gum Trade Dress. Ford Gum denies any remaining allegations in Paragraph 135.

136. Rather, Mr. Lerner immediately suggested to Rob Nelson that they discuss a "buy-out" of BIG LEAGUE CHEW by Ford Gum.

**ANSWER:** Ford Gum denies discussing any "buy out" during the conversation between Mr. Nelson and Mr. Lerner on or about September 11, 2024. Ford Gum denies any remaining allegations in Paragraph 136.

137. Rob Nelson told him he was not interested in such a discussion, and would not engage in a "buy out" discussion unless his concerns about the unauthorized Trademark Application were resolved.

**ANSWER:** Ford Gum denies the allegations in Paragraph 137 of the Complaint.

138. A few days later Mr. Lerner informed Rob Nelson he was flying to Portland, Oregon to meet with Rob. Mr. Nelson did not know the purpose of the trip and meeting, and Mr. Lerner did not share a reason with him.

**ANSWER:** Ford Gum denies that Mr. Lerner informed Mr. Nelson that Mr. Lerner was flying to Portland to meet with Mr. Nelson "a few days" after Mr. Nelson called Mr. Lerner to vent about the Shredded Gum Trade Dress Application. The date of the telephone conversation was on or about September 11, 2024. Mr. Nelson had been made aware of Mr. Lerner's upcoming trip to Portland before that date. Ford Gum admits that Mr. Lerner and Mr. Nelson had a pleasant and friendly dinner together in Portland, Oregon on September 24, 2024.

139. When Mr. Lerner arrived in Oregon, he immediately began asking Mr. Nelson about a "buy-out" by Ford Gum. Mr. Lerner said it would be in Mr. Nelson's best interests.

**ANSWER:** Ford Gum admits that Mr. Nelson discussed a "buy-out" by Ford Gum during the dinner meeting between Mr. Lerner and Mr. Nelson on September 24, 2024. Ford Gum denies that Mr. Lerner brought up "buy-out" proposal "immediately." Ford Gum denies any remaining allegations in Paragraph 139.

140. Mr. Nelson told Mr. Lerner that he would not discuss anything unless and until his concerns over the unauthorized Trademark Application were resolved.

**ANSWER:** Ford Gum admits that during dinner in Portland on September 24, 2024, Mr. Nelson told Mr. Lerner that since Mr. Nelson had developed the product, it was important to Mr. Nelson for the sake of his "legacy" that Mr. Nelson's name appear on the Shredded Gum Trade Dress Application and that Mr. Nelson did not want to discuss a buy out until this issue was cleared up. The conversation was a friendly one. Ford Gum denies any remaining allegations in Paragraph 140.

141. Mr. Lerner would not engage in such a discussion and told Mr. Nelson he didn't know much about the Trademark Application.

**ANSWER:** Ford Gum admits that Mr. Lerner did not discuss the details of the Shredded Gum Trade Dress Application with Mr. Nelson. Ford Gum denies any remaining allegations in Paragraph 141.

142. Ford Gum's Trademark Application violated the terms of the Ford Gum License Agreement, so Mr. Nelson had BIG LEAGUE CHEW's attorneys send a letter to Ford Gum to inform it that the Trademark Application was improper, unauthorized, and in violation of the Ford Gum License Agreement. A copy of the letter from BIG LEAGUE CHEW's counsel to Ford Gum's counsel, dated October 8, 2024, is attached as Exhibit K.

**ANSWER:** Ford Gum denies that its Trademark Application violated the terms of the License Agreement. Ford Gum admits that Plaintiffs' attorneys sent a letter attached as Exhibit K.

143. Importantly, BIG LEAGUE CHEW's attorneys also informed Ford Gum that Mr. Lerner's declarations were rife with false statements.

**ANSWER:** Ford Gum admits that Plaintiffs' attorney made false statements in her October 8, 2024 letter and denies that Mr. Lerner's declaration contains false statements. Ford Gum denies any remaining allegations in Paragraph 143.

144.    In response, rather than simply withdraw the Trademark Application, Ford Gum boldly claimed that it owned BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress. A copy of the letter Ford Gum's attorneys sent, dated October 16, 2024, is attached as Exhibit L.

**ANSWER:**  Ford Gum admits that it owns the Shredded Gum Trade Dress and that Ford Gum's attorney stated that position in her letter dated October 16, 2024.  Ford Gum admits that Exhibit L to the Complaint is the letter sent by Ford Gum's attorneys.  Ford Gum denies any remaining allegations in Paragraph 144.

145.    More specifically, and shockingly, Ford Gum claimed "Ford Gum is the only party that uses the trade dress identified in the Application." See Ex. L.

**ANSWER:**  Ford Gum admits that it is the only party that uses the Shredded Gum Trade Dress and denies that this is "shocking."

146.    Ford Gum further claimed it "is the owner of the only equipment in the United States that manufactures the product in the form of the trade dress [i.e., shredded bubble gum]." See Ex. L.

**ANSWER:**  Ford Gum admits that it is the owner of the only equipment in the United States that manufactures the product in the form of the Shredded Gum Trade Dress.

147.    In response to the assertion that its Trademark Application was rife with false statements, Ford Gum's attorney simply said "We disagree," without even an attempt to address its blatant lies. See Ex. L.

**ANSWER:**  Ford Gum admits that the parties have a disagreement.  Ford Gum denies making any "false statements," "lies" or "blatant lies."  Ford Gum denies any remaining allegations in Paragraph 147.

148.    In making this assertion, Ford Gum ignored BIG LEAGUE CHEW's 44-year history of selling shredded bubble gum and the fact that Ford Gum only owned the equipment it

uses to make shredded bubble gum because BIG LEAGUE CHEW leased it to them and then sold it to them.

**ANSWER:** Ford Gum denies the allegations in paragraph 148.

## THE FORD GUM EQUIPMENT PURCHASE AGREEMENT

149.    In parallel with the Ford Gum License Agreement, TRNC and Ford Gum entered into an Equipment Lease Agreement pursuant to which Ford Gum leased from TRNC the specialized equipment used to make shredded bubble gum. The Equipment Lease Agreement was in effect from 2010 to 2012. See Ex. H.

**ANSWER:** Ford Gum admits the allegations in Paragraph 149 of the Complaint and admits that Exhibit H is a copy of the Equipment Lease Agreement.

150.    TRNC and Ford Gum subsequently entered into an Equipment Purchase Agreement, dated March 30, 2012. See Ex. I.

**ANSWER:** Ford Gum admits the allegations in Paragraph 150 of the Complaint and admits that Exhibit I is a copy of the Equipment Purchase Agreement..

151.    The equipment TRNC sold to Ford Gum was specifically configured to exclusively make shredded bubble gum. Ford Gum did not have any such equipment or capability to make shredded bubble gum until it entered into the Ford Gum License Agreement and Equipment Lease Agreement in 2010.

**ANSWER:** Ford Gum is without knowledge regarding the allegations in Paragraph 151 of the Complaint and on that basis denies them.

152.    The Ford Gum License Agreement, Equipment Lease Agreement, and Equipment Purchase Agreement confirm BIG LEAGUE CHEW's exclusive ownership of rights in the Trademarks, Trade Dress and the Licensed Products. The Shredded Bubble Gum Trade Dress

and product is within the definition of Trade Dress and is the Licensed Product under the Ford Gum License Agreement.

**ANSWER:** Ford Gum denies the allegations in Paragraph 152 of the Complaint.

153. The Equipment Purchase Agreement prohibits Ford Gum from making shredded bubble gum for anyone other than BIG LEAGUE CHEW. See Ex. I (§ 9(c)).

**ANSWER:** Ford Gum denies the allegations in Paragraph 153 which do not accurately characterize the Equipment Purchase Agreement.

154. The Equipment Purchase Agreement prohibits Ford Gum from selling, or even attempting to sell, the equipment to anyone without the permission of BIG LEAGUE CHEW. See Ex. I (§ 9(b)).

**ANSWER:** Ford Gum denies the allegations in Paragraph 154 which do not accurately characterize the Equipment Purchase Agreement.

155. In the event Ford Gum defaults under the Equipment Purchase Agreement, BIG LEAGUE CHEW has the right to reacquire the equipment at no cost. Ex. I (§ 8(b)(i)).

**ANSWER:** Ford Gum denies the allegations in Paragraph 155 which do not accurately characterize the Equipment Purchase Agreement.

156. Based upon Ford Gum's numerous breaches of the Ford Gum License Agreement and Equipment Purchase Agreement, BIG LEAGUE CHEW has the right to terminate both agreements and reacquire, at no cost, the equipment it sold to Ford Gum.

**ANSWER:** Ford Gum denies the allegations in Paragraph 156 of the Complaint.

157. Ford Gum's knowing and intentional acts are causing and will continue to cause damage and irreparable harm to BIG LEAGUE CHEW and its valuable reputation and goodwill with the consuming public for which BIG LEAGUE CHEW has no adequate remedy at law.

**ANSWER:** Ford Gum denies the allegations in Paragraph 157 of the Complaint.

## FIRST CLAIM FOR RELIEF
### (Trade Dress Infringement Under 15 U.S.C. § 1125(a))

158.    BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

**ANSWER:**  Ford Gum repeats and realleges the previous allegations as if fully set forth herein.

159.    BIG LEAGUE CHEW has used the distinctive Shredded Bubble Gum Trade Dress for its shredded bubble gum product in interstate commerce continuously since 1979.

**ANSWER:**  Ford Gum admits that at least one Plaintiff has used the shredded gum trade dress, which has become distinctive, continuously from 1979 to July 16, 2010.  Ford Gum denies the remaining allegations in Paragraph 159 of the Complaint.

160.    BIG LEAGUE CHEW has invested substantial time, effort and financial resources promoting its Shredded Bubble Gum Trade Dress in connection with the marketing and sale of its shredded bubble gum product in interstate commerce.

**ANSWER:**  Ford Gum lacks knowledge of the facts alleged in Paragraph 160 and on that basis denies them.

161.    BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress is nonfunctional and distinctive.

**ANSWER:**  Ford Gum admits that the Shredded Bubble Gum Trade Dress is nonfunctional and distinctive.  Ford Gum denies that Big League Chew owns the Shredded Bubble Gum Trade Dress.

162.    BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress has secondary meaning in the marketplace in that consumers associate that trade dress with a single source of origin. Consumers are likely to make that same association when the trade dress is used in connection with another manufacturer's product.

**ANSWER:** Ford Gum admits that the Shredded Gum Trade Dress has secondary meaning in the marketplace in that consumers associate that trade dress with a single source of origin. Ford Gum denies that Big League Chew owns the Shredded Gum Trade Dress and all remaining allegations in Paragraph 162.

163. Ford Gum manufactures, distributes, advertises, offers for sale, or sells shredded bubble gum in interstate commerce, including shredded bubble gum, using a trade dress that is identical or substantially similar to BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress. BIG LEAGUE CHEW did not authorize or license the use of its distinctive Shredded Bubble Gum Trade Dress on or in connection with the infringing goods. Ford Gum has manufactured, distributed, advertised, sold, and offered the infringing goods for sale using BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress with the intention of misleading, deceiving, or confusing consumers as to the origin of its goods and of trading on BIG LEAGUE CHEW's reputation and goodwill.

**ANSWER:** Ford Gum admits that it manufactures, distributes, advertises, offers for sale, and sells shredded bubble gum in interstate commerce, including shredded bubble gum, under two trademarks: BIG LEAGUE CHEW and CAROUSEL. Plaintiffs authorized the sale of both of these products. Ford Gum has paid royalties to Plaintiffs on all units of these products sold. Ford Gum has not sold any unauthorized shredded gum product. Ford Gum denies the allegation that there are any "infringing goods." Ford Gum has not made a shredded gum product for which Ford Gum did not pay a royalty under the License Agreement. Ford Gum denies ever misleading, deceiving, or confusing consumers as to the origin of its goods and of trading on Plaintiffs' reputation and goodwill. Ford Gum denies any remaining allegations in Paragraph 163.

164. Ford Gum's manufacture, advertising, distribution, selling, and offering to sell infringing products that have a shredded bubble gum trade dress copied from and confusingly similar to BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress are likely to cause confusion on the part of purchasers and potential purchasers in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:** Ford Gum denies the allegations in Paragraph 164 of the Complaint.

165. As a direct and proximate result of Ford Gum's trade dress infringement, BIG LEAGUE CHEW has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Ford Gum has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

**ANSWER:** Ford Gum denies the allegations in Paragraph 165 of the Complaint.

166. Ford Gum's acts of trade dress infringement will cause further irreparable injury to BIG LEAGUE CHEW if Ford Gum is not restrained by this Court from further violation of BIG LEAGUE CHEW's rights.

**ANSWER:** Ford Gum denies the allegations in Paragraph 166 of the Complaint.

167. Due to Ford Gum's violations of the Lanham Act, BIG LEAGUE CHEW is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at trial, disgorgement of profits, attorney's fees, costs, and pre-judgment and post-judgment interest.

**ANSWER:** Ford Gum denies the allegations in Paragraph 167 of the Complaint.

168. Ford Gum's infringement of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress is willful, deliberate, and in bad faith.

**ANSWER:** Ford Gum denies the allegations in Paragraph 168 of the Complaint.

169. BIG LEAGUE CHEW has no adequate remedy at law.

**ANSWER:** Ford Gum denies that Plaintiffs are entitled to any remedy at law or equity.

**SECOND CLAIM FOR RELIEF**
**(Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a))**

170.    BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

**ANSWER:** Ford Gum repeats and realleges its previous responses as if fully set forth herein.

171.    By misappropriating and using BIG LEAGUE CHEW's distinctive Shredded Bubble Gum Trade Dress in commerce, Ford Gum misrepresents and falsely describes to the general public the origin and source of the infringing goods and creates a likelihood of confusion by purchasers as to the source of the merchandise.

**ANSWER:** Ford Gum denies the allegations in Paragraph 171 of the Complaint.

172.    Ford Gum's unauthorized and unlicensed manufacturing, advertising, distributing, offering for sale, and sale of the infringing goods in interstate commerce creates express and implied misrepresentations that those goods were created, authorized, or approved by BIG LEAGUE CHEW, which will damage both BIG LEAGUE CHEW and the public and which will profit Ford Gum.

**ANSWER:** Ford Gum denies the allegations in Paragraph 172 of the Complaint.

173.    Upon information and belief, Ford Gum has manufactured, distributed, advertised, sold, and offered its infringing goods for sale in interstate commerce using BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress with the intention of misleading, deceiving, or confusing consumers as to the origin of its goods and of trading on BIG LEAGUE CHEW's reputation and goodwill.

**ANSWER:** Ford Gum denies the allegations in Paragraph 173 of the Complaint.

174.     Ford Gum's unauthorized marketing and sale of the infringing goods in interstate commerce using BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress constitutes a use of a false designation of origin or false representation that wrongfully and falsely designates Ford Gum's products as originating from or connected with BIG LEAGUE CHEW, in violation of 15 U.S.C. § 1125(a).

**ANSWER:** Ford Gum denies the allegations in Paragraph 174 of the Complaint.

175.     As a direct and proximate result of Ford Gum's acts of unfair competition, BIG LEAGUE CHEW has suffered and will continue to suffer irreparable loss of income, profits and goodwill and Ford Gum has unfairly acquired and will continue to unfairly acquire income, profits and goodwill.

**ANSWER:** Ford Gum denies the allegations in Paragraph 175 of the Complaint.

176.     Ford Gum's acts of unfair competition will cause further irreparable injury to BIG LEAGUE CHEW if Ford Gum is not restrained by this Court from further violation of BIG LEAGUE CHEW's rights.

**ANSWER:** Ford Gum denies the allegations in Paragraph 176 of the Complaint.

177.     BIG LEAGUE CHEW has no adequate remedy at law.

**ANSWER:** Ford Gum denies that Plaintiffs are entitled to any remedy, whether legal or equitable.

**THIRD CLAIM FOR RELIEF**
**(Dilution Under 15 U.S.C. § 1125(c))**

178.     BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

**ANSWER:** Ford Gum repeats and realleges its previous responses as if fully set forth herein.

179. BIG LEAGUE CHEW'S distinctive Shredded Bubble Gum Trade Dress has become famous as a result of many years of nationwide use and promotion of the mark by BIG LEAGUE CHEW.

**ANSWER:** Ford Gum admits that the Shredded Gum Trade Dress is famous and denies the remaining allegations in Paragraph 179 of the Complaint.

180. Ford Gum's first use of its trade dress in interstate commerce occurred decades after BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress had become famous.

**ANSWER:** Ford Gum does not know when the Shredded Gum Trade Dress became famous.

181. Ford Gum's trade dress is identical to BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress.

**ANSWER:** Ford Gum denies the allegations in Paragraph 181 of the Complaint. There is only one Shredded Gum Trade Dress and Ford Gum owns it.

182. Ford Gum's unauthorized use of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress in interstate commerce in the sale, advertising and promotion of its goods causes dilution by blurring the distinctiveness, strength and value of BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress.

**ANSWER:** Ford Gum denies the allegations in Paragraph 182 of the Complaint.

183. Ford Gum's unauthorized use of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress, as alleged herein, with knowledge of BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress, constitutes a willful intent to trade on the recognition of the famous Shredded Bubble Gum Trade Dress in violation of Section 43(c)(5) of the Lanham Act, 15 U.S.C. § 1125(c)(5). As required for relief under Section 43(c)(5), Ford Gum made its

unauthorized use of its trade dress after October 6, 2006, the date of enactment of the Trademark
Dilution Revision Act of 2006.

**ANSWER:** Ford Gum denies the allegations in Paragraph 183 of the Complaint.

184.    Due to Ford Gum's violations of the Lanham Act, BIG LEAGUE CHEW is
entitled to injunctive relief, actual and compensatory damages in an amount to be determined at
trial, disgorgement of profits, attorney's fees, costs, and pre-judgment and post-judgment
interest.

**ANSWER:** Ford Gum denies the allegations in Paragraph 184 of the Complaint.

185.    Ford Gum's acts of dilution of BIG LEAGUE CHEW's Shredded Bubble Gum
Trade Dress are willful, deliberate, and in bad faith.

**ANSWER:** Ford Gum denies the allegations in Paragraph 185 of the Complaint.

186.    Without injunctive relief, BIG LEAGUE CHEW has no means by which to stop
the continuing dilution by blurring of its famous and distinctive Shredded Bubble Gum Trade
Dress.

**ANSWER:** Ford Gum denies the allegations in Paragraph 186 of the Complaint that
Plaintiffs are entitled to any relief.

**FOURTH CLAIM FOR RELIEF**
**(State Common Law Trademark and Trade Dress Infringement)**

187.    BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set
forth herein.

**ANSWER:** Ford Gum repeats and realleges its previous responses as if fully set forth
herein.

188.    BIG LEAGUE CHEW has used the distinctive Shredded Bubble Gum Trade
Dress for its shredded bubble gum product in interstate commerce continuously since 1979.

**ANSWER:** Ford Gum denies the allegations in Paragraph 188 of the Complaint.

189.    BIG LEAGUE CHEW has invested substantial time, effort and financial resources promoting its Shredded Bubble Gum Trade Dress in connection with the marketing and sale of its shredded bubble gum product in interstate commerce.

**ANSWER:**  Ford Gum is without knowledge of the allegations in Paragraph 189 of the Complaint and on that basis denies them.

190.    BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress is nonfunctional and distinctive.

**ANSWER:**  Ford Gum admits that the Shredded Gum Trade dress is nonfunctional and distinctive and denies the remaining allegations in Paragraph 190 of the Complaint.

191.    BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress has secondary meaning in the marketplace in that consumers associate that trade dress with a single source of origin.  Consumers are likely to make that same association when the trade dress is used in connection with another manufacturer's product.

**ANSWER:**  Ford Gum admits that consumers associate the Shredded Gum Trade Dress with a single source of origin.  The statement that "Consumers are likely to make that same association when the trade dress is used in connection with another manufacturer's product" is vague and ambiguous and Ford Gum denies it on this basis.

192.    Ford Gum manufactures, distributes, advertises, offers for sale, or sells shredded bubble gum in interstate commerce, including shredded bubble gum, using a trade dress that is identical or substantially similar to BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress. BIG LEAGUE CHEW did not authorize or license the use of its distinctive Shredded Bubble Gum Trade Dress on or in connection with the infringing goods. Ford Gum has manufactured, distributed, advertised, sold, and offered the infringing goods for sale using BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress with the intention of misleading, deceiving, or

confusing consumers as to the origin of its goods and of trading on BIG LEAGUE CHEW's reputation and goodwill.

**ANSWER:** Ford Gum denies the allegations in Paragraph 192 of the Complaint. There is only one Shredded Gum Trade Dress and Ford Gum owns it.

193. Ford Gum's manufacture, advertising, distribution, selling, and offering to sell infringing products that have a shredded bubble gum trade dress copied from and confusingly similar to BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress are likely to cause confusion on the part of purchasers and potential purchasers in violation of Illinois law and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:** Ford Gum denies the allegations in Paragraph 193 of the Complaint.

194. As a direct and proximate result of Ford Gum's trade dress infringement, BIG LEAGUE CHEW has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Ford Gum has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

**ANSWER:** Ford Gum denies the allegations in Paragraph 194 of the Complaint.

195. Ford Gum's acts of trade dress infringement will cause further irreparable injury to BIG LEAGUE CHEW if Ford Gum is not restrained by this Court from further violation of BIG LEAGUE CHEW's rights.

**ANSWER:** Ford Gum denies the allegations in Paragraph 195 of the Complaint.

196. BIG LEAGUE CHEW has no adequate remedy at law.

**ANSWER:** Ford Gum denies the allegations in Paragraph 196 of the Complaint.

## FIFTH CLAIM FOR RELIEF
### (State Common Law Trademark Dilution)

197. BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

**ANSWER:** Ford Gum repeats and realleges its previous responses as if fully set forth herein.

198.    BIG LEAGUE CHEW'S distinctive Shredded Bubble Gum Trade Dress has become famous as a result of many years of nationwide use and promotion of the mark by BIG LEAGUE CHEW.

**ANSWER:** Ford Gum admits that the Shredded Gum Trade Dress is famous and denies that Plaintiffs own it.

199.    Ford Gum's first use of its trade dress in interstate commerce occurred decades after BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress had become famous.

**ANSWER:** Ford Gum admits that it has used the Shredded Gum Trade Dress after one or more Plaintiffs first used it.

200.    Ford Gum's trade dress is identical to BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress.

**ANSWER:** Ford Gum admits there is only one Shredded Gum Trade Dress and that Ford Gum is the current owner of it.

201.    Ford Gum's unauthorized use of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress in interstate commerce in the sale, advertising and promotion of its goods causes dilution by blurring the distinctiveness, strength and value of BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress.

**ANSWER:** Ford Gum denies the allegations in Paragraph 201 of the Complaint.

202.    Ford Gum's unauthorized use of BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress, as alleged herein, with knowledge of BIG LEAGUE CHEW's famous Shredded Bubble Gum Trade Dress, constitutes a willful intent to trade on the recognition of the famous

Shredded Bubble Gum Trade Dress in violation of Illinois law and Section 43(c)(5) of the

Lanham Act, 15 U.S.C. § 1125(c)(5).

**ANSWER:** Ford Gum denies the allegations in Paragraph 202 of the Complaint.

203.     Without injunctive relief, BIG LEAGUE CHEW has no means by which to stop

the continuing dilution by blurring of its famous and distinctive Shredded Bubble Gum Trade

Dress.

**ANSWER:** Ford Gum denies the allegations in Paragraph 203 of the Complaint.

**SIXTH CLAIM FOR RELIEF**
**(Deceptive Trade Practices Under 815 I.L.C.S. § 510)**

204.     BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set

forth herein.

**ANSWER:** Ford Gum repeats and realleges its previous responses as if fully set forth

herein.

205.     Ford Gum has and is engaged in deceptive trade practices and caused damage to

BIG LEAGUE CHEW.

**ANSWER:** Ford Gum denies the allegations in Paragraph 205 of the Complaint.

206.     Ford Gum has and is passing off BIG LEAGUE CHEW's product, namely

shredded bubble gum, as its own.

**ANSWER:** Ford Gum denies the allegations in Paragraph 206 of the Complaint.

207.     Ford Gum's actions have caused and will cause a likelihood of confusion or

misunderstanding as to the source, sponsorship, approval or certification of the shredded bubble

gum product.

**ANSWER:** Ford Gum denies the allegations in Paragraph 207 of the Complaint.

208.     Ford Gum's actions have caused and will cause a likelihood of confusion or misunderstanding as to the affiliation, connection or association with, or certification by, BIG LEAGUE CHEW.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 208 of the Complaint.

209.     Ford Gum has used and is using deceptive representations or designations of the origin with the shredded bubble gum product.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 209 of the Complaint.

210.     Ford Gum represents that the shredded bubble gum product is of a particular style when, in fact, the distinctive product was created, and the rights are owned, by BIG LEAGUE CHEW.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 210 of the Complaint.

211.     Ford Gum falsely claimed and continues to claim that it created and owns the right to the shredded bubble gum product and, in so doing, disparages BIG LEAGUE CHEW.

**ANSWER:**  Ford Gum denies the allegations in Paragraph 211 of the Complaint.

### SEVENTH CLAIM FOR RELIEF
### (Breach of the Licensing Agreement)

212.     BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

**ANSWER:**  Ford Gum repeats and realleges its previous responses as if fully set forth herein.

213.     TRNC, BIG LEAGUE CHEW and Ford Gum entered into the License Agreement.

**ANSWER:**  Ford Gum admits entering into the License Agreement.

214.     Ford Gum breached the License Agreement by, among other things:

    a.     failing to pay royalties as required by the terms of the License Agreement;

b. failing to use its best efforts to affect the sale of the Licensed Products in the Territory;

c. using BIG LEAGUE CHEW's Trademarks and Trade Dress in a manner that violates the terms of the License Agreement;

d. infringing on BIG LEAGUE CHEW's Trademarks and Shredded Bubble Gum Trade Dress;

e. failing to provide reports as required by the License Agreement;

f. failing to acknowledge that BIG LEAGUE CHEW owns all right, title, and interest in and to the Trademarks and Trade Dress and the goodwill symbolized by the Trademarks and Trade Dress;

g. failing to ensure that all use of the Trademarks and Trade Dress and the goodwill symbolized by the Trademarks and Trade Dress inure to the benefit of BIG LEAGUE CHEW;

h. representing that BIG LEAGUE CHEW is not the sole and exclusive owner of all trademarks, copyrights, trade dress, and all materials of any sort which in any way utilizes, incorporates or is associated with the Trademarks including all such materials developed by Ford Gum;

i. claiming a right, title and interest in BIG LEAGUE CHEW's Trademarks and Trade Dress;

j. attempting to acquire a right, title and interest to BIG LEAGUE CHEW's Trademarks and Trade Dress;

k. applying to register in its own name BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress;

l.      failing to cooperate with BIG LEAGUE CHEW in facilitating BIG

LEAGUE CHEW's control of the nature and quality of the Licensed

Products;

m.      using BIG LEAGUE CHEW's Trademarks and Trade Dress in advertising

beyond the reproduction and promotion of the Licensed Products;

n.      utilizing the equipment purchased from TRNC for products other than the

Licensed Products; and

o.      competing with BIG LEAGUE CHEW.

**ANSWER:** Ford Gum denies the allegations in Paragraph 214 of the Complaint.

215.    TRNC are BIG LEAGUE CHEW are in compliance with the License Agreement.

**ANSWER:** Ford Gum admits the allegations in Paragraph 215 of the Complaint.

216.    TRNC and BIG LEAGUE CHEW have suffered damages by Ford Gum's

breaches of the License Agreement.

**ANSWER:** Ford Gum denies the allegations in Paragraph 216 of the Complaint

### EIGHTH CLAIM FOR RELIEF
### (Breach of the Equipment Purchase Agreement)

217.    BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set

forth herein.

**ANSWER:** Ford Gum repeats and realleges its previous responses as if fully set forth

herein.

218.    TRNC, BIG LEAGUE CHEW and Ford Gum entered into the Equipment

Purchase Agreement.

**ANSWER:** Ford Gum admits to entering into the Equipment Purchase Agreement.

219.    Ford Gum breached the Equipment Purchase Agreement by, among other things:

a.      failing to pay royalties as required by the terms of the License Agreement;

b.      failing to use its best efforts to affect the sale of the Licensed Products in the Territory;

c.      using BIG LEAGUE CHEW's Trademarks and Trade Dress in a manner that violates the terms of the License Agreement;

d.      infringing on BIG LEAGUE CHEW's Trademarks and Shredded Bubble Gum Trade Dress;

e.      failing to provide reports as required by the License Agreement;

f.      failing to acknowledge that BIG LEAGUE CHEW owns all right, title, and interest in and to the Trademarks and Trade Dress and the goodwill symbolized by the Trademarks and Trade Dress;

g.      failing to ensure that all use of the Trademarks and Trade Dress and the goodwill symbolized by the Trademarks and Trade Dress inure to the benefit of BIG LEAGUE CHEW;

h.      representing that BIG LEAGUE CHEW is not the sole and exclusive owner of all trademarks, copyrights, trade dress, and all materials of any sort which in any way utilizes, incorporates or is associated with the Trademarks and Trade Dress including all such materials developed by Ford Gum;

i.      claiming a right, title and interest in BIG LEAGUE CHEW's Trademarks and Trade Dress;

j.      attempting to acquire a right, title and interest to BIG LEAGUE CHEW's Trademarks and Trade Dress;

k.      applying to register in its own name BIG LEAGUE CHEW's Shredded Bubble Gum Trade Dress;

     l.      failing to cooperate with BIG LEAGUE CHEW in facilitating BIG

LEAGUE CHEW's control of the nature and quality of the Licensed

Products;

     m.    using BIG LEAGUE CHEW's Trademarks and Trade Dress in advertising

beyond the reproduction and promotion of the Licensed Products;

     n.     utilizing the equipment purchased from TRNC for products other than the

Licensed Products; and

     o.     competing with BIG LEAGUE CHEW by, among other things, offering

for sale and selling shredded bubble gum.

**ANSWER:** Ford Gum denies the allegations in Paragraph 219 of the Complaint.

220. TRNC are BIG LEAGUE CHEW are in compliance with the Equipment Purchase Agreement.

**ANSWER:** Ford Gum admits the allegations in Paragraph 220 of the Complaint.

221. TRNC and BIG LEAGUE CHEW have suffered damages by Ford Gum's breaches of the Equipment Purchase Agreement.

**ANSWER:** Ford Gum denies the allegations in Paragraph 221 of the Complaint.

<u>**NINTH CLAIM FOR RELIEF**</u>
<u>**(Accounting)**</u>

222. BIG LEAGUE CHEW repeats and realleges the previous allegations as if fully set forth herein.

**ANSWER:** Ford Gum repeats and realleges its previous responses as if fully set forth herein.

223. BIG LEAGUE CHEW is entitled to an accounting because BIG LEAGUE CHEW and Ford Gum are parties to the License Agreement which Ford Gum has breached as described herein-above.

**ANSWER:** Ford Gum has provided the information to Plaintiffs on a regular basis, as set forth in the License Agreement. Ford Gum denies that this action was necessary to obtain any accounting.

224. The License Agreement requires Ford Gum to preserve all books and records and make them available to BIG LEAGUE CHEW for inspection and audit.

**ANSWER:** Ford Gum has complied with the License Agreement.

225. BIG LEAGUE CHEW has suffered damages as a result of Ford Gum's breach of the License Agreement.

**ANSWER:** Ford Gum denies the allegations in Paragraph 225 of the Complaint.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

1. Plaintiffs' Complaint fails to allege sufficient facts to state a claim on which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
**(Equitable Estoppel)**

2. Plaintiffs' own representations and actions bar Plaintiffs' claims. Plaintiffs entered into the March 2024 Agreement on March 26, 2024 for Ford Gum to own, apply for, and enforce the Shredded Gum Trade Dress, on Ford Gum's own behalf, and at Ford Gum's expense. Ford Gum reasonably relied on the March 2024 Agreement and repeatedly and continuously performed it. Ford Gum's performance consisted of at least the following actions: filing the Shredded Gum Trade Dress Application on behalf of Ford Gum, sending cease and desist letters on Ford Gum's behalf with regard to two infringements, and taking other enforcement actions, all at Ford Gum's expense, and to Plaintiffs' benefit. Plaintiffs also performed the March 2024 Agreement by, at least, providing to Ford Gum information regarding a second trade dress infringement on July 31, 2024 so that Ford Gum would enforce the Shredded Gum Trade Dress.

On September 13, 2024, Plaintiffs confirmed the March 2024 Agreement in writing in a text messages Rob Nelson sent to Scott Lerner. Ford Gum continues to perform the March 2024 Agreement without objection by Plaintiffs, who, consistent with the March 2024 Agreement, have never asked any questions about the status of any efforts to enforce the Shredded Gum Trade Dress, and never offered to contribute any resources to those efforts. For any and/or all of these reasons, and for other reasons, Plaintiffs, and each of them, are estopped from owning or claiming ownership of the Shredded Gum Trade Dress.

### THIRD AFFIRMATIVE DEFENSE
**(Waiver)**

3.      By entering into the March 2024 Agreement for Ford Gum to own, apply for, enforce, and pay for the Shredded Gum Trade Dress, and by reaping the benefits of Ford Gum's full and continuous performance of the March 2024 Agreement, Plaintiffs, and each of them, expressly waived any claim of ownership in the Shredded Gum Trade Dress. Plaintiffs affirmed their waiver of any claim of ownership in the Shredded Gum Trade Dress by performing the March 2024 Agreement. Plaintiffs' performance consisted of, at least, providing to Ford Gum on July 31, 2024 evidence of an infringement of the Shredded Gum Trade Dress so that Ford Gum would enforce the Shredded Gum Trade Dress against that infringer, which Ford Gum proceeded to do. Plaintiffs reaffirmed their waiver of any claim of ownership in the Shredded Gum Trade Dress in text messages Rob Nelson sent to Scott Lerner on September 13, 2024.

### FOURTH AFFIRMATIVE DEFENSE
**(Acquiescence)**

4.      By entering into the March 2024 Agreement for Ford Gum to own, apply for, enforce, and pay for the Shredded Gum Trade Dress, and by reaping the benefits of Ford Gum's full and continuous performance of the March 2024 Agreement, Plaintiffs, and each of them, acquiesced to Ford Gum's ownership of the Shredded Gum Trade Dress. Plaintiffs affirmed

their acquiescence by performing the March 2024 Agreement. Plaintiffs' performance consisted of, at least, providing to Ford Gum on July 31, 2024 evidence of an infringement of the Shredded Gum Trade Dress so that Ford Gum would enforce the Shredded Gum Trade Dress against that infringer, which Ford Gum proceeded to do. Plaintiffs reaffirmed their acquiescence to Ford Gum's ownership of the Shredded Gum Trade Dress in text messages Rob Nelson sent to Scott Lerner on September 13, 2024.

<u>**FIFTH AFFIRMATIVE DEFENSE**</u>
**(Unclean Hands)**

5. Plaintiffs, and each of them, are barred from any recovery in this matter due to their unclean hands in filing a lawsuit claiming ownership of the Shredded Gum Trade Dress, while at all times knowing that they had entered into, and have been reaping the benefits of, the March 2024 Agreement. Plaintiff reconfirmed the March 2024 Agreement in text messages Rob Nelson sent to Scott Lerner on September 13, 2024. Plaintiff's actions contrary to the March 2024 Agreement have been inequitable, in bad faith, and/or fraudulent, and have caused injury or harm to Ford Gum.

<u>**SIXTH AFFIRMATIVE DEFENSE**</u>
**(Abandonment)**

6. Long before Plaintiffs entered into the License Agreement with Ford Gum, Plaintiffs routinely failed to enforce any Shredded Gum Trade Dress rights, despite knowing of the existence of other companies using the Shredded Gum Trade Dress.

7. From at least the time that Ford Gum started selling shredded gum in 2010, no other manufacturer was offering for sale or selling shredded gum.

8. However, on February 21, 2024, Ford Gum learned that a competitor, Hilco Sweets, was intending to launch a competing brand of shredded bubble gum under the WARHEADS trademark. Ford Gum informed Plaintiffs of the threat posed by this Shredded

Gum Trade Dress Infringement, explaining in an email dated February 21, 2024 sent by Robert Spigner, Ford Gum's Director, to Rob Nelson, Plaintiffs' principal, that there were "ways to combat this [infringement] but will need legal guidance and investment."

9.       Plaintiffs refused to enforce the Shredded Gum Trade Dress against Hilco Sweets. This refusal was a demonstration of Plaintiffs' most recent intent to disclaim or abandon any Shredded Gum Trade Dress rights.

10.       In an email dated March 26, 2024 from Scott Lerner to Rob Nelson, Ford Gum offered to own, apply for, assert and pay for the Shredded Gum Trade Dress on Ford Gum's own behalf.  Plaintiffs accepted that offer, creating the March 2024 Agreement.  By entering into, performing, reaping the benefits of, and confirming the March 2024 Agreement on September 13, 2024, Plaintiffs, and each of them, abandoned any claim of ownership in the Shredded Gum Trade Dress.

**SEVENTH AFFIRMATIVE DEFENSE**
**(Failure To Do Equity)**

11.       Plaintiffs have not acted fairly to fulfill their own equitable obligations.  By entering into the March 2024 Agreement for Ford Gum to own, apply for, enforce, and pay for the Shredded Gum Trade Dress, and then filing a lawsuit asserting claims disavowing and contradicting the March 2024 Agreement after obtaining multiple, ongoing benefits of it, Plaintiffs, and each of them, have failed to do equity.

12.       Plaintiffs' actions alleging that Ford Gum has intentionally misread the March 26, 2024 emails, and concealing the existence of the September 13, 2024 text messages, are not equitable.

13.       Plaintiffs' actions in seeking the perceived benefits of claiming ownership of the Shredded Gum Trade Dress, while simultaneously avoiding the burdens associated with its enforcement, is not equitable.

SMRH:4911-9569-7922.2

## EIGHTH AFFIRMATIVE DEFENSE
### (Consent)

14.     Plaintiffs consented to Ford Gum owning, applying for, enforcing, and paying for the Shredded Gum Trade Dress by entering into the March 2024 Agreement, performing the March 2024 agreement, reaping the benefits of Ford Gum's performance of the March 2024 Agreement, and confirming the March 2024 Agreement on September 13, 2024.

## NINTH AFFIRMATIVE DEFENSE
### (Ratification)

15.     Plaintiffs ratified the March 2024 Agreement in several ways: on July 31, 2024 by conduct when Rob Nelson, on behalf of Plaintiffs, texted Scott Lerner of Ford Gum images of an infringing product so that Ford Gum would enforce the Shredded Gum Trade Dress against that infringer; by words on September 13, 2024 when Mr. Nelson sent Mr. Lerner text messages expressly approving the terms of the March 2024 Agreement; and at all times after March 26, 2024 by reaping the benefit of Ford Gum's performance of the March 2024 Agreement.  At all of these times, Plaintiff had full knowledge of the facts of its earlier acts starting on March 26, 2024, and intended to give validity to them.

## TENTH AFFIRMATIVE DEFENSE
### (Improper Purpose)

16.     Plaintiffs are pursuing their legal and equitable claims for an improper purpose or ulterior motive, not for a legitimate purpose.  Plaintiffs are wrongly claiming, among other things, that Defendant is in breach of the License Agreement and Equipment Purchase Agreement in a wrongful attempt to deprive Ford Gum of the benefit of the remaining 71 years of the term of the License Agreement.  This remaining term of the License Agreement consists of an additional 21 years on the current term, plus two additional renewal terms of 25 years each.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Failure to Satisfy Conditions Precedent)

17. Plaintiffs' Complaint claims that Plaintiffs have "the right to terminate both" the License Agreement and Equipment Purchase Agreement. (ECF 1, ¶ 156.)

18. Plaintiffs failed to satisfy the required conditions precent to any termination by failing to provide the notice required by the License Agreement and/or Equipment Purchase Agreement.

19. Section 21(b) of the License Agreement addresses "Termination" and requires "sixty (60) days written notice" of termination for material breach, during which time "the breaching party may cure its breach within said sixty (60) day period."

20. Section 9 of the Equipment Purchase Agreement also requires at least ten (10) days written notice of any claimed default.

21. Plaintiffs failed to provide any notice as required under the License Agreement or Equipment Purchase Agreement.

## TWELFTH AFFIRMATIVE DEFENSE
### (Lack of Harm)

22. Plaintiffs have received, and continue to receive, royalty payments under the License Agreement for every unit of shredded gum product sold, and for every unit of non-shredded gum product sold under the BIG LEAGUE CHEW trademark, even after Plaintiff entered into the March 2024 Agreement, and even though Plaintiff does not own the Shredded Gum Trade Dress. Plaintiffs have not sustained any harm whatsoever.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

23. Plaintiffs lack standing to bring the claim because they have not suffered harm or do not have a sufficient connection to the alleged wrongs and/or alleged practices.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Adequate Remedy at Law)

24.     There is no basis for injunctive relief.  Plaintiffs are not without an adequate

remedy at law.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

25.     Plaintiffs failed to take reasonable steps to mitigate their alleged damages.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Injunctive Relief Is Inappropriate)

26.     Plaintiffs are seeking injunctive relief, but the circumstances do not warrant it.

Among other things, there is no ongoing deceptive practices or likelihood of recurrence.

## RESERVATION OF RIGHTS

27.     Ford Gum reserves the right to assert and rely upon any additional defenses that

discovery may reveal, and reserves the right to amend or to seek to amend its answer and/or

defenses.

## II.

## COUNTERCLAIM

For its Counterclaim in this action, Defendant and Counter-Claimant Ford Gum & Machine Company, Inc. ("Defendant," "Counter-Claimant" or "Ford Gum"), through its undersigned counsel, alleges against Plaintiffs and Counter-Defendants Big League Chew Properties, LLC ("BLCP") and The Rob Nelson Company, Inc. ("TRNC") (together, "Plaintiffs" or "Counter-Defendants") as follows:

### INTRODUCTORY STATEMENT

1.       Plaintiffs/Counter-Defendants have filed this baseless lawsuit against Ford Gum. This Counterclaim is necessary to enforce the agreements and promises made by Counter-Defendants.  Ford Gum seeks a legal declaration that: Ford Gum owns the trade dress rights in the shape of the shredded gum that it makes and sells ("Shredded Gum Trade Dress") and that Ford Gum has not breached the License Agreement and/or the Equipment Purchase Agreement.

2.       Starting as early as the 1980s, Counter-Defendants have filed a number of trademark applications.  None have claimed or included any Shredded Gum Trade Dress.

3.       In 2010, the parties entered into a License Agreement, primarily for Ford Gum to use Plaintiff's BIG LEAGUE CHEW trademark in connection with gum manufactured by Ford Gum at its plant in Akron, New York.  The License Agreement does not identify, define or include any Shredded Gum Trade Dress.

4.       On or about February 21, 2024, Ford Gum learned for the first time that a third party intended to infringe the Shredded Gum Trade Dress.  Ford Gum immediately informed Counter-Defendants of the impending infringement, explaining that there was a strategy to protect and enforce the Shredded Gum Trade Dress, which would require "legal guidance and

investment." But Counter-Defendants declined to engage in any efforts to enforce the Shredded Gum Trade Dress, informing Ford Gum that Plaintiffs preferred to encourage the competition.

5.       Ford Gum felt strongly that the Shredded Gum Trade Dress should be enforced and that the impending unfair competition should be stopped.  Unlike Plaintiffs, Ford Gum did not want to encourage or permit any unfair competition.

6.       Since Counter-Defendants intended to do nothing to stop the impending infringement, Ford Gum came up with a plan.  On March 26, 2024, Ford Gum offered in writing to enter into an agreement with Counter-Defendants for Ford Gum to own, apply for, enforce, and pay for the Shredded Gum Trade Dress "on behalf of Ford Gum."  The offer was unambiguous, and Counter-Defendants accepted it in writing.  The parties thus entered into the "March 2024 Agreement."

7.       Ford Gum has relied on and performed the March 2024 Agreement ever since, and Counter-Defendants have benefitted from it.

8.       Counter-Defendants also performed the March 2024 Agreement.  Among other things, Counter-Defendants sent to Ford Gum evidence of a second infringement on July 31, 2024 so that Ford Gum would continue to perform the March 2024 Agreement by enforcing the Shredded Gum Trade Dress a second time, against this second infringer.  Ford Gum did so.

9.       Plaintiffs also confirmed the March 2024 Agreement in text messages their principal, Ron Nelson, sent to the Chief Executive Officer of Ford Gum on September 13, 2024.

10.      After confirming and reaping the benefits of the March 2024 Agreement, Counter-Defendants have filed this lawsuit wrongly claiming that Ford Gum's actions breach the License Agreement and the Equipment Purchase Agreement between the parties, and constitute violations of the Lanham Act, the common law, and an Illinois state statute.  Ford Gum's actions are none of those things.  It owns the Shredded Gum Trade Dress.

11.     This action is necessary to enforce the March 2024 Agreement. Ford Gum seeks a preliminary and permanent injunction prohibiting Counter-Defendants from claiming ownership in the Shredded Gum Trade Dress so that Ford Gum's enforcement efforts can continue without interference.

12.     Plaintiffs have stated that they are looking to contract with another manufacturer to replace Ford Gum. They have no right to do that. If Plaintiffs are contracting with another manufacturer, Ford Gum will suffer irreparable harm. Ford Gum seeks a preliminary and permanent injunction to stop Plaintiffs from enacting this threat.

### THE PARTIES

13.     Ford Gum is an Illinois corporation with its principal place of business in Akron, New York.

14.     Ford Gum is informed and believes, and on that basis alleges, that BLCP is a limited liability company formed pursuant to the laws of the State of Oregon with its principal place of business in Vancouver, Washington.

15.     Ford Gum is informed and believes, and on that basis alleges, that TRNC is a corporation formed pursuant to the laws of the State of Washington with its principal place of business in Vancouver, Washington.

16.     Ford Gum is informed and believes, and on that basis alleges, that at all relevant times, each Counter-Defendant, including those sued as DOES, was acting as the agent, servant, employee, partner, joint venturer, or representative of the other Counter-Defendants, and was acting within the course and scope of that relationship.

17.     Plaintiff reserves the right to amend this Counterclaim to substitute the true names and capacities of DOES 1 through 10 when they are discovered.

## JURISDICTION

18.     This Counterclaim arises under the Declaratory Judgement Act, 28 U.S. Code § 2201, the Lanham Act, as amended, 15 U.S.C. §§ 1051 *et seq*., and the common law.  The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331. 1338, 2201, as well as 15 U.S.C. § 1121

19.     This Court has personal jurisdiction over BLCP and TRNC.  BLCP and TRNC have sued Ford Gum in this District.

20.     Venue is proper in this District pursuant to 28 §1391(b) and (c). BLCP and TRNC have sued Ford Gum in this District.

## FACTS

### A. Ford Gum

21.     Ford Gum was founded in 1913, over 100 years ago.  Ford Gum operates a manufacturing plant in Akron, New York, a small town with a population of fewer than 3,000. Ford Gum employs approximately 100 people to make, promote and sell chewing and bubble gum.

### B. The Shredded Gum Trade Dress

22.     Among other products, Ford Gum makes and sells shredded bubble gum in the shape of the Shredded Gum Trade Dress, as shown in the image below:



**C. The License Agreement**

23.     On or about July 16, 2010, Ford Gum, TNRC, and Associated International Marketing, Inc. ("AIM") entered into a written License Agreement (the "License Agreement").

24.     The purpose of the License Agreement, as stated in its recitals, is for Ford Gum to "obtain a license to use the Trademarks, the Trade Dress and Copyrights in connection with manufacturing, marketing and selling shredded gum in a pouch in the Territory for the Term, all as defined" in the License Agreement.

25.     The "License" provision is stated in Section 2 of the License Agreement, which grants to Ford Gum a license to use on an "exclusive" basis "the Trademarks, the Copyrights, and the Trade Dress, created prior to or during the Term of [the] License Agreement" for use "only with the Licensed Products."

26.     The only intellectual property licensed in the License Agreement are "the Trademarks, the Copyrights, and the Trade Dress."

**D. Counter Defendants Did Not Claim to Own any Shredded Gum Trade Dress Rights in the License Agreement**

27.     The License Agreement defines "Trademarks" in Section 1.(a) as "trademarks which are comprised of the term "BIG LEAGUE," including, without limitation all common law trademarks for BIG LEAGUE CHEW, and the registrations listed in Schedule l(a) annexed hereto, and the goodwill associated therewith."  (License Agreement, § 1.(a).)

28.     This definition of "Trademarks" is also stated in the third recital of the License Agreement, which states that the "trademarks" are "comprised of the term 'BIG LEAGUE,' including, without limitation BIG LEAGUE CHEW, and the registrations listed in Schedule 1(a) annexed hereto.  (License Agreement, p. 1.)

29.     Schedule l(a) of the License Agreement does not include any registration for any Shredded Gum Trade Dress.

30.     At the time the License Agreement was entered into, Counter-Defendants had not applied for, and did not own, any registration for any Shredded Gum Trade Dress.

31.     To this day, Counter-Defendants have not applied for, and do not own, any registration for any Shredded Gum Trade Dress.

32.     The definition of "Trademark" in the License Agreement does not include any Shredded Gum Trade Dress.

33.     The License Agreement defines "Trade Dress" as "original artwork, graphics, and associated package designs, characters, displays, literary materials, and audio and visual materials which are applied to packaging and advertising for or used in connection with the Licensed Products whether provided by TRNC or Licensee."  (License Agreement, § 1.(b).)

34.     The "Trade Dress," as defined in the Licensing Agreement, is "Product Packaging Trade Dress."  Below is an image of the "Product Packaging Trade Dress" for the Original flavor of the product as it appeared previous to a refresh by Ford Gum:



35.     Below is an image of the "Product Packaging Trade Dress" for the current

packaging for the Original flavor of the product after Ford Gum changed it:



36.     Ford Gum manufactures different flavors of the product in the shape of the

Shredded Gum Trade Dress.  Other flavors of the product include Sour Apple, Watermelon,

Strawberry, Blue Raspberry, Cotton Candy and Grape. Each flavor has a different color and

character on the packaging.  Prior versions of the Product Packaging Trade Dress for the various

flavors are shown below:









37.     Ford Gum updated the Product Packaging Trade Dress with three different versions of the front of the packaging for each flavor. One version of the updated Product Packaging Trade Dress for each flavor is shown below:








38.     Ford Gum conducted, oversaw, and paid for the work to refresh the Product Packaging Trade Dress.

39.     Plaintiffs/Counter-Defendants approved the new Product Packaging Trade Dress designs.

40.     The definition of "Trade Dress" in the License Agreement does not include any Shredded Gum Trade Dress.

41.     The License Agreement defines "Copyrights" as "all copyrights subsisting in the Trade Dress and all advertising materials at common law."  (License Agreement, § 1.(c).)

42.     The "Copyrights" in the "Trade Dress" as defined in the License Agreement consist of the characters on the product packaging depicted playing baseball or softball.

43.     The definition of "Copyrights" in the License Agreement does not include any Shredded Gum Trade Dress.

44.     The License Agreement states that TRNC is the "current owner" of the "Trademarks," the "Trade Dress" and the "Copyrights," as defined in, and licensed by the License Agreement.  (License Agreement, p. 1.)

45.     The License Agreement defines "Territory" as worldwide.  (License Agreement, § 1.(e).)

46.     On or about March 30, 2012, TRNC, AIM and Ford Gum entered into a written Equipment Purchase Agreement with TRNC and AIM dated March 30, 2012 for Ford Gum to purchase from TRNC certain equipment to manufacture shredded gum.

47.     On or about March 30, 2012, TRNC, Ford Gum, and AIM entered into the First Amendment to License Agreement dated March 30, 2012 (the "First Amendment"), to reflect the changes resulting from the Equipment Purchase Agreement.

48.     On or about May 20, 2014, TRNC, Ford Gum and AIM entered into a Letter of Understanding regarding certain royalty payments.

49.     On or about November 21, 2014 TRNC, Ford Gum and AIM entered into the Second Amendment to License Agreement (the "Second Amendment"), which provides that BLCP shall be added as a Licensor to the License Agreement.

50.     On or about September 13, 2016, TRNC, Ford Gum and AIM entered into a Letter of Understanding First Modification regarding certain royalty payments.

51.     On or about October 28, 2019, TRNC, BLCP, AIM and Ford Gum entered into the Third Amendment to License Agreement (the "Third Amendment"). The Term of the original License Agreement was for 15 years and expired in 2025. The Third Amendment extended the Term an additional twenty years, through December 31, 2045. The Third Amendment also includes an option for Ford Gum to renew the License Agreement for two (2) consecutive additional 25 year renewal terms. If both renewal options are executed, the License Agreement will extend through December 31, 2097, 71 years from now. The Third Amendment also made certain changes to the Royalties payment section and Minimum Gross Sales provisions.

52.     On or about October 28, 2019, TRNC, BLCP, AIM and Ford Gum entered into a Letter of Understanding, Second Modification, that modifies the License Agreement by establishing royalty percentages on certain new products.

53.     On or about December 2, 20219, BLCP, AIM and Ford Gum entered into a Letter of Understanding Shared Marketing Expenses.

54.     On or about July 14, 2021, BLCP, AIM and Ford Gum entered into a Letter of Agreement for Ford Gum to present new products using certain trademark, which the parties extended in a Letter of Agreement Amendment dated January 1, 2022.

55.     The License Agreement was never amended to include any Shredded Gum Trade Dress. None of the Agreements between the Parties prior to March 2024 addressed the Shredded Gum Trade Dress.

**E. Counter Defendants Never Filed any Application for the Shredded Gum Trade Dress**

56.     Counter-Defendants have applied to register, and/or own registrations for, a number of trademarks.

57.     Counter-Defendants never applied to register the Shredded Gum Trade Dress, and do not own any registrations for it.

**F.  Counter-Defendants' Failure to Claim Ownership of The Shredded Gum Trade Dress in the Parties' Agreements or at the USPTO Was Deliberate**

58.     Ford Gum is informed and believes, and on that basis alleges, that Counter-Defendants' failure to claim ownership anywhere in the License Agreement of the Shredded Gum Trade Dress was not an oversight, but rather, resulted from a decision made by one or more Counter-Defendants after consultation with legal counsel.

59.     Ford Gum is informed and believes, and on that basis alleges, that Counter-Defendants' failure to file any application to register any Shredded Gum Trade Dress was not an oversight, but rather, resulted from a decision made by one or more Cross-Defendants after consultation with legal counsel.

**G.  Trademark Ownership Issues**

60.     Ford Gum is informed and believes, and on that basis alleges, that although TRNC is a Plaintiff in this action, TRNC no longer owns, in whole or in part, the Trademarks, the Trade Dress, and/or the Copyrights identified and defined in the License Agreement.

61.     Ford Gum is informed and believes, and on that basis alleges, that BLCP is the sole owner of record at the United States Patent and Trademark Office of the Trademarks in Schedule l(a) of the License Agreement.

62.     On May 15, 2024, BLCP filed an Amended Annual Report with the Oregon Corporation Division that states that BLCP's purpose is to "hold royalties on trademarks and promote trademarks."

63. Ford Gum is informed and believes, and on that basis alleges, that on or about October 22, 2019, BLCP assigned a security interest in one, more, or all of the Trademarks in Schedule l(a) of the License Agreement to Sarah Clotfelter, 2943 NE 18th Avenue, Portland, OR 97212.

64. Ford Gum is informed and believes, and on that basis alleges, that although AIM is a party to the License Agreement, AIM does not own, in whole or in part, the Trademarks, the Trade Dress, and/or the Copyrights identified and defined in the License Agreement.

**H. Ford Gum Produces and Owns the Product in the United States Using Ford Gum's Own Formula**

65. Ford Gum has manufactured shredded gum in the United States since on or about July 16, 2010.

66. Prior to Ford Gum manufacturing the shredded gum product, the product was made in Mexico. Ford Gum moved production from Mexico back to the United States.

67. Ford Gum did not receive any formulas for the shredded gum product. It worked to develop its own formula starting in 2010.

68. Since 2010, Ford Gum has undertaken more than three dozen revisions to the formula for the "original" product flavor alone. Counter-Defendants have not been involved with the changes to the formula.

**I. The Product Packaging Reflects that Ford Gum Owns the Product; BLCP Owns the "BIG LEAGUE CHEW" Wordmark**

69. The packaging for the product sold by Ford Gum under license with Counter-Defendants states: "FORD GUM & MACHINE COMPANY, AKRON, NY 14001" and "Trademarks Used Under License From BIG LEAGUE CHEW PROPERTIES, LLC." Below is an image of that portion of the product packaging:



70. The words "FORD GUM & MACHINE COMPANY, AKRON, NY 14001" on the product packaging indicates that the shredded gum product is made, owned, and sold by Ford Gum.

71. The words "Trademarks Used Under License From BIG LEAGUE CHEW PROPERTIES, LLC" on the product packaging indicates that the words "BIG LEAGUE CHEW" is a trademark owned by BLCP.

**J.  The First Shredded Gum Trade Dress Infringement Led to the March 2024 Agreement**

72. On or about February 21, 2024, Ford Gum learned that a third party intended to infringe the Shredded Gum Trade Dress by making, advertising, and selling a competing brand

of shredded gum (the "First Shredded Gum Trade Dress Infringement"). Ford Gum immediately

informed Counter-Defendants of the First Shredded Gum Trade Dress Infringement and the

threat it posed to the business. This information was communicated in an email that Ford Gum's

Director, Robert Spigner, sent to Counter-Defendants' principal, Ron Nelson, on February 21,

2024.

73.     Mr. Nelson is the principal of Counter-Defendants and makes decisions on behalf

of Counter-Defendants.

74.     In Mr. Spigner's February 21, 2024 email, Ford Gum urged Counter-Defendants

to develop a plan to protect and enforce the Shredded Gum Trade Dress on an urgent basis. In

that same email, Ford Gum shared its perspective with Counter-Defendants that a Shredded Gum

Trade Dress strategy would require "legal guidance and investment."

75.     Mr. Nelson responded in an email that same day, declining to invest the resources

necessary to register, protect, and enforce the Shredded Gum Trade Dress. In that email,

Counter-Defendants rejected Ford Gum's time-sensitive request to develop a strategy to stop the

impending infringement. Instead, Counter-Defendants expressed an unperturbed attitude about

it. Mr. Nelson went so far as to state in his February 21, 2024 email Counter-Defendants' belief

that "maybe this new competition is going to help us." Mr. Nelson recklessly stated in that

email, "Let's have at it v. the wannabees"!

76.     Ford Gum strongly disagreed with Counter-Defendants' lackadaisical attitude and

plan of inaction. Ford Gum did not believe that the competition would be "helpful" in any way.

Ford Gum did not want to "have at it" with anyone intending to infringe the Shredded Gum

Trade Dress rights. Ford Gum had invested significant resources to improve the product and the

BIG LEAGUE CHEW branding since May of 2022, as stated in greater detail below, and did not

want to jeopardize that investment. Ford Gum was working hard to position the success of the

product under the BIG LEAGUE CHEW brand for the next 71 years, and beyond.  In contrast to Counter-Defendants' apathy, Ford Gum believed the threatened infringement was a serious issue that should be addressed and stopped.

77.     Since Counter-Defendants were unwilling to protect the Shredded Gum Trade Dress, Ford Gum developed a plan to undertake that effort by itself, at Ford Gum's own expense.  On March 26, 2024, Ford Gum approached Counter-Defendants with Ford Gum's plan to stop the impending trade dress infringement.  On that date, Scott Lerner, Ford Gum's Chief Executive Officer and President, sent an email to Counter-Defendants stating, "***Ford Gum*** would like to file for a trade dress on the product form of 'shredded gum'.  Once we d[o] this we would like to send a cease-and-desist letter to [the infringer]. I am seeking your approval for us to take this action ***on behalf of Ford Gum***."  (Emphasis added.)

78.     Ford Gum did not offer to act on behalf of any Counter-Defendant in the March 26, 2024 email.  Rather, Ford Gum offered only to act on behalf of itself.

79.     Rob Nelson, Counter-Defendants' principal, responded in writing on March 26, 2024 stating, "***excellent idea.  I approve***."

80.     Counter-Defendants' acceptance of Ford Gum's proposal on March 24, 2024 resulted in an agreement for Ford Gum to own, file for, enforce, and pay for the Shredded Gum Trade Dress, at Ford Gum's expense (the "March 2024 Agreement.")

81.     Ford Gum performed the March 2024 Agreement when its attorney: (a) prepared and filed the trade dress application for the Shredded Gum Trade Dress and a supporting Declaration of Scott Lerner with the United States Patent and Trademark Office on April 1, 2024 (the "Application"), and (b) prepared and sent a desist letter on April 2, 2024; and (c) undertook additional action to achieve successful compliance with the cease and desist letter.

82.     Neither of the Counter-Defendants have ever followed up with Ford Gum to inquire about the status of the First Shredded Gum Trade Dress Infringement.

**K. The Second Shredded Gum Trade Dress Infringement**

83.     On July 31, 2024, Counter-Defendants alerted Ford Gum to a second infringement of the Shredded Gum Trade Dress (the "Second Shredded Gum Trade Dress Infringement").  On that date, Counter-Defendants transmitted photographs of the second infringing product to Ford Gum pursuant to, and consistent with, the March 2024 Agreement so that so that Ford Gum would further perform the March 2024 Agreement and undertake enforcement efforts at Ford Gum's own expense.

84.     Very soon after receiving Counter-Defendants' notice of the Second Shredded Gum Trade Dress Infringement, Ford Gum informed Counter-Defendants in writing that Ford Gum would send a cease and desist letter, in furtherance of the March 26, 2024 Agreement.

85.     Counsel for Ford Gum further performed the March 24, 2024 Agreement by sending the cease and desist letter on August 1, 2024.

86.     Since then, Ford Gum and it counsel have undertaken additional enforcement efforts with regard to the Second Shredded Gum Trade Dress Infringement, all in Ford Gum's own name, all at Ford Gum's own expense, in further performance of the March 24, 2024 Agreement.

87.     Neither of the Counter-Defendants have ever followed up with Ford Gum to inquire about the status of the Second Shredded Gum Trade Dress Infringement.

88.     Ford Gum was interested in discussing the status of the Second Shredded Gum Trade Dress Infringement with Counter-Defendants and their attorneys pursuant to a Common Interest Agreement.  Ford Gum requested a videoconference on October 16, 2024 to take place

the week of November 11, 2024, but Counter-Defendants have refused to schedule any meeting, videoconference or phone call.

**L. Counter-Defendants Affirmed the March 2024 Agreement on September 13, 2024**

89.     On or about September 11, 2024, Mr. Nelson contacted Mr. Lerner by phone and vented about the Shredded Gum Trade Dress Application.

90.     During that conversation, it was clear that Mr. Nelson had forgotten about the First and Second Trade Dress Infringements, his unwillingness to enforce the Shredded Gum Trade Dress against those two infringers, and the resulting March 2024 Agreement for Ford Gum to own, apply for, enforce, and pay for the Shredded Gum Trade Dress.

91.     On or about September 13, 2024, Mr. Nelson sent a text message to Mr. Lerner, stating:

> "My legal team from the very beginning thought that 'shredded gum in a stay-fresh pouch' was a bit like a burger inside two buns, and so unlikely patent-able.  Does Ford Gum Legal think otherwise?  If they do think so, do you want me to apply for a patent on that now classic combination?  I will gladly do that right away if you think it is worthwhile pursuing."

92.     That same day Mr. Lerner reminded Mr. Nelson of the March 2024 Agreement. Mr. Lerner texted Mr. Nelson back stating, "I'm not sure if you remember but we told you we would be applying for the trade dress of shredded gum.  The pouch is not protectable."

93.     Mr. Nelson texted back the same day, stating:

> "I do not remember that.  The trade dress to me was the look and the design of the pouch, not the contents.  I think the application for trade dress for shredded gum should be handled by my legal team and paid for by me, of course."

94.     Ford Gum had filed the Shredded Gum Trade Dress months earlier, and promptly after entering into the March 2024 Agreement for Ford Gum to do exactly that.

95.     Mr. Nelson further stated in a text message on September 13, 2024:

"I do not recall you and I having a discussion about this – or any emails between us about it.  I'm pretty sure that I would have asked you to let me handle this on my nickel [and I also would have wanted to run it by Bob Anderson before I signed off on the idea of Ford gum legal doing the work.]

96.     Mr. Nelson's recollection was wrong in many respects.  The Parties had communicated about the issues via email on February 21, 2024 and March 26, 2024 and via text on July 31, 2024.

97.     Contrary to the claim in his text message, Mr. Nelson had, in fact, refused to "handle this" on his "nickel."  When Mr. Spigner informed Mr. Nelson on February 21, 2024 that the Shredded Gum Trade Dress was registrable and enforceable, Mr. Nelson declined to enforce it.  For these reasons, the Parties entered into the March 2024 Agreement for Ford Gum to apply for, own, enforce, and pay for the Shredded Gum Trade Dress.

98.     Mr. Nelson had also told Ford Gum about the Second Shredded Gum Trade Dress Infringement so that Ford Gum to enforce it, pursuant to the March 2024 Agreement.

99.     Mr. Nelson's September 13, 2024 text message also stated, "If Ford Gum has already filed the application, we need to talk about this when you come to Portland.  You and I have to be on the same page on who owns the trade dress rights."

100.    Ford Gum had already filed the Shredded Gum Trade Dress Application, promptly after the parties entered into the March 2024 Agreement that Mr. Nelson apparently did not have in mind when he sent his text messages on September 13, 2024.

101.    That same day,  Mr. Lerner looked through his emails and found the March 26, 2024 emails that formed the basis of the March 2024 Agreement.  On that same date, September 13, 2024, Mr. Lerner forwarded that email string to Mr. Nelson at rob@culls.com, stating, "Please see below for the basis of why I told you that you approved us moving forward with the shredded gum trade dress. Thanks."

102.    Mr. Lerner texted Mr. Nelson that same day, asking Mr. Nelson to check his email so that Mr. Nelson could see "where you gave us permission to move forward with the trademark work."

103.    Ford Gum is informed and believes, and on that basis alleges, that Mr. Nelson did as Mr. Lerner asked.  He checked his emails, and saw that Mr. Lerner had forwarded to him the March 26, 2024 email exchange that created the March 2024 Agreement.  These messages refreshed Mr. Nelson's recollection.

104.    On September 13, 2024, Mr. Nelson texted Mr. Lerner back to confirm the March 2024 Agreement, informing Mr. Lerner:

*"I'm good with it*.  I did not remember the idea, but *it is a good one*.  I am willing to contribute to the expense that was required to acquire this protection.  *It was a smart move*.

….

*It does seem odd that Ford Gum will own the trade dress protection* and not I, *but* since it is likely you guys will eventually own all the Big League Chew trademarks anyway, *the idea does make sense*.  (emphases added).

….

The goal has been to hold onto my Big League Chew stuff until BLC's 50th

anniversary, but I am willing to listen to any new ideas Ford Gum has sooner than

that.

You guys have done a spectacular job reviving the brand. I am grateful for the

quantum leaps you have made. The product, the presentation, and the plant have

all been upgraded dramatically. I am over the moon about it all."

**M. Ford Gum Has Fully and Faithfully Performed the Agreements and Counter-Defendants Repeatedly Praised Ford Gum's Performance**

105. On May 27, 2022, Ford Gum was purchased by affiliates of the principals of

Chaver Capital Partners.

106. Chaver Capital Partners believed that the BIG LEAGUE CHEW brand of

shredded gum was outdated and would benefit from a refresh.

107. Over the last two and a half years, Ford Gum has recruited executives and

employees passionate about preserving and growing the BIG LEAGUE CHEW brand. These

employees have worked hard since May of 2022 to refresh many aspects of the BIG LEAGUE

CHEW product and branding. Ford Gum has made many such improvements over the last two

and a half years, including building out a strong management team, recruiting a strong brand

manager, improving the shredded gum product, improving the plant where it is manufactured,

renewing the focus on the BIG LEAGUE CHEW brand and reallocating resources to that brand,

revamping the Product Packaging Trade Dress, updating the www.bigleaguechew.com website,

refreshing the trade show booth and other marketing collateral for BIG LEAGUE CHEW, and

developing a new social media campaign for the brand, among other things.

108. Ford Gum's investment in the BIG LEAGUE CHEW brand has paid off. Ford

Gum has sold an increasing number of units of BIG LEAGUE CHEW branded product. This, in

turn, has resulted in increased royalty payments to Counter-Defendants.

109.    Counter-Defendants have praised Ford Gum's performance of the License Agreement.

110.    Counter-Defendants have stated that Ford Gum has done a better job with the BIG LEAGUE CHEW brand than Ford Gum did before it was acquired by Chaver Capital Partners.

111.    Since May of 2022, Counter-Defendants have praised Ford Gum's improvement of the product.

112.    Since May of 2022, Counter-Defendants have praised Ford Gum's improvement of the presentation.

113.    Since May of 2022, Counter-Defendants have praised Ford Gum's improvement of the plant.

114.    One of the new executives Ford Gum hired to refresh the BIG LEAGUE CHEW brand is Mr. Lerner, who became Ford Gum's Chief Executive Officer and President in October 2022.

115.    On February 13, 2023, Mr. Nelson praised Mr. Lerner for the booth Ford Gum designed for trade shows.  Mr. Nelson stated, "The booth screams BASEBALL!!  I love it.  The BLC logo looks awesome.  Thanks for this."

116.    One of the new employees Ford Gum hired to refresh the BIG LEAGUE CHEW brand is Tim Lawdan, Ford Gum's brand manager.  Mr. Lawdan began working at Ford Gum in February 2023.  Since then, he has worked hard to improve the branding of BIG LEAGUE CHEW.  This work has included improvements to the Product Packaging Trade Dress owned by Counter-Defendants.  Ford Gum has paid for this work.

117.    Mr. Nelson has repeatedly praised Mr. Lawdan for the work Mr. Lawdan and Ford Gum have done to improve the BIG LEAGUE CHEW brand.

118.    On May 25, 2023, Mr. Nelson sent Mr. Lawdan a text stating "I'm impressed with the new 'Big League Crew.'  You guys are good.  The booth at the show was the best its [sic] ever been"

119.    On June 2, 2023, Mr. Lawdan sent an email to Mr. Nelson with images of new characters to include on the Product Packaging Trade Dress.  Mr. Nelson wrote back, "these five images are spectacular, truly Big League in every way.  Thank you for the collaboration.  It's been fun and real productive.  Much appreciated.  I approve."

120.    The work to refresh the Product Packaging Trade Dress included changes to both the front and back of the packaging.  There is a "back pouch story" that highlights Mr. Nelson's development of the product, which Mr. Lawdan worked on revising.  On June 7, 2023, Mr. Nelson sent Mr. Lawdan a text stating "Thanks for the collaboration on the back pouch story, Tim.  Lotta good give+take.  Can't wait to see it in final form.  I appreciate this process so much."  After the back pouch story was completed, Mr. Lawdan sent it to Mr. Nelson.  Mr. Nelson sent Mr. Lawdan a text message stating that he "loved" it and that "It's the all-time best Big League Chew story ever."

121.    Mr. Nelson sent Mr. Lawdan a text on June 22, 2023 stating, "Your team is terrific."

122.    On June 27, 2023, Mr. Lawdan sent an email to Mr. Nelson attaching updated pouch graphics for the Product Packaging Trade Dress.  On June 28, 2023, Mr. Nelson replied that that email stating, "Love all of these!  Great effort all around.  Much appreciated."

123.    On September 8, 2023, Mr. Lawdan sent an email to Mr. Nelson with Christmas characters for the Product Packaging Trade Dress.  Mr. Nelson wrote back the same day stating, "These are great, Tim.  I approve."

124.    On November 21, 2023, Mr. Lawdan received a text message from Mr. Nelson stating, "Great job, Tim.  I'm very grateful this Thanksgiving.  Big League Chew is in great hands."

125.    On November 29, 2023, Mr. Lawdan received a text message from Mr. Nelson stating, "I must say: the new improved mascots are truly fantastic!  These players are hungrier, cooler, and, of course, grubbier than ever before.  Makes a Portland Maverick proud.  Thanks for this…."  These new and improved mascots are part of the Product Packaging Trade Dress.

126.    At the beginning of 2024 Ford Gum made certain changes with regard to social media for the BIG LEAGUE CHEW brand that paid off in growth and engagement.  On July 18, 2024, Mr. Lawdan sent Mr. Nelson an email with an update on the improved performance Ford Gum was seeing on social media for Big League Chew.  Mr. Nelson responded, "Thanks for all this, Tim. Lotta good stuff here. You and your 'Big League Crew' are doing a spectacular job protecting and expanding our gospel of gum. Big League Chew is an iconic and beloved brand. I greatly appreciate how you guys are ever mindful of the unique status our 'the bubblegum invented in a bullpen' has. Thank you for being the guardians of the gum. I am grateful."

127.    Mr. Nelson has posted positive messages about Ford Gum on LinkedIn.

128.    In or about November 2023, Mr. Nelson posted on LinkedIn "Great partnership for the game and the gum,"  referring to the business relationship between Ford Gum and Plaintiff BLCP.

129.    In or about January of 2024, after Ford Gum hired David Forchione as Vice President of Sales, Mr. Nelson posted, "Welcome to the 'Big League Crew,' Dave.  We lead the league in fun and focus."

130.    In or about February 2024, after Ford Gum added a peppermint flavor to the shredded gum product offerings, Mr. Nelson posted, "The new peppermint edition to the Big League Chew roster is one of the all-time great call-up's [sic] in baseball + bubblegum history."

131.    In or about March 2024, Mr. Nelson posted, "I am grateful to the team at Ford Gum for their continued focus on spreading our gospel of gum."  He also stated in that same post, "Thank you Ford Gum."

132.    In or about April 2024, referring to Ford Gum, Mr. Nelson posted, "Thank you gentlemen, for helping us spread our gospel of gum.  Ford Gum is proud to carry on the forty-five year old tradition of bubblegum bliss."

133.    In or about August 2024, Mr. Nelson referred to Ford Gum as his "friends."

134.    On or about September 13, 2024, Mr. Nelson sent a text message to Mr. Lerner stating, "I am grateful for the quantum leaps you have made.  The product, the presentation, and the plant have all been upgraded dramatically.  I am over the moon about it all."

135.    In or about October 2024, Mr. Nelson praised the trade show booth Ford Gum designed that features the BIG LEAGUE CHEW trademark, stating "Terrific looking booth."

136.    Ford Gum is benefitting Counter-Defendants not only by paying a royalty, but also by doing work to support the BIG LEAGUE CHEW brand that Counter-Defendants have not done, at Ford Gum's own expense.  Trademark licensors would typically perform this work at their own expense.

137.    At no time between May 27, 2022 and October 7, 2024 did Counter-Defendants communicate to Ford Gum any dissatisfaction with Ford Gum's performance of the License Agreement.

138.    Other than this dispute over ownership of the Shredded Gum Trade Dress, Counter-Defendants never communicated to Ford Gum any dissatisfaction with Ford Gum.

139.     At no time between May 27, 2022 and October 7, 2024 did Counter-Defendants inform Ford Gum that Ford Gum was in breach of the License Agreement.

140.     Ford Gum has at all times fully and faithfully performed the License Agreement and the amendments thereto.

141.     Ford Gum has paid Counter-Defendants royalty payments on every unit of shredded gum product Ford Gum sells as required by the License Agreement.

142.     At no time between May 27, 2022 and November 17, 2024 did Counter-Defendants communicate to Ford Gum any dissatisfaction with Ford Gum's performance of the Equipment Purchase Agreement.

143.     At no time between May 27, 2022 and November 17, 2024 did Counter-Defendants inform Ford Gum that Ford Gum was in breach of the Equipment Purchase Agreement.

144.     Ford Gum has at all times fully and faithfully performed the Equipment Purchase Agreement.

**N.  Counter-Defendants Have Made False Statement In an Attempt to Repudiate The March 2024 Agreement After Benefiting From It**

145.     Despite the fact that Counter-Defendants entered into, affirmed, and benefited from the March 2024 Agreement, on October 8, 2024, Counter-Defendants' attorney sent a letter complaining about Ford Gum's application to register the Shredded Gum Trade Dress and the Declaration of Scott Lerner that Ford Gum filed in support of that application.  The letter demanded that Ford Gum abandon the Shredded Gum Trade Dress Application.

146.     The October 8, 2024 letter states that the Declaration Ford Gum filed in support of the Shredded Gum Trade Dress Application (the "Declaration") contained false statements.

147.     The Shredded Gum Trade Dress Application claimed a first use date of 1979. This is consistent with the March 2024 Agreement.

148.    The Declaration explained that "Ford Gum and its predecessor-in-interest is the <u>first</u> company to offer and sell chewing gum (including bubble gum) in a shredded shape."  The October 8, 2024 letter claims that this statement is false, but it is a true fact.

149.    Miriam-Webster Dictionary defines "predecessor in interest" as "person who previously held the rights or interests currently held by another : a party with whom another is in privity."[1]

150.    Counter-Defendants are a predecessor in interest with regard to the Shredded Gum Trade Dress for two reasons.  First, Counter-Defendants held the Shredded Gum Trade Dress rights before Ford Gum owned them.  Second, Ford Gum and Counter-Defendants are in privity with regard to the Shredded Gum Trade Dress as a result of the March 2026 Agreement.

151.    The October 8, 2024 letter omitted key facts, making no mention of the First Shredded Gum Trade Dress Infringement, the Second Shredded Gum Trade Dress Infringement, and/or the March 2024 Agreement.

152.    Ford Gum is informed and believes, and on that basis alleges, that before the October 8, 2024 letter was sent, Mr. Nelson failed to provide the emails dated February 21, 2024 between him and Mr. Spigner to the attorney who sent the letter.

153.    Ford Gum is informed and believes, and on that basis alleges, that before the October 8, 2024 letter was sent, Mr. Nelson failed to provide the emails dated March 26, 2024 between him and Mr. Lerner to the attorney who sent the letter.

154.    Ford Gum is informed and believes, and on that basis alleges, that before the October 8, 2024 letter was sent, Mr. Nelson failed to provide the email that Mr. Lerner sent him on September 13, 2024 to the attorney who sent the October 8, 2024 letter.

---

[1] https://www.merriam-webster.com/legal/predecessor%20in%20interest#:~:text=pre%C2%B7%E2%80%8Bde%C2%B7%E2%80%8Bces,whom%20another%20is%20in%20privity

155.    Ford Gum is informed and believes, and on that basis alleges, that before the October 8, 2024 letter was sent, Mr. Nelson failed to provide the text messages dated September 13, 2024 between him and Mr. Lerner to the attorney who sent the October 8, 2024 letter.

156.    The October 8, 2024 letter demanded a response by October 18, 2024.

157.    Ford Gum's attorney responded in writing on October 16, 2024, two days before the deadline.  That response provided certain facts that were omitted in Counter-Defendants' attorney's letter dated October 8, 2024, and was not intended to be a complete statement of all of the facts involved in the matter.

158.    In the October 16, 2024 letter, Ford Gum expressed that it values its relationship with Big League Chew Properties, LLC and its principal, Mr. Nelson, and that Ford Gum "believes the parties should be working together to build on their success, without escalating disputes that should not exist and that will only inure to the benefit of infringers."

159.    Ford Gum believed it would be in the mutual best interest of Ford Gum and Counter-Defendants, (collectively the "Parties") to discuss the matter face to face, particularly in view of ongoing infringement of the Shredded Gum Trade Dress, which Ford Gum was in the process of handling pursuant to the March 26, 2024 Agreement.

160.    Therefore, in the October 16, 2024 letter, Ford Gum's attorney requested an all hands videoconference "for the principals and their respective counsel during the second week of November to discuss how to protect our clients' respective rights and further their successful business relationship."  The letter suggested that this meeting take place the week of November 11, 2024.

161.    Such a meeting would have allowed counsel for the Parties to discuss the Shredded Gum Trade Dress Infringement matters pursuant to a Common Interest Agreement for the mutual protection of all Parties.

162.    However, Counter-Defendants have ignored Ford Gum's request for a meeting and have refused to meet.  Rather than meeting with Ford Gum, they worked on the Complaint to be filed in this action.

163.    The Complaint on file in this action states, at paragraph 117: "Ford Gum's argument that it was authorized [to file the Shredded Gum Trade Dress Application] is based entirely on its intentional misreading of a March 24, 2024, email exchange between Rob Nelson and Scott Lerner."

164.    Mr. Nelson knew that the allegation in paragraph 117 was false at the time the Complaint was filed.

165.    Ford Gum is informed and believes, and on that basis alleges, that before the Complaint was filed, Mr. Nelson failed to provide the email that Mr. Lerner sent him on September 13, 2024 to any of the attorneys who prepared and filed the Complaint.

166.    Ford Gum is informed and believes, and on that basis alleges, that before the Complaint was filed, Mr. Nelson failed to provide the text messages dated September 13, 2024 between him and Mr. Lerner to any of the attorneys who prepared and filed the Complaint.

167.    Counter -Defendants' false statements in paragraph 117 of the Complaint, repudiation of the March 2024 Agreement, and unwillingness to speak with Ford Gum about this matter before filing suit, are some of the reasons this is an "exceptional case" entitling Ford Gum to attorneys' fees and other appropriate relief.

**O.  Counter-Defendants Continue to Express Zero Interest in Enforcing the Shredded Gum Trade Dress**

168.    Trade dress rights should be enforced.

169.    Counter-Defendants have not enforced the Shredded Gum Trade Dress rights and are not interested in enforcing the Shredded Gum Trade Dress rights.

170.    At no time have Counter-Defendants ever asked Ford Gum about the status of Ford Gum's effort to stop either the First or the Second Shredded Gum Trade Dress Infringement.

171.    Counter-Defendants' utter and complete lack of interest in enforcing the Shredded Gum Trade Dress is the reason Ford Gum proposed the March 2024 Agreement for Ford Gum to own, register, enforce and pay for the Shredded Gum Trade Dress rights.

172.    Counter-Defendants' utter and complete lack of interest in enforcing the Shredded Gum Trade Dress is consistent with the terms of the March 2024 Agreement.

173.    It is unequitable for Counter-Defendants to have no interest in enforcing the Shredded Gum Trade Dress, while at the same time demanding to own it.

**P.  Counter-Defendants Have Failed To Enforce The Trademark Rights They Do Own**

174.    Ford Gum has reported a number of instances of infringement of the BIG LEAGUE CHEW word mark to Counter-Defendants.  In response, Counter-Defendants have stated that they will take action through their counsel. In fact, however, Ford Gum is informed and believes, and on that basis alleges, that Counter-Defendants have not enforced rights in the BIG LEAGUE CHEW trademark and infringement has continued.

175.    Rather than enforce the rights that Counter-Defendants may actually own, Counter-Defendants have chosen to renege on the March 2024 Agreement, without even asking about, let alone undertaking, activities to enforce the Shredded Gum Trade Dress.

**Q.  Counter-Defendants Seek to Replace Ford Gum**

176.    After filing this action, Counter-Defendants contacted the *New York Times* to obtain publicity for this lawsuit.

177.    The resulting article, which was published in the *New York Times*, states that Big League Chew's current contract with Ford Gum runs until 2045 and that "Big League Chew said

it is exploring contingency plans to ensure uninterrupted production and distribution of its products."

178.    Ford Gum has at all times faithfully performed the parties' License Agreement, Equipment Purchase Agreement, and March 2024 Agreement.

179.    Counter-Defendants have no reason to believe that Ford Gum will interrupt the production and distribution of the BIG LEAGUE CHEW branded products manufactured and sold by Ford Gum.

**COUNT I**
**(Declaratory Judgment)**
**(That Ford Gum Owns the Shredded Gum Trade Dress)**

180.    Ford Gum incorporates by reference paragraphs 1 through 179 above as though fully set forth herein.

181.    An actual, present, and justiciable controversy exists between Ford Gum and Counter-Defendants concerning the ownership of the Shredded Gum Trade Dress.

182.    Counter-Defendants' attorney sent Ford Gum's attorney a letter dated October 8, 2024, demanding "an immediate withdrawal and express abandonment of the [Shredded Gum Trade Dress] Application."

183.    Counter-Defendants' October 8, 2024 letter threatens that Counter-Defendants will take "the actions necessary and appropriate to protect and enforce their intellectual property rights including availing themselves of any available administrative, legal and equitable remedies."

184.    The demands and threats in the October 8, 2024 letter contradict the March 2024 Agreement.

185.    On November 18, 2024, Counter-Defendants filed this action alleging that Counter-Defendants own the Shredded Gum Trade Dress.

186.     This action contradicts the March 2024 Agreement.

187.     Ford Gum contends that it owns the Shredded Gum Trade Dress rights, for at least the following reasons:

a.     Ford Gum is the only user of the Shredded Gum Trade Dress because, at a minimum: (i) Ford Gum the only owner of the equipment in the United States that has the ability to make gum in a shredded shape; (ii) Ford Gum is the only company in the United States that makes gum in a shredded shape; and (iii) Ford Gum owns the shredded gum that it makes in its factory and sells that gum to customers.

b.     Since trade dress rights flow from use, Ford Gum has owned the Shredded Gum Trade Dress since its date of Ford Gum's first use in or about 2010.

c.     The License Agreement makes no mention of the Shredded Gum Trade Dress Rights and (i) does not include the Shredded Gum Trade Dress Rights in the definition of "Trademarks" set forth in the License Agreement; and (ii) does not include the Shredded Gum Trade Dress Rights in the definition of "Trade Dress " set forth in the License Agreement.

d.     Counter-Defendants never applied to register the Shredded Gum Trade Dress, evidencing that they did not believe they owned the Shredded Gum Trade Dress.

e.     Counter-Defendants agreed that Ford Gum would own, apply for, enforce, and pay for the Shredded Gum Trade Dress in the March 2024 Agreement.

f.     Counter-Defendants performed the March 2024 Agreement with regard to the First Shredded Gum Trade Dress Infringement.

g.      Counter-Defendants performed the March 2024 Agreement with regard to the Second Shredded Gum Trade Dress Infringement.

h.      Counter-Defendants confirmed the March 2024 Agreement on September 13, 2024.

i.      Due to their statements and actions, Counter-Defendants are estopped from owing the Shredded Gum Trade Dress.

j.      Due to their statements and actions, Counter-Defendants waived any claim to own the Shredded Gum Trade Dress.

k.      Counter-Defendants are barred from owing the Shredded Gum Trade Dress due to their unclean hands.

l.      It is unequitable for Counter-Defendants to claim ownership of Shredded Gum Trade Dress that they have refused to enforce.

m.      Counter-Defendants are barred by any and all other equitable doctrines from owning the Shredded Gum Trade Dress.

188.    Ford Gum has no adequate remedy at law and is likely to suffer irreparable harm.

189.    Accordingly, pursuant to the Declaratory Judgement Act and the Lanham Act, Ford Gum seeks a declaratory judgment that Ford Gum is the lawful owner of the Shredded Gum Trade Dress.

## <u>COUNT II</u>
### <u>(Declaratory Judgment)</u>
**(That Ford Gum Is Not Infringing any Intellectual Property or Contractual Rights of Counter-Defendants)**

190.    Ford Gum incorporates by reference paragraphs 1 through 179 above as though fully set forth herein.

191.    An actual, present, and justiciable controversy exists between Ford Gum and Counter-Defendants concerning whether Ford Gum is infringing any intellectual property or contractual rights of by Counter-Defendants.

192.    Counter-Defendants filed this action alleging that Ford Gum is manufacturing and selling shredded gum without the consent of Counter-Defendants in violation of the License Agreement, the Equipment Purchase Agreement, the Lanham Act, state common law, and Illinois state statute.

193.    Ford Gum is not manufacturing or selling any shredded gum without the consent of Counter-Defendants and/or in violation of the License Agreement, the Equipment Purchase Agreement, the Lanham Act, state common law, and/or Illinois state statute.

194.    Ford Gum has no adequate remedy at law and is likely to suffer irreparable harm.

195.    Accordingly, pursuant to the Declaratory Judgement Act, the Lanham Act, state common law and/or Illinois state statute, Ford Gum seeks a declaratory judgment that Ford Gum is not liable for infringing any claimed rights of Counter-Defendants.

**COUNT III**
**(Specific Performance)**
**(Of the March 2024 Agreement)**

196.    Ford Gum incorporates by reference paragraphs 1 through 179 above as though fully set forth herein.

197.    The March 2024 Agreement is valid contract.

198.    Ford Gum has performed the March 2024 Agreement, and is ready, willing, and able to perform any remaining or future obligations.

199.    Counter-Defendants are able to perform their obligations under the March 2024 Agreement.

200.    Ford Gum has no adequate remedy at law and is likely to suffer irreparable harm.

201.     Ford Gum is entitled to Specific Performance of the March 2024 Agreement, including but not limited to an order from this Court prohibiting Counter-Defendants from claiming ownership of the Shredded Gum Trade Dress and/or from interfering with Ford Gum's efforts to enforce the Shredded Gum Trade Dress.

### COUNT IV
### (Specific Performance)
### (Of the License Agreement)

202.     Ford Gum incorporates by reference paragraphs 1 through 179 above as though fully set forth herein.

203.     The License Agreement is valid contract.

204.     The License Agreement gives Ford Gum the exclusive right to manufacture product using the intellectual property identified and defined in the License Agreement, pursuant to its terms.

205.     Ford Gum has performed the License Agreement, and is ready, willing, and able to perform any remaining or future obligations.

206.     Counter-Defendants are able to perform their obligations under the License Agreement.

207.     Ford Gum has no adequate remedy at law and is likely to suffer irreparable harm.

208.     Ford Gum is entitled to Specific Performance of the License Agreement, including but not limited to an order from this Court prohibiting Counter-Defendants from contracting with another manufacturer to make products that Ford Gum has the exclusive right to manufacture under the License Agreement.

### PRAYER FOR RELIEF

Ford Gum respectfully requests that this Court enter judgment as follows:

209.    A declaration that Ford Gum is the lawful owner of the Shredded Gum Trade Dress and that Counter-Defendants have no ownership rights or claims to the Shredded Gum Trade Dress.

210.    A declaration that Ford Gum is not infringing any rights of Counter-Defendants.

211.    A declaration that Ford Gum is not in breach of the License Agreement or any amendments thereto.

212.    A declaration that Ford Gum is not in breach of the Equipment Purchase Agreement.

213.    A declaration that Ford Gum has the exclusive right to manufacture product using the intellectual property identified and defined in the License Agreement, pursuant to its terms, and that Plaintiffs/Counter-Defendants have no right to contract with a different manufacturer to make products Ford Gum has the right to manufacture.

214.    A declaration that the March 2024 Agreement is valid and enforceable and that Plaintiffs/Counter-Defendants have no right to claim ownership of the Shredded Gum Trade Dress or interfere with Ford Gum's enforcement efforts.

215.    A preliminary and permanent injunction prohibiting Counter-Defendants, and all those acting in concert with them, from claiming that Counter-Defendants own the Shredded Gum Trade Dress and/or from interfering with Ford Gum's efforts to enforce the Shredded Gum Trade Dress rights.

216.    A preliminary and permanent injunction to prohibiting Counter-Defendants, and all those acting in concert with them, from entering into a license agreement or other contract for a third party to manufacture products identified or contemplated in the License Agreement in connection with the intellectual property identified and defined in the License Agreement.

217.    Awarding Ford Gum attorneys' fees and costs as permitted by law.

218.   Granting such other and further relief as the Court deems just and proper.

## III.
## DEMAND FOR JURY TRIAL

Defendant demands trial by jury on all issues so triable.

Dated:  December 11, 2024          SHEPPARD MULLIN RICHTER & HAMPTON LLP


                                   By    _____
                                                */s/ Bradley C. Graveline*
                                            BRADLEY C. GRAVELINE

                                            Attorneys for Defendant
                                   FORD GUM & MACHINE COMPANY, INC.

BRADLEY C. GRAVELINE
Ill. Bar No. 6203817
321 North Clark Street, 32nd Floor
Chicago, IL  60654
Email: bgraveline@sheppardmullin.com
Telephone: (312) 499-6316

LAURA L. CHAPMAN (admitted *pro hac vice*)
Cal. Bar No. 167249
350 South Grand Avenue, 40th Floor
Los Angeles, CA 90071
Email: lchapman@sheppardmullin.com
Telephone: (213) 617-4125

SOFYA ASATRYAN (admitted *pro hac vice*)
Cal. Bar No. 327482
12275 El Camino Real, Suite 100
San Diego, CA 92130
Email: sasatryan@sheppardmullin.com
Telephone: (858) 720-8900

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on December 11, 2024, he caused a true and correct copy of the foregoing document to be filed electronically with the Clerk of the Court and served on all counsel of record.

/s/ *Bradley C. Graveline*