UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIG LEAGUE CHEW PROPERTIES, LLC and THE ROB NELSON COMPANY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>FORD GUM & MACHINE COMPANY, INC.,<br><br>Defendant. | No. 24-cv-11837<br><br>Judge Franklin U. Valderrama |

## ORDER

Shredded bubble gum lies at the heart of this case. Plaintiffs Big League Chew Properties, LLC and The Rob Nelson Company, Inc. (TRNC) (together Big League Chew) sued Defendant Ford Gum & Machine Company Inc. (Ford Gum) for intentionally infringing on Big League Chew's trade dress rights in the shredded gum configuration that is central to the Big League Chew® brand of gum. R. 132, Second Amended Compl. (SAC).[1] Ford Gum now moves to dismiss the SAC. R. 137. For the reasons stated in this Order, the Court denies the motion.

## Background

Rob Nelson founded Big League Chew and created Big League Chew's shredded bubble gum. SAC ¶¶ 20–21. Big League Chew owns the intellectual property associated with Big League Chew's shredded bubble gum. *Id.* ¶ 23. In 1981,

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

Big League Chew's predecessor entered into a trademark license agreement with Amurol Confections. *Id.* ¶ 49. After a series of amendments and transfers, Big League Chew eventually entered into the trademark license agreement (the License Agreement) with Ford Gum, which is the subject of the current litigation, on July 16, 2010. *Id.* ¶ 55. The License Agreement was later amended on March 30, 2012, November 21, 2014, and October 28, 2019. *Id.* Under the License Agreement, Big League Chew maintained exclusive ownership of the trademarks, trade dress, and goodwill associated with the Big League Chew trademarked products. *Id.* ¶ 56. Specifically, the License Agreement provided that Big League Chew owns "all right, title and interest in and to the Trademarks and the goodwill symbolized by the Trademarks," and it "shall be the sole and exclusive owner of all trademarks, copyrights, trade dress, artwork packaging design, logos, copy, literary text and advertising material of any sort which in any way utilizes, incorporates or is associated with the Trademarks including all such materials developed by or for Licensee." *Id.* ¶¶ 89–90. The License Agreement also prohibited Ford Gum from challenging Big League Chew's intellectual property rights in court. *Id.* ¶¶ 91–93.

In May of 2022, Ford Gum was purchased by Chaver Capital Partners and Greyrock Capital Group, which are private equity groups. *Id.* ¶ 76. Ford Gum began making offers to obtain ownership of Big League Chew's intellectual property. *Id.* ¶¶ 77, 79–80. Ford Gum, however, then began to represent itself as the owner of Big League Chew products, including in a trademark application (the Trademark Application) to the United States Patent and Trademark Office (USPTO) and an

action seeking to enforce Ford Gum's rights against a third-party infringer as the trade-dress owner (the California Action). *Id.* ¶¶ 85–86.

Ford Gum, Big League Chew alleges, falsely represented that Big League Chew and Rob Nelson had approved the Trademark Application. *Id.* ¶¶ 126–136. When Big League Chew confronted Ford Gum about the Trademark Application, Ford Gum claimed that it owned Big League Chew's shredded gum trade dress. *Id.* ¶¶ 146–162.

Big League Chew filed a motion to intervene in the California Action, which Ford Gum opposed, asserting that Big League Chew had no protectable interest in the shredded gum trade dress. *Id.* ¶¶ 87–88. Under the License Agreement, Ford Gum is obligated to indemnify Big League Chew against any costs, damages, or expenses incurred in the California Action, but Ford Gum refused to do so after receiving a demand letter from Big League Chew. *Id.* ¶¶ 95–97.

Big League Chew also alleges that over the years, Ford Gum has been breaching the License Agreement by giving away the licensed products as favors and promotional tie-ins to support its other products. *Id.* ¶ 123. Section 15 of the License Agreement provides that the "Licensee shall not use Licensed Products as favors, premiums, promotional tie-ins, give-aways or containers or for any other secondary use, such uses being reserved to TRNC." *Id.* ¶¶ 122–123.

Ford Gum also entered into an equipment purchase agreement (the Equipment Lease agreement) wherein Ford Gum leased from TRNC the equipment to make shredded bubble gum. *Id.* ¶ 168. The Equipment Lease Agreement also provided that

Big League Chew maintained exclusive ownership rights in the trademarks, trade dress, and licensed products. *Id.* ¶ 171. The Equipment License Agreement prohibited Ford Gum from selling or attempting to sell the equipment without the permission of Big League Chew, and from selling the shredded gum to anyone other than Big League Chew. *Id.* ¶¶ 172–173

Based on these facts, Big League Chew brings claims for trade dress infringement, unfair competition and false designation of origin, trademark dilution, deceptive trade practices, breach of contract, and declaratory judgment under the Lanham Act and state common law. Ford Gum's fully briefed motion to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) is before the Court.

## Legal Standards

A motion to dismiss under FED. R. CIV. P. 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**Analysis**

Ford Gum moves to dismiss the complaint arguing that (1) the Second Circuit's holding in *Jim Bouton Corp. v. Wm. Wrigley Jr. Co.*, 902 F.2d 1074 (2d Cir. 1990) precludes Big League Chew's claims under collateral estoppel; (2) Big League Chew fails to plead trade dress infringement; and (3) Big League Chew fails to plead breach of contract. *See generally* R. 138, Memo. Dismiss. The Court addresses each argument in turn.

**I. Collateral Estoppel**

The Court begins with Ford Gum's collateral estoppel argument. As a preliminary matter, Big League argues that because collateral estoppel is an affirmative defense, the Court generally may not consider it on a Rule 12(b)(6) motion. Resp. at 9. Ford Gum counters that the Court can take judicial notice of and therefore consider *Wrigley*. Reply at 5.

Collateral estoppel is an affirmative defense. Recall that Ford Gum's motion is brought under Rule 12(b)(6). Generally, a case barred by an affirmative defense is properly dismissed under Federal Rule 12(c) as judgment on the pleadings, not under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020). There is, however, a narrow exception to this rule: "if the affirmative defense is clear from the face of the complaint, the court may dismiss under 12(b)(6) instead." *Holmes v. Marion Cnty. Sheriff's Off.,* 141

F.4th 818, 822 (7th Cir. 2025). "The face of the complaint refers not just to its four corners but includes sources courts ordinarily consider when deciding a Rule 12(b)(6) motion, such as documents incorporated into the complaint by reference and public records of which the court may take judicial notice." *Id.* The Court agrees with Ford Gum that as a judicial opinion the Court can take judicial notice of *Wrigley*. With that preliminary issue out of the way, the Court turns to the motion.

Ford Gum argues that the Second Circuit's holding in *Jim Bouton Corp. v. Wm. Wrigley Jr. Co.*, 902 F.2d 1074 (2d Cir. 1990) collaterally estops Big League Chew from bringing the instant claims. Memo. Dismiss at 1.

"Under the doctrine of collateral estoppel, also known as issue preclusion, an issue cannot be litigated a second time between the same parties when it has already been determined by a valid and final judgment." *Patrick v. City of Chicago*, 81 F.4th 730, 735–36 (7th Cir. 2023). Generally, for collateral estoppel to apply, "four elements must be met: '(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action.'" *H-D Michigan, Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007). As collateral estoppel is an affirmative defense, the defendant bears the burden of showing that its application is clear on the face of the complaint. *Patrick*, 81 F.4th at 736.

Ford Gum argues that the Second Circuit held in *Wrigley* that Big League

Chew's predecessor did not own the shredded gum trade dress, and thus, Big League Chew is precluded from arguing that it owns it now. Memo. Dismiss at 1. Not so, counters Big League Chew, arguing that Ford Gum's description of *Wrigley* is incorrect, and that *Wrigley* had nothing to do with trade dress ownership. Resp. at 8. The Court agrees with Big League Chew. In *Wrigley*, the Second Circuit reversed the district court's finding that the parties had agreed to amend their licensing agreement, finding that based on the evidence, "there was no binding contract of amendment." *Jim Bouton Corp. v. Wm. Wrigley Jr. Co.*, 902 F.2d 1074, 1080 (2d Cir. 1990). Namely, the parties had not reached an agreement on the final terms of the amendment, and thus the earlier drafts of an amendment could not be binding. *Id.* Nowhere does the Second Circuit make a holding on the ownership of any intellectual property rights.

But Ford Gum doubles down, insisting that the amendment at issue in *Wrigley* was an amendment that gave Big League Chew's predecessor the right to exclude the licensee from making *other* brands of shredded gum. Reply at 4. According to Ford Gum, *Wrigley's* holding that the amendment was never binding precludes Big League Chew from arguing now that it has the "ability to prevent use by others" of its mark and trade dress. *Id.* While the Court acknowledges that Big League Chew's history of licensing may be relevant to Big League Chew's common law trademark rights, whether Big League Chew's previous licensees did or did not manufacture other brands of shredded gum—and how this affects its current claims—is a factual determination the Court cannot make at this stage. For purposes of this motion, the

bottom line is that Second Circuit did not make any holding about Big League Chew's ownership of its trademarks and trade dress rights. Rather, it only addressed whether there was a meeting of the minds with respect to an amendment to a licensing agreement. Consequently, the issues are not the same—much less actually litigated and essential the final judgment—and collateral estoppel does not bar Big League Chew's claims. The other case to which Ford Gum points also does not hold that Big League Chew has "no product configuration trade dress rights," as Ford Gum asserts it does. Memo. Dismiss at 2 (citing *U.S. Licensing Assocs., Inc. v. Rob Nelson Co.*, 2011 WL 5910216 (S.D.N.Y. Nov. 28, 2011)).

For this same reason, the Court rejects Ford Gum's argument that Big League Chew cannot allege that it licensed the right to manufacture and distribute its shredded gum because the "Second Circuit held that Plaintiff's predecessor in interest, JBC, did not license the Shredded Gum Trade dress." *Id.* The Second Circuit did not hold that JBC did not license the Shredded Gum Trade Dress. It held that the amendment to the License Agreement was not binding. Accordingly, the Court denies the motion to dismiss on the basis of collateral estoppel.

## II. Declaratory Judgment of Trade Dress

Ford Gum next argues that Big League Chew fails to state a claim for declaratory judgment that it owns the shredded gum trade dress. First, Ford Gum contends that this claim should dismissed because Big League Chew only alleges that its predecessor "invented" the shredded gum product. Memo. Dismiss at 8. This allegation, from Ford Gum's perspective is insufficient to establish trademark

ownership, because trademark ownership relies on "use." *Id.* This argument is a non-starter, because Ford Gum immediately goes on to acknowledge that Big League Chew does in fact plead that it has continually used the shredded gum trade dress. *Id.*

Still, Ford Gum argues that the allegations of Big League Chew's "use" of the shredded gum trade dress are also insufficient because the mark must be used *in commerce*. According to Ford Gum, "Plaintiffs admit in their SAC that they never made or sold any shredded gum in commerce." *Id.* at 9. Ford Gum points to paragraphs 55 and 65 of the SAC in support. Each of these allegations, however, simply states that Big League Chew and its predecessor licensed its intellectual property rights. SAC ¶¶ 55, 65. As stated in previous orders in this case, "[a]n individual or entity 'need not use the trademark through its own use to satisfy the "use in commerce" requirement.' *Slep-Tone Ent. Corp. v. Kalamata, Inc.*, 75 F.Supp.3d 898, 904 (N.D. Ill. 2014). Rather, 'the law is clear that the "use in commerce" requirement may be satisfied through use of the trademark by controlled licensees[.]' *Id.* at 905." R. 69, Report and Recommendation at 9, *adopted in* R. 121, Order. Accordingly, the Court rejects Ford Gum's argument that Big League Chew has never used its mark in commerce simply because it alleged that it licensed its rights.

Ford Gum continues, insisting that the claim still fails because Big League Chew has in fact never licensed its trade dress rights. Memo. Dismiss at 9. First, Ford Gum again relies on *Wrigley*, but for the reasons stated above, the Court rejects that

argument. Ford Gum next maintains that the Court itself "has previously rejected, three times, Plaintiffs' claim to have licensed the Shredded Gum Trade Dress to Ford Gum," and that the "Court has ruled three times previously that the License Agreement does not license any Shredded Gum Trade Dress rights." Memo. Dismiss at 10–11. In support of this contention, Ford Gum cites to the Court's order granting in part and denying in part Ford Gum's motion for judgment on the pleadings, R. 124, the Magistrate Judge's report and recommendation that the District Court deny Big League Chew's motion for a preliminary injunction, R. 69, and the Court's order adopting the report and recommendation in part, R. 121. Big League Chew responds that Ford Gum misconstrues the Court's previous rulings. For the reasons below, the Court agrees with Big League Chew.

By way of background, Big League Chew previously moved for a preliminary injunction on its original complaint. The Magistrate Judge recommended the motion be denied in a report and recommendation, R. 69, which the Court adopted in large part, R. 121. The Magistrate Judge recommended that the preliminary injunction be denied primarily because a claim under the Lanham act requires "unauthorized use in commerce," and Big League Chew had provided no support for the idea that filing an application to register trade dress constituted "use in commerce," and on a motion for a preliminary injunction, the burden would have been on Big League Chew to show support for this proposition. R. 69 at 19. The Magistrate Judge also found that, contrary to Big League Chew's assertion, the evidence showed that Ford Gum's website did not hold itself out to be the owner of Big League Chew's trademarks, but

rather referenced Big League Chew in accordance with its rights under the License Agreement. *Id.* at 21. Again, the procedural posture on a motion for a preliminary injunction is different, as the Court can consider and weigh evidence. *Darryl H. v. Coler*, 801 F.2d 893, 898 (7th Cir. 1986).

The Magistrate Judge also found that Big League Chew had not shown that Ford Gum breached the License Agreement by filing an application with the USPTO. *Id.* at 26. Specifically, the Magistrate Judge found that the term which Big League Chew pointed to in support of its claim for breach were limited to products used with the term "Big League," not just the concept of shredded gum. *Id.* at 24. This was true even though the definition "Licensed Products" in the License Agreement included the more general concept of shredded gum. *Id.* The Court agreed and denied the motion for a preliminary injunction. R. 121. In doing so, however, the Court overruled Ford Gum's objection in which it argued that Big League Chew did not license its shredded gum trade dress rights, because, the Court noted, "the License Agreement's definition of 'Licensed Products' includes the shredded gum configuration." Order at 12. The Court found that this was not inconsistent with the finding that the application to the USPTO did not breach Section 9(b) of the License Agreement. *Id.* at 13.

The Court later granted Ford Gum's motion for judgment on the pleadings in part, finding "that Defendant's alleged breach of the License Agreement by submitting its USPTO Application, as well as its claimed ownership of the Shredded Gum Trade Dress based on that Application, fail, as such an act does not violate any

section of the License Agreement." R. 123 at 2. The Court continued: "However, as also explained in the PI Order, the Court finds that Plaintiffs have adequately alleged that they have a common law trademark/trade dress ownership in the shredded gum configuration. . . . Therefore, when viewing the allegations of the Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs may proceed on their claims for alleged breaches of the License Agreement that are not premised on Defendant's act of filing the application in the USPTO for registration of the shredded gum configuration in Defendant's name and holding itself out as the owner in that application." *Id.* The Court also denied the motion for judgment on the pleadings to the extent Ford Gum argued that Big League Chew had not pled infringement based on the USPTO application, due to the differing standards between a motion for judgment on the pleadings and a motion for a preliminary injunction. *Id.* While it was Big League Chew's burden to prove that the application constituted trademark infringement at the preliminary injunction stage, it was Ford Gum's burden to establish that Big League Chew could not state a claim for trademark infringement on a motion for judgment on the pleadings, and it did not meet its burden. *Id.*

In short, the Court has *not* found three times that the "License Agreement does not license any Shredded Gum Trade Dress rights." *Id.* at 11. Further, findings on a motion for a preliminary injunction are just that: preliminary. They "do not bind the district court as the case progresses." *Mich. v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011). Accordingly, the Court denies Ford Gum's motion to dismiss on this basis. For the same reason, the Court rejects the argument that Big League

Chew could never have received the trade dress rights from its predecessor because its predecessors did not "use" or license the trademark or trade dress. *See* Memo. Dismiss at 10.

Finally, with respect to Ford Gum's argument that "Ford Gum has owned the Shredded Gum Trade Dress rights through Ford Gum's own use starting in 2010," the Court notes that at this stage, it must take the allegations as true and draw all reasonable inferences in the light most favorable to Big League Chew. Whether other companies besides Big League Chew have also produced shredded gum or have ownership claims may become relevant at later stages, but the Court here is limited to the pleadings. Accordingly, the Court rejects this argument as well. Further, Ford Gum argues in its reply that the original 1981 license agreement "shows that JBC did not license the Shredded Gum Trade Dress." Reply at 4. But this appears to be a reiteration of the argument of the *Wrigley* case, and as discussed before, the Court finds that this involves questions of fact that are inappropriate for this stage.

**III. Trade Dress Infringement**

Ford Gum next argues that Big League Chew's claims for trade dress infringement fail to state a claim, because Big League Chew (1) never used the mark in commerce, and (2) did not plead an "unauthorized use" of the trademark. *See* Memo. Dismiss at 11. As for the first argument, Ford Gum relies on its same arguments about "use" that the Court previously addressed. The Court denies this argument for the same reasons as before.

Second, as for the "unauthorized" use of a trademark, Ford Gum maintains

that Big League Chew cannot allege that it licensed the use of the trademark while simultaneously bringing a claim for infringement of that trademark. Memo. Dismiss at 13. But as Ford Gum acknowledges in its own motion, use can be "unauthorized" where it exceeds the scope of a license agreement. *See* Memo. Dismiss at 12 (citing *Paysys Int'l, Inc. v. Atos SE, Worldline SA, Atos IT Servs. Ltd.*, 226 F. Supp. 3d 206, 223 (S.D.N.Y. 2016) ("[S]uch claims may be brought when the licensee's infringing conduct exceeds the scope of the license, or when the licensee violates a condition precedent to obtaining the license.")). And although Ford Gum argues that in some cases where the scope of a license is exceptionally broad, courts will find that a claim sounds in breach of contract rather than infringement, the cases Ford Gum cites were decided at the motion for summary judgment stage, where the Court could look at the facts and interpret the License Agreement. *See Gentieu v. Tony Stone Images/Chicago, Inc.*, 255 F. Supp. 2d 838 (N.D. Ill. 2003); *PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*, 226 F. Supp. 3d 206 (S.D.N.Y. 2016); *A&L Indus., LLC v. Weaver Enters., Ltd.*, 2021 WL 3856745 (W.D. Wis. Aug. 30, 2021). Here, the Court is not prepared to decide whether the alleged facts will ultimately limit Big League Chew to a breach of contract claim. To the extent Big League Chew argues that there was unauthorized use of the trade dress and trademarks within the meaning of the Lanham Act, Big League Chew will have stated a claim under the Lanham Act. Ford Gum nevertheless argues that "there are no facts alleged in the SAC that Ford Gum failed to use the mark as authorized." Memo. Dismiss at 12.

In response, Big League Chew points out that it now alleges that Ford Gum

engaged in unauthorized use of its trade dress when it claimed ownership of the shredded gum trade dress. Resp. at 12. Ford Gum argues that the remedy for this act would have been opposing the application through 15 U.S.C. § 1063. Memo. Dismiss at 13. It states, without citation, that Big League Chew has "no other statutory remedy." *Id.* Big League Chew responds that the Court found in denying Ford Gum's previous motion for judgment on the pleadings that Ford Gum had not met "its burden for showing that [the act of filing for trade dress registration with the USPTO] does not constitute 'use in commerce'" for the purpose of an infringement claim. Resp. at 4 (citing Order at 2). Ford Gum's newest motion, argues Big League Chew, also fails to meet this burden. The Court agrees. Ford Gum offers no legal authority or citation for its argument that Big League Chew has "no other statutory remedy." The Court denies the motion to dismiss this claim on that ground.

## IV. Breach of Contract

Next argues Ford Gum, Big League Chew has not pled a breach of contract claim because the License Agreement does not prohibit the conduct alleged. Memo. Dismiss at 13. Ford Gum accurately points out that the Court's previous order granting its motion for judgment on the pleadings states that filing an application with the USPTO was not a breach of the terms of the License Agreement. Specifically, the Court previously ruled "that Plaintiffs may proceed on their claims for alleged breaches of the License Agreement that are not premised on Defendant's act of filing the application in the USPTO for registration of the shredded gum configuration in Defendant's name and holding itself out as the owner in that application." Order at

2.

Big League Chew counters that it has in fact removed allegations that Ford Gum breached the Licensing Agreement through its application to the USPTO. Resp. at 7, 13. Further, Big League Chew points out that it rests its breach of contract claim on different allegations, specifically, that Ford Gum (1) gave licensed products away as promotions, (2) challenged Big League Chew's trademark rights in a court of law; and (3) designated itself as the owner of Big League Chew. *Id.* at 6. Accordingly, the parties appear to be in agreement that Big League Chew cannot, and is not, proceeding on a claim that Ford Gum breached the License Agreement by filing an application with the USPTO.

The Court now turns to Big League Chew's other allegations of breach. Ford Gum argues that although these claims "may not appear" to be related to Ford Gum's application, Big League Chew's interrogatory responses "make it clear" that they are the same claims that were previously dismissed. Memo. Dismiss at 14. It submits both the declaration of its attorney, Laura Chapman, which explains why the interrogatories show that this claim is due to be dismissed, and the interrogatories themselves. R. 145-1, Decl.; R. 145-2, Interrogatories. Even if the Court could consider this evidence at the motion to dismiss stage, Big League Chew responds that this is a non-issue in light of the fact that it concedes that it is not bringing a breach of contract claim on the basis of the USPTO application. Resp. at 13. The Court agrees.

As for claims that Ford Gum gave away Big League Chew products, Ford Gum argues that this was improperly included in the amended complaint and that it is too

conclusory. Memo. Dismiss at 14. Big League Chew agrees that it had not included these allegations in its proposed amended complaint, but states that this was because it only found out about the facts supporting that allegation at a deposition taken two days before the SAC was filed. Resp. at 14. In light of the late discovery of facts supporting that allegation, and the fact that the Court gave Big League Chew leave to file an amended complaint, the Court overrules any objection to the addition of this allegation. To the extent Ford Gum believes it has been prejudiced by the addition of this allegation with respect to discovery, it may file the appropriate motion.

Ford Gum next argues that the claims for breach are conclusory because they do not identify the term of the contract that is breached. Ford Gum also cites to evidence that supposedly shows that Ford Gum was in fact allowed to do some of the alleged wrongdoings. Reply at 9. Ford Gum does not sufficiently explain how the Court can consider this evidence in this procedural posture, and it declines to do so. As for the assertion that Big League Chew's allegations are conclusory because it does not allege the term of the contract that was breached, Big League Chew points out that the Court already found that Big League Chew stated a claim on these allegations when it denied in part Ford Gum's motion for judgment on the pleadings. Resp. at 13. The Court finds that, regardless of its previous rulings, Big League Chew alleges multiple contractual terms it claims that Ford Gum breached. SAC ¶¶ 89–95, 122. In short, Big League Chew has put Ford Gum on notice of its claims as required by FED. R. CIV. P. 8(a)(2). Accordingly, the Court denies the motion to dismiss the breach of contract claim.

## Conclusion

For the reasons stated herein, the Court denies Ford Gum's motion to dismiss. R. 137.

Dated: September 24, 2026

United States District Judge
Franklin U. Valderrama